## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAVID COX, MELISSA DOHERTY, TERESA HUGHES, ANTHONY LOMBARDO, ANDREW MANESIS, and MICHAEL NEWCOMB,** on behalf of themselves and all others similarly situated,<br><br>**Plaintiff(s)**<br>**vs.**<br><br>**CHRYSLER GROUP, LLC.**<br><br><br>**Defendant(s)** | **CIVIL ACTION NO.:**<br><br><br>**CLASS ACTION COMPLAINT, JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL** |

Plaintiffs, David Cox, Melissa Doherty, Teresa Hughes, Anthony Lombardo, Andrew Manesis and Michael Newcomb, on behalf of themselves and all others similarly situated, for their Complaint against the Defendant, Chrysler Group, LLC ("Chrysler"), state as follows:

### INTRODUCTION

1.     This class action arises from the defective design, including seriously undersized drainage tubes, faulty materials, substandard installation, inadequate sealing procedures and manufacturing defects of Chrysler vehicles that has caused factory- installed sunroofs to leak. This leakage has caused and continues to cause damage to Chrysler vehicle owners, who are members of the Class.  These damages include repair costs, loss of use and enjoyment, time spent in arranging and obtaining repairs, and reduced resale and trade-in values.

2.     Affected Chrysler vehicles, include, but are not limited to, Jeep Patriot, Jeep Liberty, Jeep Compass, Jeep Commander, Jeep Cherokee, Jeep Grand Cherokees, Chrysler Town

and Country and the Chrysler 300 series (hereinafter collectively "Vehicles"). These vehicles were made, marketed, distributed, sold and leased by Chrysler from 2009 to the present.

3.      At the time the Vehicles were sold or leased to the Plaintiffs and Class Members, the Vehicles were equipped with defective leaking sunroofs.

4.      Maintenance booklets, promotional point of sales brochures, sales and lease documents and other documents accompanying the sales and leases of the Vehicles did not tell the Class Members that the sunroofs, or their components, including the drainage tubes, required any inspections, special maintenance or other attention to prevent leaking.

5.      Chrysler did not otherwise inform the Class Members about the Vehicles' leaking sunroofs when the Class Members bought or leased their Vehicles.

6.      When Class Members brought their Vehicles into Chrysler dealers for repairs of the leaking sunroofs, Chrysler did not disclose that the Vehicles' sunroofs leaked because of design errors, faulty materials, substandard installation and inadequate sealing practices and/or manufacturing defects.

7.      Affirmatively misleading the Class Members, Chrysler routinely declined to provide Class Members warranty repairs or other remedies for the leaking sunroofs. Chrysler variously claimed that the leaks resulted from external factors such as heavy rainfall, owner misuse, negligent maintenance or other factors beyond Chrysler's control.

8.      Chrysler affirmatively concealed from the Class Members that the leaking sunroofs would reduce the Class Members' use and enjoyment of the Vehicles.

9.      Chrysler affirmatively concealed from the Class Members that the leaking sunroofs would lower the Vehicles' resale and/or trade-in values, increase repair costs and would result in lost time to Class Members seeking remedies.

10.     The Class Members could not themselves reasonably discover the design errors, faulty materials, substandard installation, inadequate sealing practices and manufacturing defects in the Vehicles' sunroofs before buying or leasing the Vehicles.

11.     Had Chrysler disclosed the Vehicles' leaking sunroofs, the Class Members would not have bought the Vehicles, or would have paid lower prices for them.

## PARTIES

### Defendant

12.     After entering bankruptcy in 2009, and with the May 31, 2009 approval of the United States Bankruptcy Court for the Southern District of New York, Chrysler LLC sold substantially all of its assets, excluding only certain debts and liabilities, to the newly formed, post-bankruptcy company Chrysler Group, LLC.  Just prior to and as a part of that bankruptcy court sale, Chrysler LLC formed an alliance with Fiat SpA ("Fiat").

13.     Headquartered in Auburn Hills, Michigan, Chrysler Group, LLC ("Chrysler") has a "brand-focused" structure.  Chrysler emphasizes the Chrysler, Jeep, and Dodge brands for vehicles and the Mopar name for automotive parts.

### Plaintiffs

14.     Plaintiff, David Cox, is an individual and resident of the State of Ohio, County of Butler.  Plaintiff David Cox, purchased for personal and family use, a 2010 Jeep Patriot from Dave Dennis Chrysler Dodge Jeep Ram in Beavercreek, OH in September 2010.

15.     Plaintiff Cox's 2010 Jeep Patriot has repeatedly had water leaking through or from the sunroof.  Within one year of purchase and when the vehicle had approximately 10,000 miles on it, Plaintiff Cox's vehicle began leaking from the sunroof damaging the radio in the vehicle.  Plaintiff Cox brought his vehicle in to the Chrysler dealer's service department to

service the sunroof leak immediately.  The Chrysler dealer replaced the radio and cleaned out the sunroof drain tubes.  However, the sunroof has leaked several times since the first attempted repair, once again damaging the radio display and causing electrical malfunctions in the sunroof. Thus, on June 26, 2013, Plaintiff Cox brought the vehicle in to the Chrysler dealer service department again to service the sunroof leak.  However, Chrysler refused to repair the sunroof leak under the warranty stating that clogged drain tubes is a maintenance problem.  As a result, Plaintiff Cox continues to observe water leaking into and through the sunroof and interior dome light that has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of his vehicle.

16.     Plaintiff, Melissa Doherty, is an individual and resident of the State of Massachusetts, County of Barnstable.  Plaintiff Doherty purchased for personal and family use, a 2011 Jeep Liberty from Hylan Auto Sales in Middleboro, MA in January 2013.

17.     Plaintiff Doherty's 2011 Jeep Liberty has repeatedly had water leaking through or from the sunroof.  In June 2013, when her vehicle had approximately 30,000 miles on it, still within the 3 year, 36,000 mile warranty, Plaintiff Doherty contacted a local Chrysler dealer to notify them that her 2011 Liberty repeatedly leaked water from the sunroof and inquired about having the Chrysler dealer fix the leaking sunroof.  The representative from the Chrysler dealer stated that the drain tubes are most likely clogged due to "environmental issues" and it would cost Plaintiff Doherty over $100 to have the drain tubes cleared out.  The Chrysler representative stated that "environmental issues" are not covered under the warranty.  Despite informing Chrysler about the leaking sunroof, Chrysler has failed to repair the vehicle.  As a result, Plaintiff Doherty has observed and continues to observe water leaking into and through the sunroof and

4

interior dome light of her vehicle that has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of her vehicle.

18.    Plaintiff Teresa Hughes is an individual and resident of the State of Texas, County of Fanin. Plaintiff Hughes purchased for personal and family use, a 2009 Jeep Patriot from Bonham C-P-D-J-E Inc. in Bonham, Texas on July 30, 2009.

19.    Plaintiff Hughes' 2009 Jeep Patriot has repeatedly had water leaking through or from the sunroof. In fact, the leaking started only 6 months after purchase in December 2009 when the vehicle had 10,150 miles on it. In May 2011, Plaintiff's husband contacted a representative from Bohnham C-P-D-J-E Inc. service department and told the representative that the sunroof was leaking. The representative told Plaintiff Hughes' husband the drain tubes were clogged. The representative cleaned out the drain tubes and instructed Plaintiff's husband that the vehicle should not be driven down dirt roads in order to prevent the tubes from clogging again. Further, the representative told Plaintiff Hughes' husband that if the drain tubes needed to be cleaned out in the future, it would cost no less than $100. Shortly thereafter, the sunroof began leaking again. On June 26, 2012, Plaintiff Hughes emailed Chrysler Group Customer Assistance informing them that despite the drain tubes being cleared out less than one year ago, the sunroof continues to leak inside the vehicle including all over Plaintiff Hughes' satellite radio. Nonetheless, Chrysler has failed to repair the vehicle. As a result, Plaintiff Hughes has observed and continues to observe water leaking into and through the passenger side floor board and rear view mirror that has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of her vehicle which has compelled her to incur out of pocket expenses of no less than $1,025.00 for repairs and cleanup of damage caused by the defect.

20.     Plaintiff, Anthony Lombardo, is an individual and resident of the State of New York, County of Nassau. Plaintiff, Anthony Lombardo purchased for personal and family use, a 2010 Jeep Cherokee SRT-8 from Westbury Chrysler in Jericho, NY in November 2012. At the time of purchase, he purchased an extended warranty from Chrysler, extending the 3 year, 36,000 mile warranty to 6 years, 60,000 miles.

21.     Plaintiff Lombardo's 2010 Jeep Cherokee has repeatedly had water leaking through or from the sunroof. When the vehicle had about 50,000 miles on it, within the warranty period, Plaintiff Lombardo notified Chrysler of the leaking sunroof. Despite informing Westbury Chrysler about the leaking sunroof, Chrysler has failed to repair the vehicle. As a result, Plaintiff Lombardo has observed and continues to observe water leaking into and through his passenger side floor board and rear view mirror that has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of his vehicle.

22.     Plaintiff Andrew Manesis is and individual and resident of the State of New Jersey, County of Morris. Plaintiff Manesis, purchased for personal and family use, a 2014 Jeep Compass on May 28, 2013 from Dover Dodge Chrysler Jeep, Inc. in Rockaway, N.J.

23.     Plaintiff Manesis' 2014 Jeep Compass has repeatedly had water leaking through or from the sunroof. Plaintiff Newcomb has observed and continues to observe water leaking into and through the sunroof and interior dome light as well as from the driver's side front corner pillar area that has resulted in at least three attempted service repairs.

24.     The first attempted service repair occurred on July 30, 2013 when Mr. Manesis informed Dover Dodge Chrysler Jeep, Inc. service department in Dover, NJ that water was leaking from the sunroof/dome light. The vehicle had only 2,185 miles on it at the time of the July 30, 2013 service visit. Chrysler failed to remedy the sunroof leak. Within months of the

first service visit, the vehicle leaked water again from the same areas. Thus, Mr. Manesis brought the Jeep Compass in to Dover Dodge Chrysler Jeep, Inc. service department again on December 2, 2013, when the vehicle had only 6,572 miles on it, complaining that water was leaking from the driver's side front corner in the headliner by the pillar area. Chrysler's attempted repairs once again failed. Within less than10 months of the second attempted repair, water poured into Mr. Manesis' vehicle from the sunroof area. Mr. Manesis brought the vehicle into Jeep Compass in to Dover Dodge Chrysler Jeep, Inc. service department for a third time on October 22, 2014 when the vehicle had 17,326 miles on it. Chrysler attempted to repair the vehicle

25.     Chrysler has failed repeatedly to remedy the defect and the leaking water has caused a permanent musty or mold smell in Mr. Manesis' Jeep Compass and water damage to the interior of his vehicle.

26.     Plaintiff, Michael Newcomb is an individual and resident of the State of Massachusetts, County of Middlesex. Plaintiff Newcomb, purchased, for personal and family use, a 2009 Jeep Patriot on August 3, 2009 from Langan Chrysler/Jeep in Schenectady, NY.

27.     Plaintiff Newcomb's 2009 Jeep Patriot has repeatedly had water leaking through or from the sunroof. Plaintiff Newcomb has observed and continues to observe water leaking into and through the sunroof and interior dome light that has resulted in at least 8 attempted service repairs. The first service repair occurred on August 27, 2009 when Mr. Newcomb informed Steve Pedro of Lawless Chrysler Jeep in Woburn, Massachusetts that water was leaking from the sunroof/dome light. The vehicle had only 1,890 miles on it at the time of the August 27, 2009 service visit. Chrysler failed to remedy the sunroof leak. Plaintiff Newcomb brought his vehicle in to Lawless Chrysler Jeep continuously for the leaking problem and

Chrysler has continuously failed to remedy the leaking defect.  In fact, the date and mileage of the vehicle when Plaintiff Newcomb brought the vehicle back for repair related to the sunroof leak include, but are not limited to the following – August 24, 2010 at 29,386 miles; November 9, 2010 at 34,658 miles; December 16, 2010 at 37,672 miles; March 16, 2011 at 43,341 miles; and March 6, 2012 at 60,890 miles.  Plaintiff Newcomb has observed water leaking into his vehicle from the sunroof over 50 times.  Chrysler has failed repeatedly to remedy the defect and the leaking water has caused a permanent musty or mold smell in his car and required Mr. Newcomb to take multiple days off from work to have his vehicle serviced.

28.     As a result of Chrysler's failure to remedy its vehicles' known sunroof defects, the Plaintiffs have suffered various damages, including, but not limited to:

    a.  Repair costs;

    b.  Loss in diminution of value of their vehicles;

    c.  Loss of use and enjoyment;

    d.  Loss of personal property;

    e.  Time spent in arranging and obtaining repairs; and

    f.  Inconvenience

## JURISDICTION AND VENUE

29.     This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and (6) because (i) the number of Class Members is 100 or more; (ii) the Class Members' damages, the aggregate amount in controversy exclusive of interest and costs, exceeds $5,000,000; and (iii) minimal diversity exists because at least one of the Class Plaintiffs and one Defendant are citizens of different states.

30. This Court also has original subject matter jurisdiction over the Class Plaintiffs' federal statutory claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*.

31. This Court has supplemental and pendent jurisdiction over the Class Plaintiffs' state law claims under 28 U.S.C. § 1367.

32. Jurisdiction is also proper in this Court because of Chrysler's many and important contacts with the State of New Jersey. Chrysler has a registered agent authorized to accept service of process in the State of New Jersey. Chrysler employees and agents regularly do business within the State of New Jersey. Internet sites list between 45 and 61 Chrysler dealers in New Jersey. Chrysler maintains regular and systematic contacts with the State of New Jersey, regularly does business within New Jersey, promotes its products and puts the Vehicles into the stream of commerce in New Jersey. This Court's exercise of jurisdiction over Chrysler offends neither notions of fair play and substantial justice, nor any other due process principles. Chrysler reasonably could expect to be summoned before the courts of the State of New Jersey.

33. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1). For purposes of venue under 28 U.S.C. § 1391(b), Chrysler, a corporation, is deemed to reside in any judicial district, including this one, in which Chrysler is subject to personal jurisdiction at the time this action is commenced, according to 28 U.S.C. § 1391(c). Chrysler is subject to personal jurisdiction in this judicial district because Chrysler regularly does business in, has places of operation in, generates substantial revenues and profits in New Jersey and can be found in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. § 1391(c), because a substantial part of the events or omissions giving rising to the Class Plaintiffs' claims took place in this judicial district.

34.     The facts and allegations contained within this Class Action Complaint previously were the subject of the matter, *Miller v. Chrysler Group LLC*, Case No. 3:12-cv-760 (MAS) (DEA). The matter was administratively dismissed pursuant to the Stipulation of Parties Regarding Termination of Case for Purposes of Refiling, which is attached as Exhibit A of this Class Action Complaint. The terms of the Stipulation are incorporated into this Class Action Complaint.

## BACKGROUND

35.     Chrysler designed, manufactured, distributed, marketed, promoted and sold hundreds of thousands of the Vehicles during the period 2004 to the present. These include, collectively, the Jeep Patriot, Jeep Liberty, Jeep Compass, Jeep Commander, Jeep Cherokee, Jeep Grand Cherokee, Chrysler Town and Country and the Chrysler 300 series.

36.     The Vehicles' sunroofs leak when exposed to rain, snow, sleet, car wash water and other forms of moisture.

37.     When the Vehicles' sunroofs leak, water invades their interiors, damaging structural components, wiring and the passenger cabin. Among other problems, the invading water damages and creates shorts in electrical circuitry, leading to engine stalling, instrumentation malfunctioning, radio and steering malfunctioning, and other electronically-controlled devices malfunctioning, such as seat and window adjustment controls; creates standing water on floors and floor mats; degrades floor carpeting and sub-structures; leaves water stains; causes hazardous mold and mildew to grow and creates associated offensive mold and mildew smells; dampens and damages interior seats and headrests;  weakens the affected components and structures and promotes rust.

38.     The Vehicles are difficult or, in some cases, impossible to drive in rain, sleet or other moisture conditions, and for a period of time after such conditions because of the time required to dry them out.

39.     The Vehicles cannot be cleaned by normal car wash procedures, either automated or hand washes.  Pressurized water quickly leaks into and floods the Vehicles' interiors.

40.     As a result of their leaking sunroofs, the Vehicles lose trade-in value and resale cash value, in greater amounts and more rapidly than comparable vehicles that do not have leaking sunroofs.

41.     The value of the Vehicles at the time of purchase or lease was considerably less than the amounts the Plaintiffs paid for them.

42.     The value of the Vehicles decreases much more rapidly and substantially than the normal loss in value associated with the depreciation from age and reasonable wear and tear.

43.     A widely reported and verified set of defects and failures have resulted in the Vehicles' leaking sunroofs:

    a)  Undersized drain tubes;

    b)  Faultily or under-designed drain tubes;

    c)  Poorly manufactured drain tubes;

    d)  Improperly installed drain tubes;

    e)  Mis-routed drain tubes;

    f)  Inadequately gasketed drain tubes; and

    g)  Inadequately sealed drain tubes

44.     The drain tubes described in the immediately preceding paragraph are unduly prone to malfunction, including crimping and collapsing.  They are also unduly prone to

becoming easily clogged.  Such crimping, collapsing and clogging of the drain tubes results in water pooling and backing up, overwhelming the drainage channels, and flowing down through the Vehicles' door pillars and other structures into the passenger cabin, damaging wiring, circuitry, internal cabin accoutrements and structural elements.

45.    Other reported reasons for the leaking sunroofs include:

    a)  Substandard adhesives and sealing agents;

    b)  Improper installation of the sunroofs;

    c)  Defective design of the sunroof itself;

    d)  Faulty integration of the sunroof into the Vehicles' roofs, including faulty alignment with passenger cabin

46.    Chrysler provides a standard 3 year, 36,000 mile warranty to all purchasers and lessors of its vehicles.  That Warranty states:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and Unwired headphones. You pay nothing for these repairs. These warranty repairs or adjustments — including all parts and labor connected with them — will be made by your dealer at no charge, using new or remanufactured parts (the "Warranty")

http://www.jeep.com/en/warranty/ and http://www.chrysler.com/en/warranty/.

47.    Chrysler's Extended Warranty contains the same or substantially similar warranties regarding quality, workmanship, repair and replacement.  Chrysler's original Warranty and Extended Warranty are collectively discussed as "Warranty."

48.    The Plaintiffs and Class Members have requested that Chrysler remedy and/or address the Vehicles' leaking sunroofs at no expense to the Class Members under their warranties.

49.     Chrysler, by and through its agents, has failed and/or refused to repair or address the Vehicles' leaking sunroofs or to acknowledge any responsibility to make repairs or provide any compensation to the Class Members.

50.     Chrysler and its agents have claimed that the Vehicles' water leaks are due to external factors, owner or lessee misuse or otherwise attributable to causes beyond Chrysler's control and thus not covered under the Warranty.

51.     Even if Chrysler were to cover the damages under the Warranty, many of the Class Members would never have discovered the sunroofs' hidden defects until after the expiration of the Warranty.

52.     Chrysler's predecessors, Chrysler, LLC and Daimler Chrysler, produced vehicles with similar sunroof defects.

53.     Chrysler has been on notice of, or had reason to know about the defective sunroofs for a number of years. Despite this knowledge, Chrysler chose not to fix the defective sunroof problem through design, manufacturing, installation and materials changes, nor to issue a recall notice, nor otherwise to inform existing and prospective purchasers and lessees of the problem.

54.     On or about November 5, 1999, Daimler Chrysler issued Technical Service Bulletin ("TSB")[1] 23-44-99 concerning "Sun Roof Water Leaks," for 1999-2000 Jeep Grand Cherokees. Daimler Chrysler attributed the leaks to high pressure water penetrating past the primary seal and entering the drain channel. Daimler Chrysler stated that "[a]n improved drain

---

[1] Unlike recall notices, Technical Service Bulletins ("TSBs") are not disseminated to vehicle owners and lessees. Vehicle manufacturers such as Chrysler typically issue a TSB to dealers after the manufacturer has received a number of complaints about a particular problem. TSBs alert dealers to the potential need for, and methods by which to perform, certain repairs. Unlike recalls, in which dealers are required to notify owners and lessees of the problem requiring repair, dealers are not required to forward TSB information to customers such as the Class Members.

channel has been developed which contains a secondary seal." A true and accurate copy of the TSB is attached as Exhibit "B."

55.     On or about December 2, 2004, Daimler Chrysler issued TSB 23-050-04 for the 2005 Jeep Grand Cherokee for "Water Leak In Area Of A-Pillar Grab Handle Or Overhead Console." Daimler Chrysler attributed the leaks to "[a] pinched or collapsed front sunroof drain tube. . . .  The pinched front drain tube(s) may cause water to backup in the tube and overflow the sunroof water trough." A true and accurate copy of the TSB is attached as Exhibit "C."

56.     On or about January 21, 2006, Daimler Chrysler issued TSB 23-004-06 for "Passenger Cabin Water Leakage And/Or Wind Like Sound." For water leaking from the "A-Pillar Grab Handle, Front Edge Of Headliner, or Sunvisor Attachment," Daimler Chrysler attributed the leaks to "Sunroof drain(s) restricted. Drain hoses may have come loose. Drain hoses may be out of position and collapsed when headliner was installed. Drain hose end nipple restricted or blocked."   A true and accurate copy of the TSB and TSB 23-004-06 Rev. A are attached as Exhibits "D" and "E."

57.     On or about August 7, 2009, Chrysler issued a Rapid Response Transmittal ("RRT")[2], RRT-09044, for numerous model year Chrysler vehicles, including the Jeep Liberty and Jeep Compass/Patriot. The subject of the RRT was "Sunroof Water Leak." A true and accurate copy of the RRT is attached as Exhibit "F."

58.     On or about September 25, 2010, Chrysler issued TSB No. 23-016-10a Rev. A for 2007-2010 Jeep Patriots regarding "[w]ater leaks from the roof ditch and sunroof area." A true and accurate copy of the TSB is attached as Exhibit "G."

---

[2] A Rapid Response Transmittal ("RTT"), like a TSB and unlike a Recall notice, is sent to dealers, not customers or end users.  An RRT can usefully be thought of as a more urgent form of a TSB.

59.     On or about August 25, 2011, Chrysler issued TSB No. 23-033-11 for 2011 Jeep Grand Cherokees for "[c]ustomer complaint of damp carpet or a water leak." In the TSB, Chrysler notes that "[s]unroof drain tube grommets must be fully seated to dash panel with drain tubes properly protruding out of dash panel or water leak into the interior floor panels. . . . Water flow test the sunroof drain tubes . . . to verify possible obstructions and/or leaks." A true and accurate copy of the TSB is attached as Exhibit "H."

60.     In addition to the TSB's described above, numerous complaints on the internet show that Defendant and its predecessors were on notice of the sunroof defect described herein long before the Plaintiffs purchased the vehicles. The following is a small, but representative sampling of those complaints:

    a.   July 23, 2006, by HemiCommander, Rome, GA - Here we go again! You know I am really beginning to think I should have stuck with Land Rover LR3! We finally had a good rain storm last night here in Georgia...about 3 hours of heavy pouring rain - we certianly need it! I go out to wash the JC this morning (took it trailing yesterday at Jacks River Falls - good and dirty). Pull the floor matts to begin the inside detail and here we go - WATER in the passanger [sic] floor. This will make the third time in three weeks that I am back at the dealership! Just last week they had their supposed "wind and water leak" expert fix a wind noise coming from the sunroof... he fixed that.. and fu'd up the door seal???? I love the way the JC drives...but sure do miss the reliability of my old RR! http://www.jeepcommander.com/forums/showthread.php?t=8894&page=3

    b.   December 26, 2006, by Southsidegirl - Ok - here we go again. We now have 2500 miles on it and after it sat outside for two days in the rain, we have the A-Pillar leak. Water is dripping out of the screw cap covers on the passenger side and the carpet is wet. Will be bringing it in tomorrow to be fixed. Took it to the dealership today while it was wet to show them and the first thing they said "it's probably the sunroof drain tubes". We'll see tomorrow - I'll keep you updated! http://www.jeepcommander.com/forums/showthread.php?t=8894&page=10.

    c.   July 10, 2008, by mikexmike, Palatine, Il - For the third time I have noticed standing water on the floor behind the drivers seat. For a third time I took to the dealership. Not surprising they were unable to fix. Vowed to never even think about buying a Jeep again. Considering enacting my lemon law rights. http://www.carcomplaints.com/Jeep/Patriot/2008/accessories-exterior/sunroof_leaks.shtml.

d. December 21, 2009, by RB., Mechanicsville, VA - LEAKING REAR DOME
   LIGHT, BEEN TO THE DEALERS 5 TIMES, STILL AT DEALERS BEEN
   THERE TWO WEEKS. STILL LEAKS, FILED A COMPLAINT WITH
   CHRYSLER, WAITING THERE [sic] REPLY.
   http://www.carcomplaints.com/Jeep/Patriot/2008/accessories-
   exterior/sunroof_leaks.shtml.

e. February 26, 2011, by Chelsea S., Sandy, OR – [regarding her 2010 Jeep Patriot]
   We have had the leak happen twice now, we brought it in to the Jeep dealership
   each time and they run it under water for a couple hours and check the sunroof
   drains and find nothing an do nothing.  It doesn't always leak when it rains, but
   when it has leaked it has filled up my map/dome light and then as I take turns or
   stop quickly the water spills out onto my stereo and buttons.  They don't seem to
   know what to do and keep telling me to bring it in when it happens.  However, it
   is a pain in the butt having to stop my life to take care of this currently
   reoccurring problem.  To add to that annoyance the dealership is 45 minutes away
   (taking the highway) and they fix nothing and have no suggestions.
   http://www.carcomplaints.com/Jeep/Patriot/2010/body_paint/water_leaking_in_th
   rough_the_map_dome_light.shtml.

f. August 25, 2011, by Tammy A., Blackstone, VA - I noticed that the handles in
   front beside the windshield were leaking when it rained.I took it to the dealer ship
   they said the drain tubes were clogged up so $144.00 later they cleaned them out.
   It still leaks and now makes a gurgling sound!
   http://www.carcomplaints.com/Jeep/Commander/2006/windows_windshield/sunr
   oof_drain_tubes_leak.shtml.

g. December 7, 2011, by dmt.4288, Upper Marlboro, MD – [regarding 2012 Jeep
   Patriot] I called the dealership to inform him of the leak through the dome light,
   wanted to know if I were in an accident!  My Jeep Corporate Case #21660302, I
   informed my Jeep Customer Care that I want out of the vehicle, he said I didn't
   meet the requirement, referred me to BBB and Attorney State General.  The
   suggested process through Attorney State General is to write a 'certified letter'
   with 'signature required'.  I called corporate asking for mailing address, it could
   not be provided due to the Department handling my case was close and to call
   back Mon. 19th Dec. 2011[.]  I took it in for service, the drain plug was pinched!
   Asked if the hood of car replaced, electrical wiring inspected and electronics, ok?
   Dealer customer care rep, Mike, said yes[.]  The GPS is garbled speech and the
   vehicle hesitates while pulling off and periodically while driving[.]  At this point
   I'm searching for legal counsel!
   http://www.carcomplaints.com/Jeep/Patriot/2012/lights/water_leak_through_dom
   e_light.shtml.

h. December 29, 2012, by Lindsay W., Dallas, Texas – Just purchased a used 2010
   Jeep Patriot with under 20,000 miles on it a month and a half ago.  After returning

home from Christmas vacation, drove my car and water started pouring out of the map light as soon as I moved. After stopping, found a huge pool of water behind the driver's seat. With the New Year's holiday, couldn't get my car into for service until later in the week. Did my best to dry out the car and the mats, and then it rained again 2 days later...same result.
http://www.carcomplaints.com/Jeep/Patriot/2010/body_paint/water_leaking_in_th rough_the_map_dome_light.shtml.

61.     Class Members have also posted complaints on YouTube. The YouTube videos include an October 13, 2009 Class Member's call with a Chrysler representative complaining about his leaking factory-installed sunroof:

http://www.youtube.com/watch?v=MAq2VdmGBKE,

http://www.youtube.com/watch?v=JzUCuP6tfcI,

http://www.youtube.com/watch?v=zC5mGbDfzRY

62.     Chrysler's experience with defective sunroofs did not produce either disclosures of the problems or design changes and improvements to preclude the problems and damages Class Plaintiffs, and others similarly situated, have experienced from their Vehicles' leaking sunroofs.

63.     Chrysler has been and remains on notice of the leaking sunroofs, through various consumer complaints, web postings and demands for repair or other remedies.

64.     Repairing the defective Vehicles costs several hundred dollars depending on the severity of the problem, the model type and year of manufacture, and the labor and parts charges of repair shops in various areas of the country.

## TOLLING OF STATUTES OF LIMITATION

65.     Chrysler's active and knowing concealment of the problem of the Vehicles' defective sunroofs since 1999, and willfully false and misleading statements attributing the leaks

to external factors, owner or lessee misuse, and other factors outside of Chrysler's control, results in the tolling of any applicable statute(s) of limitation.

66. Plaintiffs and Class Members could not have reasonably discovered the true reasons for their Vehicles' leaking sunroofs until just before this Complaint was filed.

67. Chrysler had and still has a continuing duty to inform Class Members of the truth that the Vehicles' leaking sunroofs result from Chrysler's design, manufacturing, materials and workmanship defects and failings described above, that the leaking sunroofs require expensive repairs and diminish the use, enjoyment, trade-in and re-sale value of the Vehicles.

68. Chrysler's active concealment of, and breach of its duty to disclose the truth about the reasons for and damages attendant upon the Vehicles' leaking sunroofs tolls any applicable statute(s) of limitations.

## CLASS ACTION ALLEGATIONS

69. The Plaintiffs bring this action under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) and seek certification of a Class and Subclass initially defined as follows:

> The Class (For certification as to claims under Express Warranty, Implied Warranty, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and violation of state laws that meet the definition of "Lemon Law"[3]):
>
>> All persons or entities who, leased or purchased new or used Jeep Compasses, Jeep Patriots, Jeep Libertys, Jeep Cherokees, Jeep Grand Cherokees, Jeep Commanders, Chrysler Town and Country or Chrysler 300 series vehicles, of all trim levels and option packages manufactured from June 9, 2004 to the present, that have factory installed sunroofs that have leaked water into the vehicle or have the potential to leak water into the vehicle (the "Class Members").

---

[3] As used herein, "Lemon Law" is defined by the June 1, 2009 Sale Order issued by the Bankruptcy Court in the Southern District of New York. That Sale Order defines Lemon Law as "a federal or state statute, including but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute."

**The Subclass** (For certification as to the above listed claims as well as all other claims brought herein including state consumer protection claims):

> All persons or entities who, leased or purchased new or used Jeep Compasses, Jeep Patriots, Jeep Libertys, Jeep Cherokees, Jeep Grand Cherokees, Jeep Commanders, Chrysler Town and Country or Chrysler 300 series vehicles, of all trim levels and option packages that were manufactured from June 10, 2009 to the present, that have factory installed sunroofs that have leaked water into the vehicle or have the potential to leak water into the vehicle (the "Subclass Members").

70.     Excluded from the Nationwide Classes are:  Chrysler and all of its affiliated companies, directors, officers, and employees; all persons or entities who purchased or leased their Vehicles for re-sale or sub-lease, respectively; and the Judge(s) assigned to this case.

71.     All Plaintiffs are members of the Class and David Cox, Melissa Doherty, Anthony Lombardo and Andrew Manesis, are members of the Subclass.

72.      The Plaintiffs reserve the right to modify or expand the Nationwide Class and Subclass definitions if discovery and/or further investigation shows that the definitions should be modified.

73.     Questions of law and fact exist common to the members of the Class and Subclass, and predominate over any questions that affect only individuals.

74.     Principal and predominant common questions of law and fact include, for example:

a.  Were the sunroofs, including the drainage tubes, of the Vehicles defectively designed?

b.  Were the drainage tubes of the Vehicles too small in diameter to handle foreseeable amounts of water and other moisture without leaking?

c.  Were the drainage tubes of the Vehicles made of sufficiently sturdy material to prevent undue crimping, which, in turn, resulted in clogging and prevented proper flow and discharge of water and produced overflows leading to leaks?

d.  Were the sunroofs, including the drainage tubes, of the Vehicles defectively installed?

e.  Were the sunroofs of the Vehicles made of defective or otherwise substandard materials?

f.  Did Chrysler breach its express warranties to the Class Members?

g.  Did Chrysler breach its implied warranties to the Class Members?

h.  Did Chrysler breach the Magnuson-Moss Act in connection with its sales, leases and servicing of the Vehicles?

i.  Did Chrysler negligently design, manufacture, distribute, promote, market and sell the Vehicles?

j.  Did Chrysler breach the New Jersey Consumer Fraud Act because Chrysler's design, manufacture, distribution, promotion, marketing and/or sales of the Vehicles constituted an unconscionable commercial practice deception, fraud, false pretense, misrepresentation, or constituted the knowing, concealment, suppression or omission of any material fact with the intent that the Subclass Members rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the vehicles?

k.  To the extent other State laws prohibiting consumer deception are applicable, did Chrysler violate the respective laws of those States?

l. Did Chrysler negligently misrepresent the quality of the sunroofs and drainage tubes?

m. Would Chrysler's retention of payment for the Vehicles constitute the knowing receipt, acceptance and retention of a benefit from the Subclass Members in circumstances in which such receipt, acceptance and retention of that benefit is unjust?

n. As a result of Chrysler's actions and failures to act, are the Class and Subclass Members entitled to compensatory, restitutionary, statutory or other damages against Chrysler?

75. The Plaintiffs' claims are typical of the claims of all of the members of the Class and Subclass because they are based on the same facts.

76. The Plaintiffs' claims are typical of the claims of all of the members of the Class and Subclass because they are based on the same legal theories.

77. The Plaintiffs' claims are typical of the claims of all of the members of the Class and Subclass because the respective claims are based on the same remedial theories and requests for redress as those of all the Class and Subclass Members.

78. Each Class is so numerous that joining all of the Class and Subclass Members as plaintiffs in this action is impracticable. Upon information and belief, to be supported as required by Rule 11(b)(3), during the Class Periods, Chrysler sold hundreds of thousands of vehicles with sunroofs. Based on a conservative failure rate of just ten percent (10%), and assuming that each Class and Subclass Member bought or leased only one Defective Chrysler vehicle during each Class Period, each class would consist of thousands of owners and lessees.

79. The Plaintiffs are not adverse to those of the Class or Subclass.

80.     The Plaintiffs have no interests that conflict with the interests of the Class or Subclass.

81.     The Plaintiffs are similarly situated with, and have suffered similar injuries, losses and other damages as the Class and Subclass members.

82.     The Plaintiffs will fairly and adequately protect the interests of all the Class and Subclass members in further investigating, developing and litigating this action, and in all related administrative and other matters concerning this action.

83.     The Plaintiffs have retained counsel experienced in complex and class action litigation, in matters involving consumer products, commercial and contractual claims, and common law and statutory claims.

84.     Neither the Plaintiffs, nor their retained counsel, have any interest that might lead them not to vigorously pursue this action.

85.     A Class Action is superior to other potentially available methods for resolving the Plaintiffs' claims, because:

a. The individual Class and Subclass Members' damages are almost certainly too small to justify the expense and effort of individual lawsuits brought by counsel working for an hourly fee.  Chrysler's misconduct would go unaddressed and unremedied absent class action treatment.  Aggregating these fundamentally similar claims, however, makes this action financially feasible.

b. Even if the individual Class and Subclass Members were wealthy enough to afford to bring such individual cases, the judicial system would be ill served and its scarce resources badly misspent by a myriad of small and fundamentally

identical cases involving the same basic allegations, the same discovery and the same proofs, clogging dockets across the country.

c.  Individual litigation is not just supremely impractical and tremendously inefficient, but also poses the risk of inconsistent or contradictory judgments.

d.  Concentration of the action concerning the Defective Jeep and Chrysler vehicles in this Court will: save judicial resources by, among other things, obviating the need for coordination of motion practice and discovery across numerous courts and jurisdictions; conserve the parties' resources by permitting the well-focused litigation of the many common issues through representative plaintiffs;  produce enormous economies of scale by developing the many common issues through just a few representative plaintiffs; and result in consistent judicial findings, promoting respect for the judiciary and judicial system, through comprehensive supervision and administration of the case by a single court well versed in the issues.

e.  Justice will not be served, but will fail, in the absence of a class action of the Plaintiffs' claims.  Among other things, many if not all Plaintiffs lack the resources to properly litigate their claims.  Expert witnesses are necessary, the cost of which would alone be prohibitive for many if not all Plaintiffs.

f.  The difficulties inherent in and likely to arise in managing this Class Action are neither novel nor substantial.  Common issues predominate over individual issues, are readily identifiable, as described above, and will be efficiently developed through litigation of representative Class and Subclass Members' cases.

## CAUSES OF ACTION ON BEHALF OF ALL NAMED PLAINTIFFS AND BOTH CLASS AND SUBCLASS MEMBERS[4]

### FIRST CAUSE OF ACTION
### Breach of Express Warranty

86. Each of the above allegations are incorporated herein.

87. Chrysler made numerous express warranties to the Class Plaintiffs about the high quality and sound functioning of the Vehicles. Chrysler expressly warranted that the Vehicles and all of their constituent parts were properly designed, fit for their intended purposes, made of good and serviceable materials appropriate for the use for which the Vehicles were intended, including off-road use in rugged settings and on difficult terrain, and would not leak.

88. Chrysler also expressly warranted that it would repair and/or replace defects in material and workmanship free of charge that occurred during the warranty period(s). Chrysler breached the Warranty by selling and/or leasing to Plaintiffs and Class members vehicles with known sunroof drainage system problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

89. The Defect manifested during the warranty periods for all Plaintiffs.

90. Plaintiffs notified Chrysler of the defects and Chrysler received notification about and was on notice of the defects well before Plaintiffs began this litigation.

91. As detailed in paragraphs 14 through 28 of this Complaint, Chrysler materially breached its express warranties to the Class Plaintiffs. Among other failings, problems and defects, the Vehicles' sunroofs leaked, were defectively designed, unfit for their intended

---

[4] Counts V, VIII, IX and X of the Second Amended Complaint in the Prior Matter were dismissed pursuant to the Court's June 30, 2014 Order dismissing Counts VIII and IX without prejudice and Counts V and X with prejudice. Although these causes of action are not pled in this Class Action Complaint, pursuant to the Stipulation, Plaintiffs are not waiving any future rights they might still have with respect to these claims.

purposes, and not of good and serviceable materials appropriate for the uses for which the vehicles were promoted and sold.

92.     As a result of these breaches, the Class Plaintiffs and Class Members sought repairs to their vehicles, but Chrysler denied them warranty coverage.

93.     Chrysler had a pattern and practice of routinely denying warranty coverage of the Defect by consistently falsely attributing the Vehicles' leaking sunroofs to causes other than Chrysler, such as every day environmental factors or considering it a "maintenance problem", thus making the buyers and lessees pay themselves for repairs that Chrysler was obligated to make, or leaving them to drive vehicles that leak and rapidly lose value.

94.     The time limits in Chrysler's express warranty are commercially unconscionable.  Chrysler knew the Class Members would likely not discover the reason their Vehicles' sunroofs leaked until after the warranty period had expired.  Chrysler exacerbated that deception by falsely telling customers who made inquiries within their vehicles' warranty periods that external factors, possible misuse and other, non-Chrysler reasons were the culprits.

95.     The Class Members had no meaningful opportunity to bargain over, let alone expand, the Vehicle warranty terms.  These warranties are classic adhesion contracts, produced by the manifest and massive differences between Chrysler's and individual Class Members' bargaining power, whose terms were uniform and uniformly of the "take it or leave it" variety.

96.     The Class Plaintiffs and Class Members have complied with all of their obligations under their Vehicles' warranties.  To the extent they have not, such compliance is excused by Chrysler's misconduct.

97.     Chrysler's breach of its express warranties caused damages to the Class Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request that the Court issue an Order and grant Judgment to the Class and Subclass Plaintiffs as follows:

      A.     Certifying this action as a Class Action;

      B.     Naming the Plaintiffs as the representative Named Class and on behalf of the absent Class Members;

      C.     Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

      D.     Granting the Plaintiffs contractual, restitutionary and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

        1)  Repair costs;

        2)  Loss in diminution of value of their vehicles;

        3)  Loss of use and enjoyment;

        4)  Loss of personal property;

        5)  Time spent in arranging and obtaining repairs;

        6)  Inconvenience

      E.     Granting the Plaintiffs and Class Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

      F.     Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard

costs invested, and results obtained, in light of the Court's judgment informed by awards

in other similar cases of comparable difficulty and complexity.


### SECOND CAUSE OF ACTION
### Breach of Implied Warranty

98.    Each of the above allegations are incorporated herein.

99.    The Vehicles are "goods" under the Uniform Commercial Code ("UCC").

100.    Chrysler is a "merchant" under the UCC.

101.    Chrysler made numerous implied warranties to the Class Plaintiffs about the

merchantable quality of the Vehicles.

102.    Chrysler impliedly warranted, among other things, that the Vehicles and their

sunroofs, and their sunroofs' constituent elements, were of good and merchantable quality, and

would not leak.

103.    Chrysler also impliedly warranted, among other things, that the Vehicles, and

their sunroofs, and their sunroofs' constituent elements, were fit for the purposes for which they

were intended and for which Chrysler promoted the Vehicles as very high quality vehicles.

Chrysler promoted the Jeeps as sturdy, sound and watertight vehicles that were designed for, and

would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-

road terrain.  Similarly, Chrysler promoted the Town and Country and 300 series as a well-made

vehicles that would not leak.

104.    Chrysler materially breached its implied warranties to the Class Plaintiffs.

Among other defects, the Vehicles' sunroofs' leaked, were defectively designed, unfit for their

intended purposes, and not of good and serviceable materials appropriate for the uses for which

the vehicles were promoted and sold.

105.    Chrysler's breaches of its implied warranties are commercially unconscionable. Chrysler sold and leased the Vehicles knowing their sunroofs would leak.  Chrysler never told buyers and lessees that fact.  When buyers and lessees reported leaking sunroofs and requested warranty and other repairs, Chrysler falsely attributed the Vehicles' leaking sunroofs to causes other than Chrysler, making the buyers and lessees pay themselves for repairs that Chrysler was obligated to make, or leaving them to drive vehicles that leak and rapidly lose value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request that the Court issue an Order and grant Judgment to the Class and Subclass Plaintiffs as follows:

A.    Certifying this action as a Class Action;

B.    Naming the Plaintiffs as the representative Named Class and on behalf of the absent Class Members;

C.    Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

D.    Granting the Plaintiffs contractual, restitutionary and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

1)  Repair costs;

2)  Loss in diminution of value of their vehicles;

3)  Loss of use and enjoyment;

4)  Loss of personal property;

5)  Time spent in arranging and obtaining repairs;

6)  Inconvenience

E.      Granting the Plaintiffs and Class Members such other and further relief, including, without limitation, injunctive and equitable relief,  as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## THIRD CAUSE OF ACTION
### Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)

106.    Each of the above allegations are incorporated herein.

107.    The Class Plaintiffs and the Class Members are "consumers" within the meaning the of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq* ("Magnuson Moss Act").

108.    Chrysler is a "supplier" and "warrantor" within the meaning the of the Magnuson-Moss Act.

109.    The Vehicles and their defective sunroofs are "consumer products" within the meaning of the Magnuson-Moss Act.

110.    Under the Magnuson-Moss Act, Chrysler was obligated to disclose to consumers the known defects of the Vehicles, in particular, the defective sunroofs.

111.    Under the Magnuson-Moss Act, Chrysler was obligated to repair or otherwise remedy the Vehicles' defective sunroofs.

112.    Despite reasonable opportunity to honor its disclosure and remedy obligations, Chrysler violated these obligations under the Magnuson-Moss Act, causing injury to the Class Plaintiffs and Class Members.

113.    The amount in controversy with respect to the Class Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request that the Court issue an Order and grant Judgment to the Class and Subclass Plaintiffs as follows:

A.    Certifying this action as a Class Action;

B.    Naming the Plaintiffs as the representative Named Class and on behalf of the absent Class Members;

C.    Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

D.    Granting the Plaintiffs contractual, restitutionary and statutory damages in full recompense for their damages including and not limited to damages relating to the following:

1) Repair costs;

2) Loss in diminution of value of their vehicles;

3) Loss of use and enjoyment;

4) Loss of personal property;

5) Time spent in arranging and obtaining repairs;

6) Inconvenience

E.    Granting the Plaintiffs and Class Members such other and further relief, including, without limitation, injunctive and equitable relief,  as the Court deems just in all the circumstances; and

F.    Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## FOURTH CAUSE OF ACTION
### Injunctive and Equitable Relief

114.    Each of the above allegations are incorporated herein.

115.    Injunctive and equitable relief is appropriate and proper to remedy Chrysler's past misconduct and prevent such misconduct from continuing to occur.

116.    Appropriate and proper injunctive and equitable relief includes a Judicial Order compelling Chrysler to pay for a notice process in which Chrysler notifies the Class Members about the Vehicles' defective sunroofs, and, as and if requested, fully repair such defects at Chrysler's cost.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class request that the Court issue an Order and grant Judgment to the Class and Subclass Plaintiffs as follows:

A.    Certifying this action as a Class Action;

B.    Naming the Plaintiffs as the representative Named Class and on behalf of the absent Class Members;

C.      Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

D.      Granting the Plaintiffs appropriate injunctive and equitable relief;

E.      Granting the Plaintiffs and Class Members such other and further relief, including, without limitation, injunctive and equitable relief, as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## CAUSES OF ACTION ON BEHALF OF THE SUBCLASS MEMBERS ONLY

### FIFTH CAUSE OF ACTION
### Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1, et seq.)

117.    Each of the above allegations are incorporated herein.

118.    Numerous controlling state and federal cases recite and explain the broadly remedial aims of the New Jersey Consumer Fraud Act. (hereinafter "NJFCA").

119.    The Vehicles are "merchandise" within the NJCFA.

120.    The Subclass Members are consumers within the protective ambit of the NJCFA, who bought and/or leased their vehicles for personal, family and household uses.

121.    Protecting the Subclass Members from and against "any unconscionable commercial practice, deception, fraud, false pretense, or misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any

merchandise,"[5] the NJCFA applies to Chrysler's sales and leases of the Vehicles to the Subclass Members.

122. During the Class Period, Chrysler televised advertisements showing its Vehicles, and most particularly the Jeeps, traversing wet and muddy, mountainous terrain, in snowstorms and rainstorms, through all manner of adverse conditions. These advertisements promoted the image of the Vehicles as extremely well made and durable vehicles, able to withstand the onslaught of fierce weather and rugged use over hill and dale. In fact, Chrysler knew, or should have known, that the Vehicles could not even be parked under a dripping tree, let alone go through a normal carwash, without suffering water-related damage from leaking sunroofs.

123. Similarly, Chrysler promoted the Chrysler Town and Country and 300 series as very high quality vehicles, and even designing the 300 Series to look like the iconic and ultra-high quality Bentley.

124. Chrysler's distribution, promotion, marketing and sales of the Vehicles, without disclosing that their sunroofs were defectively designed, made and installed, was an unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or otherwise constituted the knowing, concealment, suppression or omission of material fact with the intent that others including the Subclass Members would rely upon Chrysler's knowing, concealment, suppression or omission of information that the Vehicles had defective sunroofs, in connection with Chrysler's sales and the Subclass Members' purchases of the Vehicles.

125. Subclass Plaintiffs suffered ascertainable losses, measurable in dollar values, as a result of Chrysler's unconscionable, deceptive, false and misleading behavior described in the two immediately preceding paragraphs of this Complaint. These ascertainable losses include, among others: the loss of use and enjoyment of the Vehicles; the difference in value between the

---

[5] *N.J.S.A.* 56:8-2.

Vehicles for which the Subclass Plaintiffs paid and the lower value Vehicles with leaking

sunroofs that the Subclass Plaintiffs received; decreased resale value of the Vehicles; decreased

trade-in value of the Vehicles; increased repair costs; and increased depreciation of the Vehicles.

126.    A causal nexus exists between Chrysler's unconscionable, deceptive, false and

misleading actions described above and the Subclass Plaintiffs' ascertainable losses.  Without

Chrysler's defective design, substandard workmanship of the sunroofs and related parts,

improper installation and defective materials, the Subclass Plaintiffs would not have suffered

their ascertainable losses.

## **PRAYER FOR RELIEF**

WHEREFORE, the Subclass Plaintiffs request that the Court issue an Order and grant

Judgment to the Class and Subclass Plaintiffs as follows:

A.    Certifying this action as a Class Action;

B.    Naming the Subclass Plaintiffs as the representative Named Class and

Subclass Plaintiffs on behalf of the absent Class and Subclass Members;

C.    Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law

Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

D.    Granting the Sub Class Plaintiffs and Sub Class contractual, restitutionary

and statutory, common law and punitive damages in full recompense for their damages

including and not limited to damages relating to the following:

1) Repair costs;

2) Loss in diminution of value of their vehicles;

3) Loss of use and enjoyment;

4) Loss of personal property;

5) Time spent in arranging and obtaining repairs;

6) Inconvenience

E.  Granting the Subclass Plaintiffs and Subclass  such other and further relief, including, without limitation, injunctive and equitable relief,  as the Court deems just in all the circumstances; and

F.  Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## SIXTH CAUSE OF ACTION
### Unfair and Deceptive Acts and Practices Under State Laws

127.  Each of the above allegations are incorporated herein.

128.  Plaintiffs assert that because Chrysler's wrongful acts and practices were directed and disseminated to consumers in New Jersey, as evidenced by Plaintiff Manesis' purchase of his vehicle and the many Chrysler dealers in New Jersey and Chrysler's extensive marketing to consumers in New Jersey, that the choice of law rules in this Circuit support application of the New Jersey Consumer Fraud Act to the claims of class members nationwide.  As the choice of law question cannot be conclusively addressed at this point in the litigation, Plaintiffs state the following alternative causes of action under the laws of the States of residence of class members, if it is later determined by the Court that the choice of law rules require the application of these State laws, and not those of New Jersey.

129.    The practices discussed above, including but not limited to Chrysler's knowing and undisclosed sale of Vehicles containing the sunroof defect described herein and Chrysler's improper and unconscionable warranty practices all constitute unfair competition or unfair, unconscionable, deceptive, fraudulent, or unlawful acts or business practices in violation of the state consumer protection statutes listed in ¶¶ 130-177, below.

130.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq.  In particular, Alaska law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful. (b) The terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts: . . . (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. . . ;. . (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (8) advertising goods or services with intent not to sell them as advertised; . . . (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; . . . (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged: . . . (15) knowingly making false or

misleading statements concerning the need for parts, replacement, or repair service . . .

." Alaska Stat. § 45.50.471.  By selling the Vehicles to consumers with the

representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for,

and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough

off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not

leak, without revealing that the Vehicles were defective when sold and that the

Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to

Defendant's improper warranty practices and false and misleading statements to

consumers about the existence of, and fix for, the Defect, Defendant violated Alaska

Stat. Ann. 45.50.471.

131.    Defendant has engaged in unfair competition or unfair or deceptive acts

or practices in violation of Ariz. Rev. Stat. § 44-1521, et seq.  Particularly, Arizona

law prohibits "The act, use or employment by any person of any deception, deceptive

act or practice, fraud, false pretense, false promise, misrepresentation, or concealment,

suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale or advertisement of

any merchandise whether or not any person has in fact been misled, deceived or

damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-

1522(A).  By selling the Vehicles to consumers with the representation that the Jeeps

are sturdy, sound and watertight vehicles that were designed for, and would readily withstand

and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the

Town and Country and 300 series as a well-made vehicles that would not leak, without

revealing that the Vehicles were defective when sold and that the Vehicles would

leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Ariz. Rev. Stat. Ann. § 44-1522(A).

132.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Aim. § 4-88-101, et seq. in particular, Arkansas law provides, "(a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following: (1) Knowingly making a false representation is to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; . . . (3) Advertising the goods or services with the intent not to sell them as advertised; . . . (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade . . . ." Ark Code Ann. § 4-88-107. Arkansas law further provides, "When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful:  (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark Code Ann. § 4-88-108. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty

practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Ark Code Ann. §§ 4-88-107, 4-88-108.

133.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.  Particularly, California law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.  California law also provides that, "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised. . . ." Cal. Civ. Code § 1770(a).  By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1770(a).

134. Defendant has engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-101, et seq. In particular, Colorado law provides, "(1) A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person: . . . (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . (g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; . . . (i) Advertises goods, services, or property with intent not to sell them as advertised; . . . (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction . . . ." Colo. Rev. Stat. § 6-1-105. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Colo. Rev. Stat. § 6-1-105.

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or Practices in violation of Conn. Gen. Stat. § 42-110a, et seq. In particular, Connecticut law provides that "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Conn. Gen. Stat. § 42-110b.

136.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, § 2511, et seq. In particular, Delaware law provides that "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice." Del. Code Ann. tit. 6, § 2513(a). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300

41

series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Del. Code Ann. tit. 6, §2513(a).

137.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, et seq. Particularly, District of Columbia law provides, "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; (f) fail to state a material fact if such failure tends to mislead; . . . (h) advertise or otter goods or services without the intent to sell them or without the intent to sell them as advertised or offered . . . ." D.C. Code § 28-3904.  By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty

practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated D.C. Code § 28-3904.

138.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, et seq.  In particular, Florida law provides, "(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(l). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Fla. Stat. § 501.204(1).

139.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §10-1-390, et seq. In particular, Georgia law provides, "(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised', Ga. Code Ann. § 10-

1-372. Georgia law further provides, "(a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised . . . . " Ga. Code Ann. § 10-1-393(a). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Ga. Code Ann. §§ 10-1-372, 10-1-393(a).

140.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat, § 480-1, et seq. In particular, Hawaii law provides, "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Haw. Rev. Stat. § 480-2. Hawaii law further provides, "(a) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . (5) Represents that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Haw. Rev, Stat, § 481A-3. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Haw. Rev. Stat. §§ 480-2, 481 A-3.

141.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code Ann. § 48-601, et seq. in particular, Idaho law provides. "The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to he unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . .

(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer. . . ." Idaho Code Ann. § 48-603. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Idaho Code Ann. § 48-603.

142.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1, et seq. In particular, Illinois law provides, "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, [footnote] in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . ." 815 Ill, Comp. Stat. 505/2. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak,

without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated 815 Ill. Comp. Stat. 505/2.

143.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code § 24-5-0.5-1, et seq. In particular, Indiana law provides, "(a) The following acts or representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication by a supplier, are deceptive acts: (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have. (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not . . . (11) That the consumer will he able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it." Ind. Code § 24-5-0.5-3. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to

consumers about the existence of, and fix for, the Defect, Defendant violated Ind. Code § 24-5-0.5-3.

144.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. Ann, § 50-623, et seq. In particular, Kansas law provides, "(a) No supplier shall engage in any deceptive act or practice in connection with a consumer transaction; (b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled: (1) Representations made knowingly or with reason to know that: (A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have; . . . (D) property or services are of a particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; . . . (F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis tor making such representation; or (G) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact . . . ." Kan. Stat. Ann. § 50-626. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing

that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Kan. Stat. Ann. § 50-626.

145.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. Ann. § 367.110, et seq. In particular, Kentucky law provides, "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (2) For the purposes of this section, unfair shall he construed to mean unconscionable." Ky. Rev. Stat. Ann. § 367.170. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Ky. Rev. Stat. Ann. § 367. 170.

146.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. Ann. § 51:1401, et seq. Particularly, Louisiana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. Ann. § 51:1405A. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy,

sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated La. Rev. Stat. Ann. § 51:1405A.

147.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. Ann. tit. 5, § 205A, et seq. In particular, Maine law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Me. Rev. Stat. Ann. tit. 5, § 207. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Me. Rev. Stat. Ann. tit. 5, § 207.

148.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code Ann., Com. Law § 13-101, et seq. In particular, Maryland law provides, "Unfair or deceptive trade practices include any: (1) False, falsely disparaging, or misleading oral or written statement, visual description., or other representation of any kind

which has the capacity, tendency, or effect of deceiving or misleading consumers; (2)

Representation that: (i) Consumer goods, consumer realty, or consumer services have a

sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they

do not have; . . . or . . . (iv) Consumer goods, consumer realty, or consumer services are of a

particular standard, quality, grade, style, or model which they are not; (3) Failure to state a

material fact if the failure deceives or tends to deceive; . . . (5) Advertisement or offer of

consumer goods, consumer realty, or consumer services: (i) Without intent to sell, lease, or rent

them as advertised or offered; . . . (9) Deception, fraud, false pretense, false premise,

misrepresentation, or knowing concealment, suppression, or omission of any material

fact with the intent that a consumer rely on the same in connection with: (i) The

promotion or sale of any consumer goods, consumer realty, or consumer service. . ."

Md. Code Ann., Com. Law §13-301. By selling the Vehicles to consumers with the

representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for,

and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough

off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not

leak, without revealing that the Vehicles were defective when sold and that the

Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to

Defendant's improper warranty practices and false and misleading statements to

consumers about the existence of, and fix for, the Defect, Defendant violated Md. Code

Ann., Com. Law § 13-301.

149.    Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of Mass. Gen. Laws ch. 93A, § 1, et seq. In particular,

Massachusetts law provides "(a) Unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Mass. Gen. Laws ch. 93A, § 2.

150.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws § 445.901, et seq. In particular, Michigan law provides, "(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows: . . . (c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. . . . (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented . . . (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably he known by the consumer . . . (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. . . . (cc) Failing to reveal

facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Mich. Comp. Laws § 445.903.

151.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 8. 1, et seq. In particular, Minnesota law provides, "A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . . (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . (7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertises goods or services with intent not to sell them as advertised; . . . or (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, sub. 1. Minnesota law further provides, "Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise, securities, service, or anything offered by such person, firm, corporation, or association, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any

manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a hook, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such." Minn. Stat. § 325F.67. Minnesota law provides as well that, "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable . . . ." Minn. Stat. § 325F.69, sub. 1. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to

consumers about the existence of, and fix for, the Defect, Defendant violated Minn. Stat. §§ 325D.44, sub. 1, 325F.67 and 325F.69, sub. 1.

152. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.010, et seq. In particular Missouri law provides, "The act, use or employment by any person of any deception, fraud, false pretense, fuse promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material tact in connection with the sale or advertisement of any merchandise in trade or commerce . . . , in or from the state of Missouri, is declared to be an unlawful practice. . . ." Mo. Rev. Stat. § 407.020.1. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Mo. Rev. Stat. § 407.020. 1.

153. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. § 30-14-101, et seq. In particular. Montana law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad

weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Mont. Code Ann. § 30-14-103.

154.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, et seq. In particular, Nebraska law provides, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602. Nebraska law further provides, "(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not . . . ; . . . (9) Advertises goods or services with intent not to sell them as advertised; . . . (c) section does not affect unfair trade practices otherwise actionable at common law or under statutes of this state." Neb. Rev. Stat. § 87-302. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and

misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Neb. Rev. Stat. §§ 59-1602, 87-302.

155.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, et seq. Nevada law provides in particular, "A person engages in a 'deceptive trade practice' if, in the course of his business or occupation, he: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, ingredients, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith . . . 7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he knows or should know that they are of another standard, quality, grade, style or model . . . 9. Advertises goods or services with intent not to sell or lease them as advertised . . . 15. Knowingly makes any other false representation in a transaction . . ." Nev. Rev. Stat. § 598.0915. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Nev. Rev. Stat. § 598.0915.

156.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in, violation of N.H. Rev. Stat. Ann. § 358-A:1, et seq. Particularly, New Hampshire law provides, "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: . . . V. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . IX. Advertising goods or services with intent not to sell them as advertised . . . ." N.H. Rev. Stat. Ann. § 358-A:2. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated N.H. Rev. Stat. Ann. § 358-A:2.

157.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, et seq. In particular, New Mexico law provides, "D. 'unfair or deceptive trade practice' means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or

loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have (7) representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another: . . . (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive; . . . E. 'unconscionable trade practice' means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services . . . : (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." N.M. Stat. §57-12-2. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated N.M. Stat. §57-12-2.

158.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N. Y. Gen. Bus. Law § 349, et seq. In particular, New York law provides, "Deceptive acts or practices in the conduct of any business, trade or

commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated N.Y. Gen. Bus. Law § 349.

159.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq. In particular, North Carolina law provides, "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1 .1(a). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated N.C. Gen. Stat. § 75-1 .1(a).

160.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, et seq. In particular, North Dakota law provides, "The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to he an unlawful practice." N.D. Cent. Code § 51-15-02. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated N.D. Cent. Code § 51-15-02.

161.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code Ann. § 1345.01, et seq. In particular, Ohio law provides, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev. Code Ann. § 1345.02(a). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the

Town and Country and 300 series as a well-made vehicles that would not leak, without

revealing that the Vehicles were defective when sold and that the Vehicles would

leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's

improper warranty practices and false and misleading statements to consumers about

the existence of, and fix for, the Defect, Defendant violated Ohio Rev. Code Ann. §

1345.02(a).

162.    Defendant has engaged in unfair Competition or unfair or deceptive acts or

practices or made false representations in violation of Okla. Stat. tit. 15, § 751, et seq. In

particular. Oklahoma law provides, "As used in the Oklahoma Consumer Protection Act: .

13. 'Deceptive trade practice' means a misrepresentation, omission or other practice that

has deceived or could reasonably he expected to deceive or mislead a person to the

detriment of that person. Such a practice may occur before, during or after a consumer

transaction is entered into and may be written or oral; 14. 'Unfair trade practice' means

any practice which offends established public policy or if the practice is immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers. . . ." Okla.

Stat. lit. 15, § 752. Oklahoma law further provides. "A person engages in a practice which

is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et

seq. of this title, when, in the course of the person's business, the person: . . . 5. Makes a

false representation, knowingly or with reason to know, as to the characteristics,

ingredients, uses, benefits, alterations, or quantities of the subject of a consumer

transaction. . . ; . . . 7. Represents, knowingly or with reason to know, that the subject of a

consumer transaction is of a particular standard, style or model, if it is of another; 8.

Advertises, knowingly or with reason to know, the subject of a consumer transaction with

intent not to sell it as advertised; . . . 20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title . . . ." Okla. Stat. tit. 15, § 753. It continues to provide, "A. A person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person: . . . 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; . . . 7. Represents that goods or services are a particular standard, quality, or grade, or that goods are a particular style or model, if they are another; . . . C. The deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." Okla. Stat. tit. 78, § 53. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Okla. Stat. tits. 15, §§ 752 and 753, 78, § 53.

163.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq. In particular, Oregon law provides, "A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person: (1) Employs any unconscionable tactic in

connection with the sale, rental or other disposition of real estate, goods or services . . . ."
Or. Rev. Stat. § 646.607. Oregon law further provides, "(1) A person engages in an
unlawful practice when in the course of the person's business, vocation or occupation the
person does any of the following: . . . (e) Represents that real estate, goods or services have
sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities
that they do not have . . . . (g) Represents that real estate, goods or services are of a
particular standard, quality, or grade, or that real estate or goods are of a particular style or
model, if they are of another . . . . (t) Concurrent with tender or delivery of any real estate,
goods or services fails to disclose any known material defect or material nonconformity.
(u) Engages in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat.
§ 646.608. By selling the Vehicles to consumers with the representation that the Jeeps
are sturdy, sound and watertight vehicles that were designed for, and would readily withstand
and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the
Town and Country and 300 series as a well-made vehicles that would not leak, without
revealing that the Vehicles were defective when sold and that the Vehicles would
leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's
improper warranty practices and false and misleading statements to consumers about
the existence of, and fix for, the Defect, Defendant violated Or. Rev. Stat. §§ 646.607
646.608.

164.    Defendant has engaged in unfair competition or unfair or deceptive acts or
practices in violation of 73 Pa. Stat. Ann. tit. 73, § 201-I, et seq. In particular,
Pennsylvania law provides, "(4) 'Unfair methods of competition' and 'unfair or deceptive
acts or practices' mean any one or more of the following: (v) Representing that goods or

services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Pa. Stat. Ann. tit. 73, § 201-2. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Pa. Stat. Ann. tit. 73, § 201-2.

165.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, et seq. In particular, Rhode Island law provides, "As used in this chapter: . . . (6) 'Unfair methods of competition and unfair or deceptive acts or practices' means any one or more of the following: (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (vii) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (ix) Advertising goods or services with intent not to sell them as advertised; . . . (xii) Engaging in any other conduct that similarly creates a likelihood of

confusion or of misunderstanding; (xiii) Engaging in any act or practice that is unfair or deceptive to the consumer; (xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect; . . . (xvii) Advertising claims concerning safety, performance, and comparative price unless the advertiser, upon request by any person, the consumer council, or the attorney general, makes available documentation substantiating the validity of the claim . . . ." R.I. Gen. Laws § 6-13.1-1. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated R.I. Gen. Laws § 6-13.1-1.

166.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. § 39-5-10, et seq. In particular, South Carolina law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. . . ." S.C. Code Ann. § 39-5-20. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would

leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated S.C. Code Ann. § 39-5-20.

167.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, et seq. In particular, South Dakota law provides, "It is a deceptive act or practice for any person to: (1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby." S. D. Codified Laws § 37-24-6(1). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated S. D. Codified Laws § 37-24-6(1).

168.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101, et seq. In particular, Tennessee law provides "(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful

and in violation of this part . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised; . . . (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; . . . (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person . . . ." Tenn. Code Ann. § 47-18-104. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Tenn. Code Ann, § 47-18-104.

169.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. § 17.41, et seq. In particular, Texas law provides, (a) False, misleading, or deceptive acts or practices in the conduct of any trade or

commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code. (b) Except as provided in Subsection (d) of this section, the term false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts: . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ; . . . (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (9) advertising goods or services with intent not to sell them, as advertised; . . . (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would riot have entered had the information been disclosed . . . ." Tex. Bus. & Com. Code Ann. § 17.46. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Tex. Bus. & Com. Code Ann. 17.46.

170.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 11.11-1, et seq. In particular, Utah law provides, "(1) A deceptive act or practice by a supplier in connection with a consumer

transaction violates this chapter whether it occurs before, during, or after the transaction. (2) Without limiting the scope of Subsection (1), a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; (h) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not; . . . (e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; . . . (j) . . . (ii) fails to honor a warranty or a particular warranty term . . . ." Utah Code Ann. § 13-11-4. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Utah Code Ann. § 13-11-4.

171.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 2451, et seq. In particular, Vermont law provides. "(a) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful." Vt. Stat. Ann. tit. 9, § 2453. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily

handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Vt. Stat. Ann. fit. 95 § 2453.

172.    Defendants has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. § 59.1-196, et seq. In particular. Virginia law provides "A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful: . . . 5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; 7. Advertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned, or that are 'seconds,' irregulars, imperfects, or 'not first class,' without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are seconds. irregulars, imperfects or 'not first class'; 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . ." Va. Code Ann. 59. 1 -200. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow,

sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Va. Code Ann. § 59. 1-200.

173.   Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wash. Rev. Code. § 1986.010, et seq. Particularly, Washington law provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Wash. Rev. Code § 19.86.020. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Wash. Rev. Code § 1986.020.

174.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq. In particular, West Virginia law provides "(7) 'Unfair methods of competition and unfair or deceptive acts or practices' means and includes, but is not limited to, any one or more of the following: . .

. (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ; . . . (G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another . . . (I) Advertising goods or services with intent not to sell them as advertised; . . . (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; . . . (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fart with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby. . ." W. Va. Code § 46A-6-102. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated W. Va. Code § 46A-6-102.

175. Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wis. Stat. § 100.20, et seq. Particularly, Wisconsin law provides, "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices

in business are hereby prohibited." Wis. Stat. § 100.20(1). By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Wis. Stat. § 100.20(1).

176.    Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of Wyo. Stat. Ann. § 40-12-101, et seq. In particular, Wyoming law provides, "(a) A person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction, he knowingly: (i) Represents that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have: . . . (iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not; . . . (x) Advertises merchandise with intent not to sell it as advertised; . . . or . . . (xv) Engages in unfair or deceptive acts or practices." Wyo. Stat. Ann. § 40-12-105. By selling the Vehicles to consumers with the representation that the Jeeps are sturdy, sound and watertight vehicles that were designed for, and would readily withstand and easily handle, bad weather, rain, snow, sleet and wet and rough off-road terrain and the Town and Country and 300 series as a well-made vehicles that would not leak, without revealing that the Vehicles were defective when sold and that the Vehicles would leak in bad weather, rain, snow, sleet and in car washes, and due to Defendant's

improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect, Defendant violated Wyo. Stat. Ann. § 40-12-105.

177.     Plaintiffs and members of the Class have been injured by reason of Chrysler's unfair and deceptive acts and practices in regard to its manufacturing, marketing, sale, and warranty practices relating to the defective Vehicles. These injuries are of the type that the above State consumer protection statutes were designed to prevent, and are the direct result of Chrysler's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Subclass Plaintiffs request that the Court issue an Order and grant Judgment to the Class and Subclass Plaintiffs as follows:

A.     Certifying this action as a Class Action;

B.     Naming the Subclass Plaintiffs as the representative Named Class and Subclass Plaintiffs on behalf of the absent Class and Subclass Members;

C.     Appointing Keefe Bartels, LLC, Poulos LoPiccolo PC and The Law Offices of Peter C. Lucas, LLC as Class Counsel for all purposes in this action;

D.     Granting the Sub Class Plaintiffs and Sub Class contractual, restitutionary and statutory, common law and punitive damages in full recompense for their damages including and not limited to damages relating to the following:

1) Repair costs;

2) Loss in diminution of value of their vehicles;

3) Loss of use and enjoyment;

4) Loss of personal property;

5) Time spent in arranging and obtaining repairs;

6) Inconvenience

E.      Granting the Subclass Plaintiffs and Subclass  such other and further relief, including, without limitation, injunctive and equitable relief,  as the Court deems just in all the circumstances; and

F.      Granting Class Counsel an award of their attorneys' fees and costs of suit, reflective of the work done in prosecuting this action, the time spent, the effort and hard costs invested, and results obtained, in light of the Court's judgment informed by awards in other similar cases of comparable difficulty and complexity.

## JURY DEMAND

The Plaintiffs demand a jury trial on all issues so triable.

## TRIAL COUNSEL DESIGNATION

The Plaintiffs designate as trial counsel: John E. Keefe, Jr. of Keefe Bartels LLC; John N. Poulos of Poulos LoPiccolo PC; and Peter C. Lucas of The Law Offices of Peter C. Lucas, LLC.

Dated:  December 4, 2014

**POULOS LOPICCOLO PC**

./s/Joseph LoPiccolo
Joseph LoPiccolo
John N. Poulos
Poulos LoPiccolo PC
1305 South Roller Road
Ocean, New Jersey 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

John E. Keefe, Jr.
Stephen T. Sullivan, Jr.
KEEFE BARTELS
170 Monmouth Street
Red Bank, New Jersey
(732) 224-9400
jkeefe@keefebartels.com
ssullivan@keefebartels.com

Peter C. Lucas
Law Offices of Peter C. Lucas, LLC
725 Carol Avenue
Oakhurst, New Jersey 07755
(732) 663-9100
plucas@lm-lawfirm.com

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAY MILLER, *et al.*, | : | Case No. 3:12-cv-760 (MAS)(DEA) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : | Hon. Michael A. Shipp |
|  | : | United States District Judge |
| vs. | : |  |
|  | : |  |
| CHRYSLER GROUP LLC, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

RECEIVED
SEP 02 2014
DOUGLAS E. ARPERT
U.S. MAGISTRATE JUDGE

## STIPULATION OF PARTIES REGARDING TERMINATION OF CASE FOR PURPOSES OF REFILING

Plaintiffs David Cox, Melissa Doherty, Teresa Hughes, Anthony Lombardo, Jay Miller, Michael Newcomb, Steven Stahl, Sara Startzel, Lena Vartanian, Amy Weed, and Brooke Willman ("Plaintiffs"), and Defendant Chrysler Group LLC ("Chrysler Group"), subject to the Court's approval, hereby stipulate as follows:

WHEREAS this case was filed on February 8, 2012, and Chrysler Group was served with process on February 10, 2012; and

WHEREAS Plaintiffs filed a First Amended Complaint ("FAC") on March 14, 2012; and

WHEREAS, on December 7, 2012, this case was transferred to the United States District Court for the Southern District of New York, for referral to the Bankruptcy Court in that District ("Bankruptcy Court"); and

WHEREAS on July 29, 2013, pursuant to the Stipulation of the parties, the Bankruptcy Court entered the Order which is attached hereto as Exhibit A, which dismissed certain claims pleaded in the FAC, provided for the filing of a second amended complaint within specified limits, and remanded this case back to this Court; and

WHEREAS on September 27, 2013, Plaintiffs filed their Second Amended Complaint ("SAC"); and

WHEREAS Chrysler Group moved to dismiss the SAC, which motion was granted in part and denied in part, as set forth in the Order and Opinion attached hereto as Exhibit B; and

WHEREAS Plaintiffs moved for leave to file a Third Amended Complaint ("TAC"); and

WHEREAS on August 12, 2014 the Court entered the Parties' Stipulation regarding the filing of Plaintiffs' proposed TAC; and

WHEREAS the parties have yet to begin discovery of any nature, and the Court has expressed concern about the age of this case; and

WHEREAS Plaintiffs and Chrysler Group expressly agree and acknowledge that the terms of this Stipulation are applicable to, and can be enforced against, only the named parties in this case;

- 2 -

### IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES

that this case can be terminated by the Court subject to the following agreed upon
conditions:

### DEFINITION

The phrase "Refiled Case" as used herein shall mean the future case filed to

be filed within 3 months of the date that this case is terminated, by any or all

individuals who are named as Plaintiffs in this case, and in which claims are

pleaded based on alleged leaks in sunroofs in Jeep and/or Chrysler branded

vehicles.

### AGREEMENTS

1.     For any or all Plaintiffs who bring the Refiled Case, the filing date for

purposes of the statute of limitations for each such Plaintiff's claims shall be that

date(s) which would have been applicable in this terminated action;[1]

2.     The limitations imposed by the Bankruptcy Court's Order described

above shall be applicable in the Refiled Case;

---

[1]The parties have not agreed on the specific filing dates for each named
Plaintiff, other than that February 8, 2012, is the filing date for Plaintiffs Jay Miller
and Brooke Willman.  The parties retain their rights to assert that a different filing
date applies to all subsequently added Plaintiffs and/or that the filing date for those
subsequently added Plaintiffs relates back to the date of the filing of the original
Complaint in this case.  In either event, the parties agree that the filing dates for
each named Plaintiff that would have been applicable in this action will be
applicable in any Refiled Case.  This agreement is not intended to affect, in any
way, any newly added Plaintiffs.

3.     In the complaint filed in the Refiled Case, Plaintiffs will plead a separate prayer for relief for each Count and will identify whether the named Plaintiffs are bringing claims as part of the "Class" or "Subclass".

4.     Subject only to the Bankruptcy Court's Order and the Order and Opinion in this Action described above, in any Refiled Case Plaintiffs shall be free to plead any claims of their choosing, and Chrysler Group shall be free to file any type of responsive pleading of its choosing.  The Parties shall maintain any rights, remedies and/or defenses in the Refiled Case that they may have had at the termination of this action;

5.     Kathy Wisniewski, who is counsel for Chrysler Group in this case, shall accept service of process via electronic mail on behalf of Chrysler Group in the Refiled Case;

6.     Chrysler Group shall have 30 days from the service of a complaint in all Refiled Cases to enter its appearance and file its responsive pleading;

7.     No later than 14 days after Chrysler Group enters its appearance and files its responsive pleading in the Refiled Case, the parties shall execute and file a stipulation in substantially the form attached hereto as Exhibit C;

8.     In the Refiled Case the parties consent to all applications for *pro hac vice* appearance in the Refiled Case of all counsel admitted *pro hac vice* in this action;

- 4 -

9.      In the Refiled Case, within 14 days of when Chrysler Group files its

responsive pleading, the parties shall meet telephonically to confer on a joint

discovery plan, and within 7 days thereafter shall submit the joint discovery plan to

the Court;

10.      In the Refiled Case, upon the filing of the joint discovery plan the

parties shall jointly seek to have a scheduling conference set before the Court at the

earliest opportunity.

Respectfully submitted,

**GRAHAM CURTIN**
A Professional Association

By:  /s/ Thomas R. Curtin
      Thomas R. Curtin
      Four Headquarters Plaza
      P. O. Box 1991
      Morristown, New Jersey  07962
      (973) 292-1700
      (973) 898-0107 (fax)

**KEEFE BARTELS**

By:  /s/ Stephen T. Sullivan, Jr.
      Stephen T. Sullivan, Jr.
      170 Monmouth Street
      Red Bank, New Jersey  07701
      (732) 224-9400

So Ordered this __4th__ day
of _September_ , 20_14_

- 5 -

# EXHIBIT B

# Technical Service Bulletin

**NUMBER:**  23-44-99

**GROUP:**  Body

**DATE:**  Nov. 5, 1999

This bulletin is supplied as technical information only and is not an authorization for repair.  No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without written permission of DaimlerChrysler Corporation.

**SUBJECT:**
Sun Roof Water Leaks

**OVERVIEW:**
This bulletin involves installing a revised sun roof drain channel containing a secondary seal.

**MODELS:**
1999 - 2000 (WJ)  Grand Cherokee

**SYMPTOM/CONDITION:**
A water leak may be present at the rear of the sunroof when the vehicle is in an automatic car wash containing very high-pressure water jets.  Water can push past the primary seal and enter the drain channel.  Under certain circumstances, the water may splash or mist into the passenger compartment.  An improved drain channel has been developed which contains a secondary seal.

**DIAGNOSIS:**
If customers complain of this condition and no other sunroof problems are evident, perform the Repair Procedure.

**PARTS REQUIRED:**

| | | |
|---|---|---|
| 1 | 05012769AA | Drain Channel |

**REPAIR PROCEDURE:**

> THIS REPAIR IS COMPATIBLE WITH DAIMLERCHRYSLER'S MOBILE SERVICE PROGRAM AND DOES NOT REQUIRE HOISTS OR OTHER FULL SERVICE FACILITY SPECIAL EQUIPMENT.

1. Open the vent shade and then open the sunroof to the vent position but do not allow the sunroof to slide rearward.
2. From outside the vehicle remove the two rear drain channel attaching screws

CAUTION:   USE CARE NOT TO DROP EITHER OF THE TWO ATTACHING SCREWS INTO THE SUN ROOF MECHANISM.  A MAGNETIC SCREWDRIVER IS RECOMMENDED FOR THIS PROCEDURE.

3. Remove the drain channel.
4. Install the new channel, p/n 05012769AA, tightening the attaching screws to 2Nm (18-in. lbs.).

DaimlerChrysler Corporation

23-44-99                                  -2-


**POLICY:**      Reimbursable within the provisions of the warranty.

**TIME ALLOWANCE:**
Labor Operation No:            23-30-62-90   ..............................................................0.2 Hrs.

**FAILURE CODE:**   P8 – New Part

# EXHIBIT C



**NUMBER:** 23-050-04

**GROUP:** Body

**DATE:** December 02, 2004

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of DaimlerChrysler Corporation.

## SUBJECT:
Water Leak In Area Of A-Pillar Grab Handle Or Overhead Console

## OVERVIEW:
This bulletin involves a review of several possible causes for water leakage in the area of the A-pillar grab handle or overhead console.

## MODELS:

2005        (WK)        .    Grand Cherokee

## DISCUSSION:
A customer may experience a water leak at the A-pillar grab handle (left or right side) or in the area of the overhead console.

Analysis has found the following possible causes for water leakage at these locations:

1. A pinched or collapsed front sunroof drain tube (left or right side) between the headliner and metal roof panel at the outboard sun visor attachment. The pinched front drain tube(s) may cause water to backup in the tube and overflow the sunroof water trough.
2. A body sealer void at top of A-pillar where the front edge of the roof panel is joined to the A-pillar (body side aperture). A sufficient quantity of the body sealer may not have been applied to the joint.
3. A windshield sealer void at the top of the A-pillar. The front edge of the roof panel causes a "step" in the joint with the A-pillar that if severe enough the windshield sealer may not be able to fully compensate for.
4. A restricted rear sunroof drain tube (left or right side) near the exit end of the drain tube. The rear sunroof drain tube is routed down along the C-pillar. The end of the tube(s) may turn back on itself during installation at the bottom of the C-pillar. Sound deadening foam is applied to the C-pillar cavity once the drain tube is installed. The sound deadener may close off the end of the drain tube.

## POLICY:
Information Only



**Stick with the Specialists**™

The following water leaks have been identified for WK. The information is in TSB 23-050-04.

The problem usually manifest in the A-Pillar area and could be caused by the following:

**1.** A pinched or collapsed front sunroof drain tube (left or right side) between the headliner and metal roof panel at the outboard sun visor attachment. The pinched front drain tube(s) may cause water to backup in the tube and overflow the sunroof water trough.



Good Job



2. A body sealer void at top of A-pillar where the front edge of the roof panel is joined to the A-pillar (body side aperture). A sufficient quantity of the body sealer may not have been applied to the joint.

3. A windshield sealer void at the top of the A-pillar. The front edge of the roof panel causes a "step" in the joint with the A-pillar that if severe enough the windshield sealer may not be able to fully compensate for.

4. A restricted rear sunroof drain tube (left or right side) near the exit end of the drain

tube. The rear sunroof drain tube is routed down along the C-pillar. The end of the tube(s) may turn back on itself during installation at the bottom of the C-pillar. Sound deadening foam is applied to the C-pillar cavity once the drain tube is installed. The sound deadener may close off the end of the drain tube. (Number 11 in Picture)

**Rear and Front Drain Tube Routing**



# EXHIBIT D



**NUMBER:**  23-004-06

**GROUP:**  Body

**DATE:**  January 21, 2006

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of DaimlerChrysler Corporation.

**SUBJECT:**
Passenger Cabin Water Leakage And/Or Wind-Like Sound

**OVERVIEW:**
This bulletin provides diagnosis for either water leakage and/or wind-like sound(s).

**MODELS:**

2006          (XK/XH)                    Commander

**DISCUSSION:**
The customer may experience a water leak or a wind whistle-like sound coming from the front passenger compartment. The source of the leak or sound may be difficult to root cause. Refer to the following information as an assistance to your diagnosis process.

**A. Wind Whistle-Like Sound Or Water Leak At Primary Door Seal (Any Door)**

Possible Cause and Solution:

1. Primary door seal not fully installed or seated. Fix: Fully install door seal. If necessary, apply a suitable adhesive sealant between body flange and door seal.
2. Primary door seal buckled or kinked. Fix: Reposition primary door seal on body flange.

**B. Wind Rush-Like Sound Near Accelerator Pedal Area On 5.7L Equipped Vehicles**

Possible Cause and Solution:

1. Accelerator cable delete plug missing from or loose to bulkhead panel (Fig. 6). Fix: Install plug.

**C. Water Leak From A-Pillar Grab Handle, Front Edge Of Headliner, Or Sunvisor Attachment**

Possible Cause and Solution:

1. Sunroof drain(s) restricted. Drain hoses may have come loose. Drain hoses may be out of position and collapsed when headliner was installed. Drain hose end nipple restricted or blocked. Apply air pressure to each drain. Apply water to sunroof trough to determine if each hose is draining properly. Lower front portion of headliner to inspect sunroof drain connections and drain hoses. Fix: Repair as required. Refer to Service Bulletin 23-050-04.
2. Secondary door seal metal retention bracket has voids in its baked-on adhesive sealant (Fig. 1). Fix: Refer to Service Bulletin 23-050-05.



**Stick with the Specialists**™

23-004-06                          -2-

### D. Water Leak From Headliner Above Doors Or At Base Of A-Pillar, B-Pillar, or C-Pillar

Possible Cause and Solution:

1. Secondary door seal metal retention bracket has voids in its baked-on adhesive sealant (Fig. 1). Fix: Refer to Service Bulletin 23-050-05.

### E. Wind Whistle-Like Sound At Top Of Windshield

Possible Cause and Solution:

1. Top lip of the rubber seal along the top edge of the windshield is too high (Fig. 1). Fix: Top edge of the rubber seal must be below the radius (bend) of the leading edge of the roof panel. Apply a suitable adhesive to secure seal lip to body.



*Fig. 1 WINDSHIELD TOP SEAL LIP*

1 - Windshield Urethane

2 - Windshield Glass

3 - Rubber Seal

4 - Top Edge Of Rubber Seal - Edge MUST BE Below Radius Of Roof Panel

5 - Radius Of Roof Panel

6 - Roof Panel

7 - Baked-On Adhesive - Door Secondary Seal Retainer

8 - A-Pillar

-3-                                            23-004-06

### F. Wind Whistle-Like Sound At Sunroof

Possible Cause and Solution:

1. Sunroof over/under flush to the outside surface of the roof panel (Fig. 2). Fix: Adjust sunroof (glass) to obtain the following flush measurement to the roof panel:
   a. Front edge of sunroof glass: -1.0 mm (+/- 1.0 mm). Glass range: from -2 mm (under flush) to 0 mm (flush) to roof panel.
   b. Rear edge of sunroof glass: +1.0 mm (+/- 1.0 mm). Glass range: +2 mm (over flush) to 0 mm (flush) to roof panel.
2. Sunroof not centered in roof panel opening. Fix: Adjust sunroof module so that it is centered in opening.
3. Sunroof-to-roof seal has gaps, appears pinched or warped. Fix: Adjust sunroof module to remove imperfections in seal.



81849e4d

*Fig. 2 XK - GAP & FLUSH*

1 - Hood-To-Fender Fit

2 - Front Door Window Frame-To-Windshield Side Plastic Molding Fit

3 - Sunroof Front/Leading Edge-To-Roof Panel Fit

4 - Sunroof Rear/Trailing Edge-To-Roof Panel Fit

5 - Front Door-To-Roof Panel Fit

6 - Rear Door-To-Roof Panel Fit

7 - Rear Door-To-Quarter Panel Fit

8 - Front Door-To-Rear Door Fit

9 - Front Door-To-Fender Fit

10 - Front Door-To-Hood Fit

23-004-06                                     -4-

### G. Wind Whistle-Like Sound At Front Door

Possible Cause and Solution:

1. Front door is over/under flush to surrounding panels (Fig. 2). Fix: Adjust front door to
   obtain the following flush measurement with adjacent body panel:
   a. Front Door to Roof Panel: +3.0 mm (+/- 1.5 mm). Front door range: +1.5 mm (over
      flush) to +4.5 mm (over flush) to roof panel.
   b. Front Door to Rear Door: 0.0 mm (+/- 1.0 mm). Front door range: -1.0 mm (under
      flush) to +1.0 mm (over flush) to rear door
   c. Front Door to Fender: +0.5 mm (+/- 1.0 mm). Front door range: -0.5 mm (under
      flush) to +1.5 mm (over flush) to front fender.
   d. Front Door to Windshield Molding: +3.0 mm (+/- 1.0 mm). Molding range: +2.0 mm
      (over flush) to +4.0 mm (over flush) to front door.
   e. Front Door to Fender Alignment: 0.0 mm (+/- 1.5 mm). Front door body line
      alignment range: - 1.5 mm (below) to +1.5 mm (above) body line of fender.
2. Front door gap is not to specification (Fig. 2). Fix Adjust front door to obtain following
   gap measurement with adjacent body panel:
   a. Front Door to Roof Panel: 6.0 mm (+/- 1.5 mm). Front door range: 4.5 mm to 7.5
      mm gap between front door and roof panel.
   b. Front Door to Rear Door: 4.5 mm (+/- 1.0 mm). Front door range: 3.5 mm to 5.5 mm
      gap between front door and rear door.
   c. Front Door to Fender: 4.5 mm (+/- 1.25 mm). Front door range: 3.25 mm to 5.75
      mm gap between front door and fender.
   d. Front Door to Hood: 6.0 mm (+5.0mm / -1.0 mm). Front door range: 5.0 mm to 11.0
      mm gap between front door and hood.
   e. Front Door to Windshield Molding: 6.0 mm (+/- 2.0 mm). Front door range: 4.0 mm
      to 8.0 mm gap between front door and plastic windshield molding.

### H. Wind Whistle-Like Sound At Rear Door

Possible Cause and Solution:

1. Rear door is over/under flush to surrounding panels (Fig. 2). Fix: Adjust rear door to
   obtain the following flush measurement with adjacent body panel:
   a. Rear Door to Roof Panel: +3.0 mm (+/- 1.5 mm). Rear door range: +1.5 mm (over
      flush) to +4.5 mm (over flush) to roof panel.
   b. Rear Door to Rear Quarter Panel: 0.0 mm (+/- 1.0 mm). Rear door range: -1.0 mm
      (under flush) to +1.0 mm (over flush) to rear quarter panel.
   c. Rear Door to Front Door: 0.0 mm (+/- 1.0 mm). Rear door range: -1.0 mm (under
      flush) to +1.0 mm (over flush) to front door.
2. Rear door gap is not to specification (Fig. 2). Fix Adjust rear door to obtain following
   gap measurement with adjacent body panel:
   a. Rear Door to Roof Panel: 6.0 mm (+/- 1.5 mm). Rear door range: 4.5 mm to 7.5 mm
      gap between rear door and roof panel.
   b. Rear Door to Rear Quarter Panel: 4.5 mm (+/- 1.0 mm). Rear door range: 3.5 mm to
      5.5 mm gap between rear door and rear quarter panel.
   c. Rear Door to Front Door: 4.5 mm (+/- 1.0 mm). Rear door range: 3.5 mm to 5.5 mm
      gap between rear door and front door.

-5-                                                    23-004-06

### I. Wind Whistle-Like Sound or Water Leak At Inside Center Area Of Cowl Panel

Possible Cause and Solution:

1.  Two cowl panel studs, that are used to support the IP and the inside IP insulation blanket, are not sealed to the inside cowl panel. The head of each stud is sealed by a round mastic patch from outside of the vehicle, in the cowl plenum chamber. Studs can not easily be inspected from inside vehicle. Remove the cowl screen. With a mirror or hand, inspect both stud heads for the round mastic patch and proper centering of the patch over the stud head. Inspection may be difficult (Fig. 3). Fix: From the cowl plenum chamber, apply a suitable adhesive sealant to stud heads.



*Fig. 3 COWL - INTERIOR VIEW*

1 - Cowl To A-Pillar Joints
2 - Melt Down Patch - Covering Rectangular Hole/Opening In Cowl
3 - Cowl Stud Holes
4 - Accelerator Cable Delete Plug - Used On 5.7L Equipped Vehicles
5 - Bulkhead And Floor Pan Joints

### J. Wind Whistle-Like Sound or Water Leak From Inside Bulkhead Panel Seams

Possible Cause and Solution:

1.  Gap or voids in bulkhead panel seam sealer. Bulkhead panel joints with other body panels (cowl, A-Pillar side panel, floor, etc) may not be completely sealed. Remove inside kick panel trim. Pull back front of carpeting and sound insulation blanket to inspect bulkhead seams (Fig. 3). Fix: Apply a suitable flowable or pumpable adhesive sealant into the various bulkhead joint seams.

23-004-06                                    -6-

## K. Wind Whistle-Like Sound At Inside Lower Corner Of Windshield

Possible Cause and Solution:

1.  Melt down patch not covering opening in inside cowl panel. A melt down patch is
    located behind instrument panel (IP) at each far end of the inside cowl panel. Remove
    IP plastic side panels (end caps) from IP. Use your hand to reach up and feel for the
    melt down patch and its proper centering to over the cowl opening (Fig. 3) (Fig. 4). Fix:
    First attempt to press patch to the cowl body panel. Verify if patch adhesive is
    sufficient to remain retained to the cowl body. Apply a suitable flowable or pumpable
    adhesive sealant or mastic tape into the cover opening, as required.



*Fig. 4 COWL OPENING MELT DOWN PATCH*

1 - Cowl Panel - Interior Section

2 - Melt Down Patch - Patch Must Adhere Properly And Fully Cover Rectangular Hole

3 - A-Pillar

4 - Upper Cowl To A-Pillar Joint - Seal Joint Well - A Mastic Patch Normally Covers Joint

5 - Lower Cowl To A-Pillar Joint - Seal Joint Well

-7-                                                          23-004-06

2. Large inside joint, at lower corner of windshield, not sealed. A mastic (foil backed) patch is applied to joint. Patch may not be positioned correctly or properly pressed in place. Several panels come together to create the joint. Remove upper A-Pillar interior trim at windshield. Remove IP plastic side covers (end caps). Use a bright shop light to help with repair. Joint must be inspected from two locations. The top portion of the joint can be inspected while viewing through the windshield and with the shop light placed inside IP through side cover opening. The lower portion of the joint can be inspected through the side of the IP when the side cover is removed and the shop light is placed above at the top portion of the joint (Fig. 3) (Fig. 4) (Fig. 5). Fix: Apply a suitable flowable or pumpable adhesive sealant into joint. Seal entire joint well.



*Fig. 5 A-PILLAR TO COWL MASTIC PATCH*

1 - A-Pillar

2 - Cowl To A-Pillar Joint - Must Be Sealed Completely

3 - Foil Backed Mastic Patch - Used To Seal Cowl To A-Pillar Joint

4 - Melt Down Patch - Covers Rectangular Opening In Cowl

5 - Cowl Stud - Seal Hole And Stud Head From Outside Vehicle Through Cowl Chamber

6 - Melt Down Patch - Covers Exterior Cowl To Fender Joints

23-004-06                              -8-

### L. Wind Whistle-Like Sound or Water Leak At Cowl Panel To A-Pillar Side Panel Joint

Possible Cause and Solution:

1. Gap or voids in cowl joint seam sealer. Remove the cowl screen and HVAC baffle screen. HVAC baffle screen may not need to be fully removed to effect a good seal repair. With a mirror or hand, inspect inside the cowl plenum chamber. Inspect all cowl panel seams, especially the various seams at either end of the cowl plenum chamber (top joints and lower joints) (Fig. 6). Fix: Joints can be sealed from outside and inside the vehicle. Apply a suitable flowable or pumpable adhesive sealant into the various cowl joint seams. Sealant may be applied to the outside joints visible from the cowl chamber, from outside under the cowl chamber, and from inside under the cowl chamber. The inside joint may require the removal of the side trim panel and pulling the carpet and sound insulation blanket out of the way.



*Fig. 6 COWL - EXTERIOR VIEW*

1 - Cowl Joints

2 - Accelerator Cable Delete Plug - On 5.7L Equipped Vehicles Only

3 - Cowl Studs - Seal Stud Heads From Cowl Chamber Opening.

---

***POLICY:***
Information Only

# EXHIBIT E



| | |
|---|---|
| **NUMBER:** | 23-004-06 REV. A |
| **GROUP:** | Body |
| **DATE:** | July 20, 2006 |

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of DaimlerChrysler Corporation.

**THIS BULLETIN SUPERSEDES TECHNICAL SERVICE BULLETIN 23-004-06, DATED JANUARY 21, 2006, WHICH SHOULD BE REMOVED FROM YOUR FILES. ALL REVISIONS ARE HIGHLIGHTED WITH \*\*ASTERISKS\*\* AND INCLUDES ADDITIONAL INFORMATION TO SECTION E.**

**SUBJECT:**
Passenger Cabin Water Leakage And/Or Wind-Like Sound

**OVERVIEW:**
This bulletin provides diagnosis for either water leakage and/or wind-like sound(s).

**MODELS:**

| | | |
|---|---|---|
| 2006 | (XK/XH) | Commander |

**DISCUSSION:**
The customer may experience a water leak or a wind whistle-like sound coming from the front passenger compartment. The source of the leak or sound may be difficult to root cause. Refer to the following information as an assistance to your diagnosis process.

**A. Wind Whistle-Like Sound Or Water Leak At Primary Door Seal (Any Door)**

Possible Cause and Solution:

1. Primary door seal not fully installed or seated. Fix: Fully install door seal. If necessary, apply a suitable adhesive sealant between body flange and door seal.
2. Primary door seal buckled or kinked. Fix: Reposition primary door seal on body flange.

**B. Wind Rush-Like Sound Near Accelerator Pedal Area On 5.7L Equipped Vehicles**

Possible Cause and Solution:

1. Accelerator cable delete plug missing from or loose to bulkhead panel (Fig. 6). Fix: Install plug.



**Stick with the Specialists**[TV]

23-004-06 REV. A                        -2-

### C. Water Leak From A-Pillar Grab Handle, Front Edge Of Headliner, Or Sunvisor Attachment

Possible Cause and Solution:

1. Sunroof drain(s) restricted. Drain hoses may have come loose. Drain hoses may be out of position and collapsed when headliner was installed. Drain hose end nipple restricted or blocked. Apply air pressure to each drain. Apply water to sunroof trough to determine if each hose is draining properly. Lower front portion of headliner to inspect sunroof drain connections and drain hoses. Fix: Repair as required. Refer to Service Bulletin 23-050-04.
2. Secondary door seal metal retention bracket has voids in its baked-on adhesive sealant (Fig. 1). Fix: Refer to Service Bulletin 23-050-05.

### D. Water Leak From Headliner Above Doors Or At Base Of A-Pillar, B-Pillar, or C-Pillar

Possible Cause and Solution:

1. Secondary door seal metal retention bracket has voids in its baked-on adhesive sealant (Fig. 1). Fix: Refer to Service Bulletin 23-050-05.

### E. Wind Whistle-Like Sound At Top Of Windshield

Possible Cause and Solution:

1. Top lip **(Arrow #4 in Figure 1) of the rubber seal along the top edge of the windshield is too high (Fig. 1).
2. Top lip of seal along the top of the windshield may buzz or whistle while driving (especially at higher speeds), regardless of windshield position or relationship to roof. This condition may become louder or higher-pitched in HOT weather.
3. Fix: Top edge of the rubber seal must be below the radius (bend) of the leading edge of the roof panel. Apply a suitable adhesive to secure seal lip to body.**

-3-                              23-004-06 REV. A



*Fig. 1 WINDSHIELD TOP SEAL LIP*

1 - WINDSHIELD URETHANE

2 - WINDSHIELD GLASS

3 - RUBBER SEAL

4 - TOP EDGE OF RUBBER SEAL - EDGE MUST BE BELOW RADIUS OF ROOF PANEL

5 - RADIUS OF ROOF PANEL

6 - ROOF PANEL

7 - BAKED-ON ADHESIVE - DOOR SECONDARY SEAL RETAINER

8 - A-PILLAR

23-004-06 REV. A                              -4-

## F. Wind Whistle-Like Sound At Sunroof

Possible Cause and Solution:

1. Sunroof over/under flush to the outside surface of the roof panel (Fig. 2). Fix: Adjust sunroof (glass) to obtain the following flush measurement to the roof panel:
   a. Front edge of sunroof glass: -1.0 mm (+/- 1.0 mm). Glass range: from -2 mm (under flush) to 0 mm (flush) to roof panel.
   b. Rear edge of sunroof glass: +1.0 mm (+/- 1.0 mm). Glass range: +2 mm (over flush) to 0 mm (flush) to roof panel.
2. Sunroof not centered in roof panel opening. Fix: Adjust sunroof module so that it is centered in opening.
3. Sunroof-to-roof seal has gaps, appears pinched or warped. Fix: Adjust sunroof module to remove imperfections in seal.



81849a4d

*Fig. 2 XK - GAP & FLUSH*

1 - HOOD-TO-FENDER FIT

2 - FRONT DOOR WINDOW FRAME-TO-WINDSHIELD SIDE PLASTIC MOLDING FIT

3 - SUNROOF FRONT/LEADING EDGE-TO-ROOF PANEL FIT

4 - SUNROOF REAR/TRAILING EDGE-TO-ROOF PANEL FIT

5 - FRONT DOOR-TO-ROOF PANEL FIT

6 - REAR DOOR-TO-ROOF PANEL FIT

7 - REAR DOOR-TO-QUARTER PANEL FIT

8 - FRONT DOOR-TO-REAR DOOR FIT

9 - FRONT DOOR-TO-FENDER FIT

10 - FRONT DOOR-TO-HOOD FIT

### G. Wind Whistle-Like Sound At Front Door

Possible Cause and Solution:

1. Front door is over/under flush to surrounding panels (Fig. 2). Fix: Adjust front door to obtain the following flush measurement with adjacent body panel:
   a. Front Door to Roof Panel: +3.0 mm (+/- 1.5 mm). Front door range: +1.5 mm (over flush) to +4.5 mm (over flush) to roof panel.
   b. Front Door to Rear Door: 0.0 mm (+/- 1.0 mm). Front door range: -1.0 mm (under flush) to +1.0 mm (over flush) to rear door
   c. Front Door to Fender: +0.5 mm (+/- 1.0 mm). Front door range: -0.5 mm (under flush) to +1.5 mm (over flush) to front fender.
   d. Front Door to Windshield Molding: +3.0 mm (+/- 1.0 mm). Molding range: +2.0 mm (over flush) to +4.0 mm (over flush) to front door.
   e. Front Door to Fender Alignment: 0.0 mm (+/- 1.5 mm). Front door body line alignment range: - 1.5 mm (below) to +1.5 mm (above) body line of fender.
2. Front door gap is not to specification (Fig. 2). Fix Adjust front door to obtain following gap measurement with adjacent body panel:
   a. Front Door to Roof Panel: 6.0 mm (+/- 1.5 mm). Front door range: 4.5 mm to 7.5 mm gap between front door and roof panel.
   b. Front Door to Rear Door: 4.5 mm (+/- 1.0 mm). Front door range: 3.5 mm to 5.5 mm gap between front door and rear door.
   c. Front Door to Fender: 4.5 mm (+/- 1.25 mm). Front door range: 3.25 mm to 5.75 mm gap between front door and fender.
   d. Front Door to Hood: 6.0 mm (+5.0mm / -1.0 mm). Front door range: 5.0 mm to 11.0 mm gap between front door and hood.
   e. Front Door to Windshield Molding: 6.0 mm (+/- 2.0 mm). Front door range: 4.0 mm to 8.0 mm gap between front door and plastic windshield molding.

### H. Wind Whistle-Like Sound At Rear Door

Possible Cause and Solution:

1. Rear door is over/under flush to surrounding panels (Fig. 2). Fix: Adjust rear door to obtain the following flush measurement with adjacent body panel:
   a. Rear Door to Roof Panel: +3.0 mm (+/- 1.5 mm). Rear door range: +1.5 mm (over flush) to +4.5 mm (over flush) to roof panel.
   b. Rear Door to Rear Quarter Panel: 0.0 mm (+/- 1.0 mm). Rear door range: -1.0 mm (under flush) to +1.0 mm (over flush) to rear quarter panel.
   c. Rear Door to Front Door: 0.0 mm (+/- 1.0 mm). Rear door range: -1.0 mm (under flush) to +1.0 mm (over flush) to front door.
2. Rear door gap is not to specification (Fig. 2). Fix Adjust rear door to obtain following gap measurement with adjacent body panel:
   a. Rear Door to Roof Panel: 6.0 mm (+/- 1.5 mm). Rear door range: 4.5 mm to 7.5 mm gap between rear door and roof panel.
   b. Rear Door to Rear Quarter Panel: 4.5 mm (+/- 1.0 mm). Rear door range: 3.5 mm to 5.5 mm gap between rear door and rear quarter panel.
   c. Rear Door to Front Door: 4.5 mm (+/- 1.0 mm). Rear door range: 3.5 mm to 5.5 mm gap between rear door and front door.

23-004-06 REV. A                     -6-

## I. Wind Whistle-Like Sound or Water Leak At Inside Center Area Of Cowl Panel

Possible Cause and Solution:

1.  Two cowl panel studs, that are used to support the IP and the inside IP insulation blanket, are not sealed to the inside cowl panel. The head of each stud is sealed by a round mastic patch from outside of the vehicle, in the cowl plenum chamber. Studs can not easily be inspected from inside vehicle. Remove the cowl screen. With a mirror or hand, inspect both stud heads for the round mastic patch and proper centering of the patch over the stud head. Inspection may be difficult (Fig. 3). Fix: From the cowl plenum chamber, apply a suitable adhesive sealant to stud heads.



*Fig. 3 COWL - INTERIOR VIEW*

1 - COWL TO A-PILLAR JOINTS
2 - MELT DOWN PATCH - COVERING RECTANGULAR HOLE/OPENING IN COWL
3 - COWL STUD HOLES
4 - ACCELERATOR CABLE DELETE PLUG - USED ON 5.7L EQUIPPED VEHICLES
5 - BULKHEAD AND FLOOR PAN JOINTS

## J. Wind Whistle-Like Sound or Water Leak From Inside Bulkhead Panel Seams

Possible Cause and Solution:

1.  Gap or voids in bulkhead panel seam sealer. Bulkhead panel joints with other body panels (cowl, A-Pillar side panel, floor, etc) may not be completely sealed. Remove inside kick panel trim. Pull back front of carpeting and sound insulation blanket to inspect bulkhead seams (Fig. 3). Fix: Apply a suitable flowable or pumpable adhesive sealant into the various bulkhead joint seams.

## K. Wind Whistle-Like Sound At Inside Lower Corner Of Windshield

Possible Cause and Solution:

1.  Melt down patch not covering opening in inside cowl panel. A melt down patch is located behind instrument panel (IP) at each far end of the inside cowl panel. Remove IP plastic side panels (end caps) from IP. Use your hand to reach up and feel for the melt down patch and its proper centering to over the cowl opening (Fig. 3) (Fig. 4). Fix: First attempt to press patch to the cowl body panel. Verify if patch adhesive is sufficient to remain retained to the cowl body. Apply a suitable flowable or pumpable adhesive sealant or mastic tape into the cover opening, as required.



*Fig. 4 COWL OPENING MELT DOWN PATCH*

1 - COWL PANEL - INTERIOR SECTION

2 - MELT DOWN PATCH - PATCH MUST ADHERE PROPERLY AND FULLY COVER RECTANGULAR HOLE

3 - A-PILLAR

4 - UPPER COWL TO A-PILLAR JOINT - SEAL JOINT WELL - A MASTIC PATCH NORMALLY COVERS JOINT

5 - LOWER COWL TO A-PILLAR JOINT - SEAL JOINT WELL

23-004-06 REV. A                                 -8-

2.  Large inside joint, at lower corner of windshield, not sealed. A mastic (foil backed) patch is applied to joint. Patch may not be positioned correctly or properly pressed in place. Several panels come together to create the joint. Remove upper A-Pillar interior trim at windshield. Remove IP plastic side covers (end caps). Use a bright shop light to help with repair. Joint must be inspected from two locations. The top portion of the joint can be inspected while viewing through the windshield and with the shop light placed inside IP through side cover opening. The lower portion of the joint can be inspected through the side of the IP when the side cover is removed and the shop light is placed above at the top portion of the joint (Fig. 3) (Fig. 4) (Fig. 5). Fix: Apply a suitable flowable or pumpable adhesive sealant into joint. Seal entire joint well.



**Fig. 5 A-PILLAR TO COWL MASTIC PATCH**

1 - A-PILLAR

2 - COWL TO A-PILLAR JOINT - MUST BE SEALED COMPLETELY

3 - FOIL BACKED MASTIC PATCH - USED TO SEAL COWL TO A-PILLAR JOINT

4 - MELT DOWN PATCH - COVERS RECTANGULAR OPENING IN COWL

5 - COWL STUD - SEAL HOLE AND STUD HEAD FROM OUTSIDE VEHICLE THROUGH COWL CHAMBER

6 - MELT DOWN PATCH - COVERS EXTERIOR COWL TO FENDER JOINTS

-9-                                    23-004-06 REV. A

**L. Wind Whistle-Like Sound or Water Leak At Cowl Panel To A-Pillar Side Panel Joint**

Possible Cause and Solution:

1.   Gap or voids in cowl joint seam sealer. Remove the cowl screen and HVAC baffle screen. HVAC baffle screen may not need to be fully removed to effect a good seal repair. With a mirror or hand, inspect inside the cowl plenum chamber. Inspect all cowl panel seams, especially the various seams at either end of the cowl plenum chamber (top joints and lower joints) (Fig. 6). Fix: Joints can be sealed from outside and inside the vehicle. Apply a suitable flowable or pumpable adhesive sealant into the various cowl joint seams. Sealant may be applied to the outside joints visible from the cowl chamber, from outside under the cowl chamber, and from inside under the cowl chamber. The inside joint may require the removal of the side trim panel and pulling the carpet and sound insulation blanket out of the way.



81549047

**Fig. 6 COWL - EXTERIOR VIEW**

1 - COWL JOINTS
2 - ACCELERATOR CABLE DELETE PLUG - ON 5.7L EQUIPPED VEHICLES ONLY
3 - COWL STUDS - SEAL STUD HEADS FROM COWL CHAMBER OPENING.

**POLICY:**
Information Only

# EXHIBIT F

August 07, 2009

TO:       ALL CHRYSLER, DODGE AND JEEP DEALERS

FROM:     SERVICE OPERATIONS

SUBJECT:  RAPID RESPONSE TRANSMITTAL/SERVICE ACTION #09-044
          Sunroof Water Leak

**INVOLVED VEHICLES:**
2009  (JC)   Journey
2009  (JS)   Avenger/Sebring
2009  (KA)   Nitro
2009  (KK)   Liberty
2009  (MK)   Compass/Patriot
2009  (PM)   Caliber

**NOTE:** This Service Action affects both sold and unsold vehicles.

**NOTE:** The VIN List is available on DealerCONNECT for all affected dealers. The VIN List has been inserted in the Service Tab under Rapid Response Transmittals. The dealers receiving the Rapid Response Transmittal Service Action are the "Ship To" dealers and the VIN's listed are specific to their dealership. All involved vehicles will be loaded into the VIP system.

**NOTE:** This should be a top priority and be completed prior to sale to avoid suspect vehicles being delivered to customers.

**DISCUSSION:**
A number of vehicles were shipped that may have a small hole in the left front corner of the sunroof module beneath the cable drive tube creating a water leak. Dealers are required to inspect and if necessary repair the sunroof module hole following the Repair Procedure.


**PARTS REQUIRED:**

| | | |
|---|---|---|
| 1 | 08011 | 3M Weather Strip Adhesive 08011 or Equivalent |
| 1 (AR) | NPN | Isopropyl Alcohol |
| 1 | 4298 | 3M Adhesion Promoter 4298 or Equivalent |
| 1 | NPN | Applicator (Cotton Swab etc) |

Note: One 5oz tube of adhesive will service a minimum of 30 vehicles

**REPAIR PROCEDURE:**
 1.  Open the sunroof.



Figure 1- Sunroof Opening

 2.  Using an inspection mirror, inspect the area beneath the left cable drive tube (Fig 2).



Figure 2 - Inspection Identification

3. Is a hole visible?
   a. **YES** – Proceed to Step 4.
   b. **NO** – Return the vehicle to dealer inventory or customer.

4. Clean beneath the cable drive tube (weather strip adhesive application area) with isopropyl alcohol or an equivalent cleaner. Allow the cleaner to dry.
5. Apply adhesion promoter 3M 4298 or equivalent beneath the cable drive tube (weather strip adhesive application area). Follow adhesion promoter directions and allow flashing (drying) before adhesive application.
6. Dispense a small amount of adhesive onto an applicator and apply to the hole (Fig 3).



Figure 3 - Applying Adhesive

Note: The sunroof module has been removed for demonstration purposes.

7. Allow the adhesive to cure for 5 minutes and cycle the sunroof to verify no adhesive is on the cable drive.

8. Re-inspect with the mirror to verify the hole is sealed (Fig 4).



**Figure 4 - Cable Drive Tube Inspection**

9. Return vehicle to inventory or customer.

**POLICY:** Reimbursable within the provisions of the warranty.

**NOTE: USE OF THE LABOR OPERATION INCLUDED WITH THIS SERVICE ACTION ON VEHICLES OTHER THAN THOSE INVOLVED MAY BE SUBJECT TO CHARGE BACK.**

**TIME ALLOWANCE:**

**LABOR OPERATION NO:**

| 23-30-56-91 | Inspect and Apply Adhesive to Sunroof Module (B) | 0.2 Hrs. |
|---|---|---|

**FAILURE CODE:**      ZZ - Service Action

If you have any questions, contact your Business Center.

# EXHIBIT G



**NUMBER:** 23-016-10 REV.A

**GROUP:** Body

**DATE:** September 25, 2010

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

**THIS BULLETIN SUPERSEDES SERVICE BULLETIN 23-016-10, DATED September 22, 2010, WHICH SHOULD BE REMOVED FROM YOUR FILES. ALL REVISIONS ARE HIGHLIGHTED WITH \*\*ASTERISKS\*\* AND INCLUDE AN ADDITIONAL PART NUMBER AND PART NUMBER CHANGES.**

**SUBJECT:**
Water Leaks At The Front And/Or Rear Roof Area

**OVERVIEW:**
This bulletin involves inspecting the front and/or rear of the headliner for dampness. If necessary add additional seam sealer to the roof ditch and replacing the front and/or rear sunroof drain tubes.

**MODELS:**

2007 - 2010    (MK74)         Patriot

**NOTE: This bulletin applies to vehicles built before August 20, 2010 (MDH0820XX).**

**SYMPTOM/CONDITION:**
Water leaks from the roof ditch and sunroof area.

**DIAGNOSIS:**
The customer may experience dampness at the front and/or rear of the headliner.

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|------|----------|-------------|
| \*\*1(AR) | 57010774AA | Tube, Right Front Sunroof Drain\*\* |
| \*\*1(AR) | 57010773AA | Tube, Left Front Sunroof Drain\*\* |
| 2(AR) | 05160134AC | Tube, Rear Sunroof Drain |
| 2(AR) | 05027191AA | Grommet, Front Sunroof Drain Tube |
| 1(AR) | 05116250AD | Molding, Right Roof Ditch |
| \*\*1(AR) | 05116251AD | Molding, Left Roof Ditch\*\* |
| 1(AR) | NP | Kent Hi-Tech Clear Seam Sealer P10200 or Equivalent |



23-016-10 REV.A                                    -2-

| Qty. | Part No. | Description |
|------|----------|-------------|
| 1(AR) | NP | 3M 08984 General Purpose Adhesive Cleaner or Equivalent |

## INSPECTION PROCEDURE:
1. Inspect the headliner at the front and rear of the vehicle. Was there any dampness and/or water stains on the headliner?
   a. Yes>>> Proceed to Step #2.
   b. No>>>This bulletin does not apply continue further diagnosis.
2. Lower the headliner. Perform a water flow test to the entire roof. Where there any signs of water leaking?
   a. Yes>>> Proceed to Step #3.
   b. No>>> This bulletin does not apply continue further diagnosis.
3. If the water was leaking from the front and/or rear of the roof area and built before 12/10/2009 and is equipped with convoluted drain tubes (Fig. 1) proceed to Step #1 of the repair procedure. If the vehicle was built after 12/10/2009 proceed to Step #1 of roof seams and rear body plugs.



*Fig. 1 Convoluted Drain Tube*

1 - Convoluted Drain Tube

2 - Sunroof Module

## REPAIR PROCEDURE:
1. Remove the right and left front sunroof drain tubes. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Sunroof> Tube, Sunroof Drain> Removal.
2. Is the vehicle equipped with a manual transmission or automatic transmission?
   a. If the vehicle is equipped with a automatic transmission proceed to Step #1 of install left front drain tube for vehicles equipped with an automatic transmission only.
   b. If the vehicle is equipped with a manual transmission proceed to install left front drain tube for vehicles equipped with an manual transmission only.

### INSTALL LEFT FRONT DRAIN TUBE FOR VEHICLES EQUIPPED WITH A AUTOMATIC TRANSMISSION ONLY:

1. Remove the air cleaner body. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service info> Engine> Air Intake System> Body, Air Cleaner> Removal.
2. Remove the two nuts retaining the master cylinder to the brake booster and move it forward so the left front sunroof drain tube routing path can be accessed behind the left front strut tower (Fig. 2).

**NOTE: Do not disconnect any brake lines connected to the master cylinder.**



**Fig. 2 Brake Booster**

1 - Nuts

3. Remove the lower left side cowl trim panel. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service info> Body> Interior> Panel, Cowl Trim, Side> Removal.
4. Remove the kneeblocker. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service info> Body> Instrument Panel> Kneeblocker> Removal.

23-016-10 REV.A                    -4-

5.  Route the new left front sunroof drain tube through the engine side of the bulkhead (Fig. 3)



*Fig. 3 Left Front Drain Tube*

1 - Strut Tower
2 - Air Box
3 - Master Cylinder
4- Drain Tube Grommet

**NOTE: From underneath the left side instrument panel roll back the jute between the bulk head and the instrument panel at the top left to verify drain tube routing.**

-5-                                  23-016-10 REV.A

6.  Verify the grommet is correctly seated in the bulk head using a mirror and position it behind the strut tower looking at the upper right corner (Fig. 4).



*Fig. 4 Drain Tube Grommet Seated*

1 - Drain Tube
2 - Bulk Head

7.  Connect the drain tube to the sunroof drain spout.
8.  Install the Kneeblocker. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Instrument Panel> Kneeblocker> Installation.
9.  Install the lower left side cowl trim panel. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Interior> Panel, Cowl Trim, Side> Installation.
10. Re-secure the master cylinder to the brake booster with the two nuts previously removed.
11. Install the air cleaner body. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service Info> Engine> Air Intake System> Body, Air Cleaner> Installation.
12. Skip Step #1 of install left front drain tube for vehicles equipped with an manual transmission only and proceed to Step #1 right front sunroof drain tube.

**INSTALL LEFT FRONT DRAIN TUBE FOR VEHICLES EQUIPPED WITH A MANUAL TRANSMISSION ONLY:**
1.  Remove the air cleaner body. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Engine> Air Intake System> Body, Air Cleaner> Removal.
2.  Remove the master cylinder. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Brakes> Hydraulic/Mechanical> Master Cylinder, Brake> Removal.
3.  Remove the lower left side cowl trim panel. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Interior> Panel, Cowl Trim, Side> Removal.

23-016-10 REV.A                          -6-

4.   Remove the clutch pedal for access to the bulk head where the drain tube will be
     routed.
5.   Route the new left side sunroof drain tube through the engine side of the bulkhead
     (Fig. 5).

**NOTE:** From underneath the left side instrument panel roll back the jute between the
         bulk head and the instrument panel at the top left to verify drain tube routing.



*Fig. 5 Right Front Drain Tube*

1 - Right Strut Tower
2 - Drain Tube Grommet

6.  Verify the grommet is correctly seated in the bulk head using a mirror and position it behind the strut tower looking at the upper right corner (Fig. 6).



*Fig. 6 Drain Tube Grommet Seated*

1 - Drain Tube Grommet

2 - Bulk Head

7.  Connect the drain tub to the sunroof drain spout.
8.  Install the clutch pedal.
9.  Install the lower left side cowl trim panel. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service info> Body> Interior> Panel, Cowl Trim, Side> Installation.
10. Re-install the master cylinder. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service info> Brakes> Hydraulic/Mechanical> Master Cylinder, Brake> Installation.
11. Install the air cleaner body. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service info> Engine> Air Intake System> Body, Air Cleaner> Installation.

**RIGHT FRONT SUNROOF DRAIN TUBE:**
1.  Install the right front sunroof drain tube.
2.  Remove the lower right side cowl trim panel. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service info> Body> Interior> Panel, Cowl Trim, Side.

23-016-10 REV.A                    -8-

3.  Route the new right side sunroof drain tube through the engine side of the bulkhead (Fig. 7).



*Fig. 7 Right Front Drain Tube*

1 - Right Strut Tower
2 - Drain Tube Grommet

NOTE: From underneath the left side instrument panel roll back the jute between the bulk head and the instrument panel at the top left to verify drain tube routing.

-9-                                    23-016-10 REV.A

4.   Position a mirror behind the right strut tower and verify the grommet is properly seated against the bulkhead(Fig. 8).



*Fig. 8 Drain Tube Grommet Seated*

1 - Drain Tube Grommet

2 - Bulk Head

5.   Connect the drain tub to the sunroof drain spout.
6.   Install the lower right side cowl trim panel. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Interior> Panel, Cowl Trim, Side> Installation.

**REAR DRAIN TUBES:**
1.   Remove the right and left rear drain tubes. Refer to the detailed removal procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Sunroof> Tube, Sunroof Drain> Removal.
2.   Install the new rear sunroof drain tubes. Refer to the detailed installation procedures available in DealerConnect> TechCONNECT under: Service Info> Body> Sunroof> Tube, Sunroof Drain> Installation.
3.   Proceed to Step #1 of the verification procedure.

**ROOF SEAMS AND REAR BODY PLUGS:**
1.   Using a trim stick remove the right and left roof ditch moldings.
2.   Remove all adhesive residue in the roof ditch with 3M General Purpose Adhesive Cleaner 08984 or Equivalent with a general purpose cloth.

23-016-10 REV.A                                      -10-

3. Apply a clear paintable seam sealer such as Kent HI-Tech Seam Sealer P10200 or equivalent along both sides of the roof ditch seam as shown in (Fig. 9).



**Fig. 9 Roof Ditch**

1 - Clear Seam Sealer

23-016-10 REV.A

4.  At the rear check all body plugs and grommets (Fig. 10) and verify they are properly seated.



**Fig. 10 Grommets And Plugs**

1 - Grommets And Plugs

23-016-10 REV.A                         -12-

5.  At the rear roof panel apply Kent Hi-Tech Seam Sealer P10200 or equivalent around
    the patch shown in (Fig. 11) on the right and left side.



**Fig. 11 Roof Seam**

1 - Side Aperture

2 - Sealer

3 - Tailgate

6.  Allow the sealer to fully cure per adhesive manufacturers recommendations.
7.  Install the right an/or left roof ditch molding(s).

**NOTE:** When installing the roof ditch molding apply firm pressure to the molding so
proper wet is achieved to insure proper adhesion.

**VERIFICATION PROCEDURE:**
1.  Perform a water flow test and verify there are no water leaks.
2.  Return the vehicle to the customer.

**POLICY:**
Reimbursable within the provisions of the warranty.

-13-                              23-016-10 REV.A

*TIME ALLOWANCE:*

| Labor Operation No: | Description | Amount |
|---|---|---|
| 23-50-57-93 | Inspect and water test (C) | 0.3 Hrs. |
| 23-50-57-94 | Inspect and Water Test, Repair One Roof Seam (C) | 1.8 Hrs. |
| 23-50-57-95 | Inspect and Water Test, Repair Both Roof Seams (C) | 2.2 Hrs. |
| 23-30-63-96 | Inspect and Water Test, Replace Sunroof Drain Tubes With (Auto Trans) Only (C) | 2.4 Hrs. |
| 23-30-63-97 | Inspect and Water Test, Replace Sunroof Drain Tubes with (Manual Trans) Only (C) | 3.2 Hrs. |
| 23-30-63-98 | Inspect and Water Test, Replace Sunroof Drain Tubes ,Repair Both Roof Seams Only (C) | 3.3 Hrs. |

*FAILURE CODE:*

| ZZ | Service Action |
|---|---|

# EXHIBIT H



**NUMBER:**  23-033-11

**GROUP:**  Body

**DATE:**  August 25, 2011

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

**SUBJECT:**
Waterleak Diagnosis Procedures

**OVERVIEW:**
This bulletin introduces methods that assist in diagnosing potential areas for a water leak and should be followed whenever a vehicle is brought in with a water leak concern.

**MODELS:**

| 2011 | WK | Grand Cherokee |

**SYMPTOM/CONDITION:**
Customer complaint of damp carpet or a water leak.

**DIAGNOSIS:**
This bulletin is broken out by possible leak location and provides all the necessary information and latest methods to make effective repairs. The Labor Operations listed can be used based on repair methods recommended in this bulletin. If the customer describes the Symptom/Condition, perform the Repair Procedure.

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|------|----------|-------------|
| (AR) | NPN | P10200 Kent High-Tech Clear Seam Sealer or Equivalent |

**SPECIAL TOOLS/EQUIPMENT REQUIRED:**

| C-4755 | Trim Stick |
|--------|------------|
| NPN | Shop Air/Blow Gun |
| NPN | Foamy Glass Cleaner or Soapy Water Solution |
| NPN | Flashlight |
| NPN | Shop Water Supply/Hose for Leak Testing |

23-033-11                                   -2-

*REPAIR PROCEDURE:*

1.  Check plugs and grommets in body side at door hinge area for proper installation by
    pushing down around perimeter of grommet to ensure they are fully seated (Fig. 1).



*Fig. 1 Inspect A-Pillar Body Side Grommets*

1 - Door Wire Harness Seal

2 - Body Plugs

3 - Body Grommet

-3-                                23-033-11

2. Open rear liftgate and verify liftgate wiring grommets to body are fully seated to body sheet metal by pushing down around perimeter of grommet (Fig. 2).



**Fig. 2 Inspect Rear Liftgate Body Grommets**

1 - Liftgate Body Side Grommets
2 - Body Grommet (Driver Side)

---

**NOTE: Raise and lower liftgate to verify wiring is not pulling grommet out of hole in sheet metal.**

Case 3:14-cv-07573-MAS-DEA   Document 1   Filed 12/04/14   Page 134 of 141 PageID: 134

3. Remove the cowl panel cover in order to check for leak points on exterior cowl area. Refer to the detailed procedures available in DealerConnect>TechCONNECT> under: Service Info> 23 - Body> Exterior> COVER, Cowl Panel> Removal.
4. Water leak test the entire vehicle primarily around the exterior cowl area for leaks.

**NOTE: Hose test should be a minimum of 5 minutes or until water leak point is found.**

5. Did water enter the vehicle interior down the front of the dash panel area or through the side cowl area?
   a. Cowl Side Area Leak >>> Proceed to Step #6.
   b. Dash Panel Area Leak >>> Proceed to Step #11.
6. Determine if the water leak is originating from the lower corners of the windshield.
7. Lift up rubber windshield molding with trim stick (3) and spray foamy glass cleaner or soapy water solution (1) against the windshield urethane surface (Fig. 3).
8. Apply shop air using blow gun (2) from the interior of the vehicle at the bottom corner of the windshield and inspect for air bubbles on exterior windshield urethane surface (Fig. 3).

**NOTE: Lift up the rubber windshield molding with a trim stick (3) for a visual of possible bubbles (Fig. 3).**



*Fig. 3 Leak Check Lower Windshield Seal*

1 - Soapy Water Solution
2 - Blow Gun (Compressed Air)
3 - Trim Stick

-5-                                              23-033-11

9.  Are air bubbles present on the exterior windshield urethane surface?
    a. Yes >>> Proceed to Step #10.
    b. No >>> Proceed to Step #11.
10. Remove and reseal the windshield.

**NOTE: Use larger urethane bead at lower corner to ensure sealing around the sheet metal take-up beads (1) (Fig. 4).**



*Fig. 4 Windshield Resealing*

1 - Take-Up Beads

23-033-11                            -6-

11. Inspect the HVAC A/C condensate drain grommet to ensure that it is fully seated. Refer to the detailed procedures available in DealerConnect>TechCONNECT> under: Service Info> 23 - Body> Interior> BEZEL, Shifter> Removal .
12. Using a trim stick or equivalent, release the clip fasteners and separate the driver side console side cover (Fig. 5).



**Fig. 5 Console Side Cover Removal**

1 - Side Cover

**NOTE: If HVAC Grommet Seal is not seated (1), A/C condensate can leak onto floor panel. Grommet must be fully seated (Fig. 6).**



*Fig. 6 Inspect HVAC Drain Tube*

1 - HVAC Drain Tube Grommet

2 - Shifter Cable Grommet

3 - Driver's Side of Transmission Tunnel

4 - Instrument Panel

23-033-11                              -8-

13. Using a trim stick or equivalent, remove the right and left cowl drain troughs (1) to inspect the right and left sunroof drain tube grommets (Fig. 7).



*Fig. 7 Cowl Drain Trough Removal*

1 - Cowl Drain Trough

**NOTE:** Sunroof drain tube grommets must be fully seated to dash panel with drain tubes properly protruding out of dash panel or water may leak into the interior floor panels.

14. Water flow test the sunroof drain tubes using approximately 16 ounces (500mL) of water to verify possible obstructions and/or leaks (Fig. 8).



*Fig. 8 Inspect Sunroof Drain Tubes*

1 – Sunroof Drain Tube Port
2 – Sunroof Module
3 – Wind Stop
4 – Drain Tube Grommet (Under hood)
5 – Dash Panel Pass-Through Grommet

**NOTE:** Make sure the dash panel pass-through grommet (5) (located below passenger side drain tube grommet) is fully seated in the dash panel. Water from the sunroof drain tube (4) could leak into the vehicle interior unless grommet is fully seated.(Fig. 8).

23-033-11                                       -10-

15. Was the vehicle built prior to January 5, 2011?
    a. Yes >>> Proceed to Step #16.
    b. No >>> Proceed to Step #20.
16. Remove the front fenders. Refer to the detailed procedures available in
    DealerConnect>TechCONNECT> under: Service Info> 23 - Body> Exterior> FENDER,
    Front> Removal.
17. Access and reseal (2) the "knife edge joint" (3) between the body side Inner and body
    side reinforcement using Kent P10200 High-Tech Clear seam sealer or equivalent.



*Fig. 9 Body Knife Edge Sealing*

1 - Body Reinforcement Panel

2 - Urethane "Knife Edge" Seam

3 - Inside View of "Knife Edge" Seam Location

18. Reinstall the front fenders. Refer to the detailed procedures available in DealerConnect>TechCONNECT> under: Service Info> 23 – Body> Exterior> FENDER, Front> Installation.

19. Reinstall the cowl cover. Refer to the detailed procedures available in DealerConnect>TechCONNECT> under: Service Info> 23 – Body> Exterior> COVER, Cowl Panel> Installation.

20. Water leak test the entire vehicle primarily around the exterior cowl area for leaks.

**NOTE: Hose test should be a minimum of 5 minutes or until water leak point is found.**

21. Was a water leak still present?
   a. Yes >>> Further diagnosis required.
   b. No >>> Return the vehicle to the customer.

**POLICY:**
Reimbursable within the provisions of the warranty.

**TIME ALLOWANCE:**

| Labor Operation No: | Description | Amount |
|---|---|---|
| 23-50-01-92 | Inspect and Leak Check Vehicle | 0.8 Hrs. |
| 23-30-50-97 | Reseal Windshield | 1.1 Hrs. |
| 24-65-03-92 | Inspect and Repair HVAC Drain Tube | 0.2 Hrs. |
| 23-30-63-99 | Flow Test and Repair Sunroof Drain Tubes | 0.4 Hrs. |
| 23-50-01-95 | Remove Front Fenders and seal Cowl Side to Body Reinforcement Knife Edge Joint | 1.5 Hrs. |