<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAVID COX, et al.,

                 Plaintiffs,

          v.

CHRYSLER GROUP, LLC,

                Defendant.

Civil Action No. 14-7573 (MAS) (DEA)

**OPINION**

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court on the motion of Defendant Chrysler Group, LLC ("Chrysler" or "Defendant") to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) By separate motion, Defendant alternatively moves to strike Plaintiffs' prayer for consequential damages and injunctive and equitable relief pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (ECF No. 9.) Plaintiffs David Cox ("Cox"), Melissa Doherty ("Doherty"), Teresa Hughes ("Hughes"), Anthony Lombardo ("Lombardo"), Andrew Manesis ("Manesis"), and Michael Newcomb ("Newcomb") (collectively, "Plaintiffs") filed opposition (ECF Nos. 14, 15), and Defendant replied (ECF Nos. 16, 17). The Court, having considered the parties' arguments, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants in part and denies in part Defendant's motion to dismiss, and denies Defendant's motion to strike.

I.    **Background**

A.    **Procedural History and Overview**

This putative class action alleges that Defendant sold and failed to repair vehicles with defective sunroofs. Many of the facts and allegations in this case were previously before the Court in *Miller v. Chrysler Group, LLC*, No. 12-760 ("*Miller I*").[1] Plaintiffs claim that the Jeep Patriot, Jeep Liberty, Jeep Compass, Jeep Commander, Jeep Cherokee, Jeep Grand Cherokee, Chrysler Town and Country, and the Chrysler 300 series (collectively, "Class Vehicles") have defective sunroofs that "leak when exposed to rain, snow, sleet, car wash water and other forms of moisture." (Compl. ¶ 36, ECF No. 1.) Plaintiffs allege that Defendant's design, materials, and installation of the "factory-installed sunroofs" causes the leaks. (*Id.* ¶ 1.) Allegedly, the leaking water damages the vehicles in many ways, including "creat[ing] shorts in electrical circuitry, leading to engine stalling, instrumentation malfunctioning, radio and steering malfunctioning, and other electronically-controlled devices malfunctioning . . . ." (*Id.* ¶ 37.) Consequently, Plaintiffs claim that the leaky sunroofs cause the value of the vehicles to decrease drastically. (*Id.* ¶ 42.) In

---

[1] Originally *Miller I* was transferred to the United States District Court for the Southern District of New York for referral to that district's Bankruptcy Court. Accordingly, in *In re Old Carco LLC/Miller v. Chrysler Group, LLC*, No. 09-50002, Adv. Proc. No. 13-01100 (S.D.N.Y. Bankr. July 29, 2013), the Bankruptcy Court dismissed some of plaintiffs' claims, allowed amendment of the complaint, and transferred the case back to this Court. (Stipulation of Parties Regarding Future Proceedings in Case, ECF No. 13.) Following plaintiffs' amendment, Defendant moved to dismiss plaintiffs' second amended complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. The Court denied the motion in part and granted the motion in part, again granting plaintiffs leave to amend. Before Plaintiffs filed their third amended complaint, however, the parties voluntarily dismissed the action pursuant to a stipulation that allowed plaintiffs to refile their complaint. (Compl. ¶ 34.) Now, Plaintiffs' Complaint—effectively the Third Amended Complaint—includes additional allegations in support of existing claims and adds new plaintiffs.

addition, Plaintiffs allege that, in some cases, the leaks make driving the vehicles "impossible . . . in rain, sleet or other moisture conditions." (*Id.* ¶ 38.)

Plaintiffs bring claims for breach of express warranty (*id.* ¶¶ 86-97), breach of implied warranty (*Id.* ¶¶ 98-105), violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, (*id.* ¶¶ 106 -113), injunctive and equitable relief (*id.* ¶¶ 114-116), violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, 8-2 (*id.* ¶¶ 117-126), and, in the alternative, violations of consumer fraud statutes from forty-six states and the District of Columbia (*Id.* ¶¶ 127-177). The Class Vehicles came with a three-year, 36,000 mile warranty. (*Id.* ¶ 46.) For each of the named Plaintiffs the alleged defect manifested within the term of the warranty. (*Id.* ¶ 89.)

All of Plaintiffs' claims rest on the premise that Defendant made misrepresentations and omissions when marketing, leasing, selling, and responding to repair requests for the Class Vehicles. Plaintiffs allege that Defendant never disclosed that "the sunroofs, or their components, including the drainage tubes, required any inspections, special maintenance or other attention to prevent leaking." (*Id.* ¶¶ 4-5.) Further, Plaintiffs allege that Defendant did not disclose the true nature of the problem when the vehicles were taken to their dealers for repairs; rather, the Defendant "[a]ffirmatively [misled] . . . [and] declined to provide Class Members warranty repairs or other remedies for the leaking sunroofs. Chrysler variously claimed that the leaks resulted from external factors such as heavy rainfall, owner misuse, negligent maintenance or other factors beyond Chrysler's control." (*Id.* ¶ 7.) Importantly, Plaintiffs also allege that Defendant knew of the defective sunroofs for many years but chose not to remedy the problem. (*Id.* ¶ 53.)

**B.    Named Plaintiffs' Allegations**

In September 2010, Plaintiff David Cox purchased a 2010 Jeep Patriot from Dave Dennis Chrysler Dodge Jeep Ram in Beaver Creek, Ohio. (*Id.* ¶ 14.) Within a year of purchase, when the

vehicle had approximately 10,000 miles on it, the vehicle's sunroof began to leak, damaging the vehicle's radio. (*Id.* ¶ 15.) Cox immediately took the vehicle to a Chrysler dealer's service department to repair the leak. (*Id.*) Although the Chrysler dealer replaced the radio and cleaned out the sunroof's drain tubes, the sunroof continued to leak. (*Id.*) Accordingly, Cox took the vehicle back to the Chrysler dealer. (*Id.*) This time, however, Chrysler did not repair the sunroof, rather the dealership insisted that the clogged drain tubes constituted a maintenance problem. (*Id.*) Consequently, Cox's sunroof continues to leak water "through the sunroof and interior dome light . . . result[ing] in electrical problems, a noticeable musty or mold smell and water damage to the interior of his vehicle." (*Id.*)

In January 2013, Plaintiff Melissa Doherty purchased a 2011 Jeep Liberty from Hylan Auto sales in Middleboro, Massachusetts. (*Id.* ¶ 16.) In June 2013, when the vehicle had approximately 30,000 miles on it, Doherty notified a local Chrysler dealer that her vehicle's sunroof was repeatedly leaking water. (*Id.* ¶ 17.) A representative for Chrysler stated that the drain tubes were probably clogged due to "environmental issues," and therefore the repairs, which cost over one hundred dollars, would not be covered by the vehicle's warranty. (*Id.*) Thus, Plaintiffs allege that "[d]espite informing Chrysler about the leaking sunroof, Chrysler has failed to repair the vehicle." (*Id.*) Consequently, Doherty's sunroof continues to leak water into the vehicle's interior dome light that "has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of the vehicle." (*Id.*)

In July 2009, Plaintiff Teresa Hughes purchased a 2009 Jeep Patriot from Bonham C-P-D-J-E Inc. ("Bonham") in Bonham, Texas. (*Id.* ¶ 18.) In December 2009, when the vehicle had approximately 10,150 miles on it, the vehicle's sunroof began to leak. (*Id.* ¶ 19.) In May 2011, Hughes' husband contacted a representative from Bonham about the leaking sunroof. The

representative informed him that the sunroof's drain tubes were clogged.  After clearing the drain tubes, "the representative . . . instructed Plaintiff's husband that the vehicle should not be driven down dirt roads in order to prevent the tubes from clogging again," and that "it would cost no less than $100" if the drain tubes needed cleaning again. (*Id.*)  In June 2012, Hughes emailed Chrysler Group Customer Assistance and informed it that despite having the drain tubes cleaned within the year, the vehicle's sunroof continued to leak into the car.  Chrysler did not repair the vehicle. Consequently, the sunroof continues to leak water "into and through the passenger side floor board and rear view mirror" which "has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of her vehicle which has compelled her to incur out of pocket expenses of no less than $1,025.00 for repairs and cleanup of damage caused by the defect." (*Id.*)

In November 2012, Plaintiff Anthony Lombardo purchased a 2010 Jeep Cherokee SRT-8 with an extended six-year, 60,000 mile warranty from Westbury Chrysler in Jericho, New York. (*Id.* ¶ 20.)  When the vehicle had approximately 50,000 miles on it, Lombardo notified Westbury Chrysler about the leaking sunroof.  (*Id.* ¶ 21.)  Chrysler did not repair the vehicle.  (*Id.*) Consequently, the sunroof continues to leak water "into and through his passenger side floor board and rear view mirror that has resulted in electrical problems, a noticeable musty or mold smell and water damage to the interior of the vehicle." (*Id.*)

In May 2013, Plaintiff Andrew Manesis purchased a 2014 Jeep Compass from Dover Dodge Chrysler Jeep, Inc. in Rockaway, New Jersey.  (*Id.* ¶ 22.)  On July 30, 2013, when the vehicle had 2,185 miles on it, Manesis informed Dover Dodge Chrysler Jeep, Inc. that water was leaking from the vehicle's sunroof and dome light.  Chrysler failed to properly remedy the problem, because the leak returned within months of the attempted repair.  (*Id.* ¶ 24.)  On December 2, 2013, when the vehicle had 6,572 miles on it, Manesis informed Chrysler that water

was leaking from the "driver's side front corner in the headliner by the pillar area." (*Id.*) Chrysler again attempted to repair the vehicle, but the sunroof leaked again within ten months. (*Id.*) On October 22, 2014, when the vehicle had 17,326 miles on it, Manesis brought the vehicle to Dover Dodge Chrysler Jeep, Inc. for a third time. (*Id.*) Again, Chrysler attempted to repair the vehicle. (*Id.*) Since Chrysler failed to remedy the problem on multiple occasions, "the leaking water has caused a permanent musty or mold smell . . . and water damage to the interior of [the] vehicle." (*Id.* ¶ 25.)

In August 2009, Plaintiff Michael Newcomb purchased a 2009 Jeep Patriot from Langan Chrysler/Jeep in Schenectady, New York. (*Id.* ¶ 26.) Due to water leaking from the vehicle's sunroof and interior dome light, Newcomb has attempted to have the vehicle repaired on more than six different occasions. (*Id.* ¶ 27.) On August 27, 2009, when the vehicle had 1,890 miles on it, Newcomb brought his vehicle to Lawless Chrysler Jeep in Woburn, Massachusetts, complaining that water was leaking from the sunroof and dome light. (*Id.*) Chrysler attempted to repair the sunroof leak on that visit and on at least five subsequent visits. (*Id.*) In total, Newcomb has observed water leaking into his vehicle over 50 times. (*Id.*) Accordingly, because Chrysler has failed to remedy the problem, "the leaking water has caused a permanent musty or mold smell in his car and required Mr. Newcomb to take multiple days off from work to have his vehicle serviced." (*Id.*)

## II.   **Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a Rule 12(b)(6) motion

to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545; *see also* Fed. R. Civ. P. 8(a)(2). Put another way, the pleader must "set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)). Yet, importantly, in a Rule 12(b)(6) motion to dismiss, "the defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Effectively distilling the above, courts use a three-step process to determine whether a complaint survives a Rule 12(b)(6) motion to dismiss. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court "tak[es] note of the elements a plaintiff must plead to state a claim." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court separates the factual elements from the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). This is crucial because legal conclusions may accompany factual assertions to provide the complaint's framework, but legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 664. Third, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has made a plausible claim for relief." *Fowler*, 578 F.3d at 210-11. During this last step, the court may

consider documents attached to the complaint or explicitly referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "any document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment"); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

## III.   <u>Discussion</u>

This case involves several different claims and many choice-of-law issues. As explained below, the choice-of-law analyses are timely, proper, and result in the dismissal of some of Plaintiffs' claims. This opinion is organized accordingly, with any choice-of-law analysis proceeding the Rule 12(b)(6) analysis for each individual claim.

### A.   **Choice of Law: Overview**

Sitting in diversity, a district court must apply the choice of law rules of the forum state. *Klaxon Co. v. Strentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). New Jersey courts use the "most significant relationship" test of the Restatement Second of Conflict of Laws (1971). *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *3 (D.N.J. Jan. 24, 2014)); *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-44 (2008). This test involves a two-step inquiry. *P.V.*, 197 N.J. at 143. First, a court "determine[s] whether an actual conflict" of law exists. *Id.* If no conflict exists, then the law of the forum state applies and the court need not reach the second step of the analysis. *Id.* If there is a conflict, however, then the court proceeds to the second step. *Id.* At that point, "the Court must determine which state has the 'most significant relationship' to the claim,

by 'weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.'" *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116887, at *9 (D.N.J. Oct. 18, 2010)). Importantly, this choice-of-law analysis is conducted on a claim-by-claim basis. *Id.*

Since weighing the Restatement factors is fact-intensive, courts may find it difficult or impossible to conduct a choice-of-law analysis at the motion to dismiss stage without the benefit of discovery. *In re Samsung DLP Television Class Action Litig.*, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009). Thus, some courts in this district have simply postponed the choice-of-law analysis until the class certification stage. *See, e.g., Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (finding that "[t]he Court is unable to make the fact-intensive choice-of-law determination on the record before it," but acknowledging that "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss"). Yet where the complaint contains the necessary facts, courts have undergone choice-of-law analysis at the motion to dismiss stage. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (rejecting argument that the court erred in resolving a choice-of-law issue at motion the to dismiss stage). In addition, courts have performed the analysis at the motion to dismiss stage despite plaintiff's protests that doing so was premature. *See, e.g., Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 447-48 (D.N.J. 2012) ("Plaintiff's conclusory position that the Court cannot engage in a choice-of-law analysis is belied by her inability to indicate what other facts are necessary to decide this issue."); *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2013 WL 5574626, at *9 (D.N.J. Oct. 9, 2013) (proceeding with choice-of-law analysis where plaintiffs failed to demonstrate that additional information outside of the complaint could impact the court's analysis).

**B.**     **Breach of Express Warranty**

**1.**     **Choice of Law for Breach of Express Warranty**

Count One of Plaintiffs' Complaint alleges breach of express warranty.  (Compl. ¶¶ 86-97.)  As a preliminary matter, Defendant does not challenge the application of New Jersey law to Plaintiffs' breach of warranty claims.  (Def.'s Moving Br. 14-18.); (Def.'s Reply Br. 14-15.)  Thus, because Defendant does not challenge the application of New Jersey law, and because the parties do not brief the issue, the Court declines to conduct a choice-of-law analysis for this particular claim.  *See Cooper*, 374 F. App'x at 253 n.2 (3d Cir. 2010) (conducting choice-of-law analysis for plaintiff's claims, but refusing to do so for plaintiff's breach of express warranty claim: "[courts] generally apply the law of the forum state—here, New Jersey—to state law claims unless there is an objection by any of the parties, and since there is no objection by either party, we apply New Jersey law to [plaintiff's] breach of express warranty claim"); *see also Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 249-50 (D.N.J. 2008) ("[w]here the parties fail to point out or establish any difference in the laws of the various jurisdictions involved in a particular case, it is proper for the court to apply the law of the forum") (internal citations omitted).  Accordingly, for the purposes of this motion, the Court will apply New Jersey law to Plaintiffs' express warranty claims.

**2.**     **Analysis of Breach of Express Warranty Claim**

To state a valid claim for breach of an express warranty under New Jersey law, a plaintiff must allege:  "(1) that Defendant made an affirmation, promise or description [of] the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description."  *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (internal citations

omitted); *see also In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 175 (3d Cir. 2014). In addition, the plaintiff needs to allege proximate cause and damages. *Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *14 (D.N.J. June 29, 2015). Lastly, New Jersey has adopted the notice requirement of the Uniform Commercial Code, meaning that statutory notice to the seller is a condition precedent to filing a suit for breach of warranty. *Id.* The plaintiff, however, need not be in privity with the defendant in order to state a valid claim. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 322 (D.N.J. 2014).

Here, there are two potential bases for an express warranty claim: one relying on numerous representations from unidentified sources and one relying on representations in a written warranty. Only the latter claim is adequately pled. With respect to the former claim, Plaintiffs allege that Chrysler made "numerous" express warranties "about the high quality and sound functioning of the Vehicles," and that Chrysler "expressly warranted that the Vehicles were properly designed, fit for their intended purposes, made of good and serviceable materials appropriate for the use for which the Vehicles were intended . . . and would not leak." (Compl. ¶ 87.) As alleged, there is no indication that Chrysler made these representations to the Named Plaintiffs when they purchased their vehicles. As such, Plaintiffs fail to plead an express warranty claim based on these representations. *See Elias*, 252 F.R.D. at 250 ("an express warranty is created when a seller makes a promise to a buyer related to a good or promises that a good will conform to a specific description").

The Complaint also alleges breach of Chrysler's three-year, 36,000 thousand mile warranty ("Warranty"). (Compl. ¶ 46.) Defendant provides a copy of the Warranty within its Motion to

Dismiss:[2]  "The Basic Warranty covers all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship, or factory preparation. . . . These warranty repairs or adjustments . . . will be made by your dealer at no charge, using new or remanded parts." (Decl. of Kathleen N. Fennelly ("Fennelly Decl."), Ex. A ("Warranty") 5, ECF No. 8-3.)  Thus, the express written Warranty is a warranty to repair defects within a certain amount of time and miles.

Defendant contests the applicability of the Warranty on two grounds.  First, Defendant asserts that Plaintiffs' express warranty claim should be dismissed because the Complaint alleges design defects that are not covered by the Warranty.  (Def.'s Moving Br. 16-17.)  Defendant is correct in its assertion that the Warranty does not cover design defects.  *See e.g., Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 F. App'x 180, 184-85 (3d Cir. 2012).  Yet only part of Plaintiffs' allegations concern design. (Compl. ¶¶ 1, 10, 43, 45.)  Plaintiffs also allege that Chrysler used substandard materials and improperly installed the sunroofs during the manufacturing process.  (*Id.* ¶¶ 1, 10, 43, 45.)  Further, "[a]t the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 21, 2010).  Thus, the Court finds that the alleged defects in Plaintiffs' vehicles are covered by the Warranty, and Plaintiffs' Complaint shows that they "may be entitled to relief." *Phillips*, 515 F.3d at 233.

---

[2] Though provided by Defendant and outside of the Complaint, the Court may consider the Warranty because it is relied upon in Plaintiffs' Complaint and its authenticity is undisputed. *See Sentinel Trust Co.*, 316 F.3d at 216; *In re Burlington*, 114 F.3d at 1426; *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Second, Defendant asserts that Plaintiffs Doherty and Lombardo cannot maintain an action for breach of express warranty because they never presented their vehicles to a dealership for repair. (Def.'s Moving Br. 18.)  Under the Uniform Commercial Code adopted by New Jersey, parties to a contract may establish an exclusive remedy for breach, so long as it is "expressly agreed to." N.J.S.A. 12A:2-719(1)(b).  But even when parties expressly agree to an exclusive remedy provision, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy [is available under the U.C.C.]." N.J.S.A. 12A:2-719(2).  Exclusive remedy provisions may be found in warranties.

> For example, when a product becomes defective, the breach of warranty provision may limit the seller's obligation to repair or replace the defective equipment.  In these types of cases - where the seller has limited the warranty to the repair or replacement of a defective part or product - before the exclusive remedy is considered to have failed its essential purpose, the seller must be given an opportunity to repair or replace the product.

*BOC Grp., Inc.*, 359 N.J. Super. 135, 147 (App. Div. 2003) (internal citations omitted).

Here, Defendant clearly expressed an intent to limit the Plaintiffs' remedy to repair.  The first sentence of the Warranty is contained in a large bolded box and states the following:  "[t]he warranties contained in this booklet are the only express warranties that Chrysler Motors LLC ("Chrysler") makes for your vehicle." (Warranty 4.)  Shortly thereafter, the Warranty states that "[t]hese implied warranties are limited, to the extent allowed by law, to the time periods covered by the express written warranties contained in this booklet." (*Id.*)  Further, the Warranty manual continues: "[w]arranty service must be done by an authorized Chrysler, Dodge or Jeep dealer.  We strongly recommend that you take your vehicle to your Selling dealer." (Warranty 33.)[3]  Thus,

---

[3] Plaintiffs allege that "[t]he Class Plaintiffs and Class Members have complied with all of their obligations under their Vehicles' warranties.  To the extent they have not, such compliance is excused by Chrysler's misconduct." (Compl. ¶ 96.)  This conclusory statement is undermined by the specific allegations presented by each named Plaintiff.

under *N.J.S.A.* 12A:2-719(2), Plaintiffs are not entitled to relief unless circumstances caused the limited remedy to "fail its essential purpose." *See Palmucci v. Brunswick Corp.*, 311 N.J. Super. 607, 612-14 (App. Div. 1998) (holding that a written warranty met the requirements of *N.J.S.A.* 12A:2-719(1)(b) to create an exclusive remedy because the warranty excluded warranties of fitness and merchantability, limited the duration of other implied warranties, and stated that the seller's obligation was limited to repairing, refunding, or replacing). Accordingly, "plaintiff had an obligation to allow defendants to try to repair the [defect]." *Palmucci*, 311 N.J. Super. at 613.

The Court must now determine whether each of the named Plaintiffs have sufficiently alleged that the Warranty failed its essential purpose. The Court has already determined that, for the purposes of Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have plausibly alleged that the alleged defect was covered by the Warranty. As a result, every Plaintiff that gave Chrysler the opportunity to repair the defect but was refused service under the Warranty has sufficiently alleged that the limited remedy failed. *See BOC Grp., Inc.*, 359 N. J. Super. at 147 ("before the exclusive remedy is considered to have failed in its essential purpose, the seller must *be given an opportunity* to repair or replace the product) (emphasis added); *see also Petri Paint Co.*, 595 F. Supp. 2d at 423 ("i[f] a seller fails to . . . replace or repair a defective part, the limited remedy accordingly fails"). Alternatively, "[a] remedy may also fail of its essential purpose if, 'after numerous attempts to repair,' the product does not operate free of defects." *BOC Grp., Inc.*, 359 N.J. Super. at 148. Thus, if a Plaintiff alleges that her vehicle's sunroof remains defective after repeated repairs under the Warranty, then she has sufficiently alleged that the limited remedy failed.

The Court shall address the individual Plaintiffs in the order they are presented in the Complaint. Since Cox attempted to have his vehicle repaired twice and was refused service under

the Warranty on the second occasion, he has sufficiently alleged that the Warranty's limited remedy failed.  (Compl. ¶ 15.)

Doherty does not allege that she took her vehicle to a Chrysler dealer.  (Compl. ¶ 17.)  Rather, Doherty alleges that she contacted a Chrysler dealer about repairing the leak in her vehicle's sunroof, and she was told that the "drain tubes are most likely clogged due to 'environmental issues.'"  (*Id.*)  The Chrysler representative also informed her that "environmental issues" are not covered by the Warranty, and that it would cost over one hundred dollars to have the leak fixed.  (*Id.*)  Reading the Complaint in the light most favorable to Plaintiffs for the purposes of Rule 12(b)(6), the Court finds that Doherty did attempt to comply with the terms of the Warranty.  Although Doherty did not physically present her vehicle to a dealership, Chrysler's representative explicitly disclaimed her coverage under the Warranty even before assessing the vehicle.  Doherty presented Chrysler with the problem and Chrysler responded by discouraging her from attempting repair under the Warranty. As a result, Doherty has sufficiently alleged that the Warranty's limited remedy failed.

Hughes alleges that her husband took their vehicle to a Chrysler dealership initially, at which point a Chrysler representative cleaned out the vehicle's drain tubes.  (Compl. ¶ 19.)  The representative also informed Hughes's husband that if the drain tubes needed to be cleaned again in the future, it would cost at least a hundred dollars.  (*Id.*)  When the sunroof began to leak a second time, Hughes alleges that she emailed Chrysler Group Customer Assistance; she does not allege that she returned to the Chrysler dealership  (*Id.*)  For the same reasons as articulated above and applied to Doherty, Hughes has sufficiently alleged that the Warranty's limited remedy failed.

Lombardo alleges only that he notified Chrysler about the leaking sunroof.  (Compl. ¶ 21.)  Without more, merely stating that he informed Westbury Chrysler about the leaking sunroof is not

enough to allege that Chrysler had the opportunity to repair the defect under the Warranty. (*Id.*) As such, "defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the [defect]." *Palmucci*, 311 N.J. Super. at 614. Accordingly, because Lombardo has not alleged sufficient facts to find that the Warranty failed its essential purpose, his breach of express warranty claim is dismissed without prejudice.

Finally, both Manesis and Newcomb allege that they sought repairs for their vehicles' leaky sunroofs on multiple occasions. Manesis alleges that he sought repairs for his vehicle's leaky sunroof at least three separate times. (Compl. ¶¶ 23-24.) Newcomb alleges that he sought repairs for his vehicle's leaks at least eight separate times. (*Id.* ¶ 27.) Since Chrysler has attempted to repair on multiple occasions and has allegedly failed each time, both Manesis and Newcomb have adequately alleged that the Warranty's limited remedy failed. *See BOC Grp., Inc.*, 359 N.J. Super. at 148.

Having found that all Plaintiffs but Lombardo have sufficiently alleged that the Warranty's limited remedy failed of its essential purpose, the Court now turns to the remaining elements of a breach of express warranty claim. Under the U.C.C., both Plaintiff and Chrysler were bound by the terms of the Warranty. The Warranty made an explicit promise to repair certain defects in the vehicles. Such a warranty is clearly part of the basis of the bargain, which is evidenced by Plaintiff Lombardo's purchase of an extended warranty. (Compl. ¶ 20.) The named Plaintiffs have sufficiently alleged that their sunroofs began leaking within the warranty period. The Complaint sufficiently alleges that Plaintiffs notified Defendant prior to bringing suit. (*Id.* ¶¶ 48, 53, 90); *see In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011). As such, all Plaintiffs except Lombardo have successfully pled claims for breach of express warranty, and the Court denies Defendant's motion to dismiss their claims.

## C.   Breach of Implied Warranty

### 1.  Choice of Law for Breach of Implied Warranty

Count Two of Plaintiffs' Complaint alleges breach of implied warranty.  (Compl. ¶¶ 98-105.) Defendant argues that New York and Ohio law—which require privity for implied warranty claims—should apply to the claims brought by Cox, Lombardo, and Newcomb.  (Def.'s Moving Br. 20-21.)  As a result, Defendant argues that the Court should dismiss the implied warranty claims of Cox, Lombardo and Newcomb, because they admit that they lack privity with Chrysler. (*Id.* 20-21.)  Finding that the factual record is sufficiently developed, the Court now turns to a choice of law analysis for the Plaintiffs' breach of implied warranty claims.[4]  *See Harper*, 595 F. Supp. 2d at 490; *Montich*, 849 F. Supp. 2d at 447-48.

The states with potentially applicable laws for Plaintiffs are as follows: New Jersey, New York, Ohio, Massachusetts, and Texas. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (internal citation omitted) ("Until the putative class is certified, the action is one between the [named plaintiffs] and the defendants.  Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs.").  The Court first considers whether New Jersey law for breach of implied warranty conflicts with that of any of the other states. *See P.V.*, 197 N.J. at 143.  New Jersey, Texas, and Massachusetts do not require the plaintiff to be in

---

[4] Plaintiffs insist that the Court should not engage in a choice of law analysis because the Court previously refused to do so in *Miller I.* (Pls.' Opp'n Br. 16.)  At that time, Defendant had not adequately demonstrated a conflict of laws.  The Court will address the choice of law issues now that they are squarely before the Court at the motion to dismiss stage. *See Cooper*, 374 F. App'x at 254.  Plaintiffs' argument that the law of the case doctrine forbids the Court from re-analysis of the choice of law issue fails. (Pls.' Opp'n Br. 10-12, 16.)  The Court's opinion in *Miller I* was interlocutory and Defendant should be afforded the opportunity to reformulate its motion to dismiss in response to the current complaint. Fed. R. Civ. P. 54(b); *see Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 WL 1270958, at *13 n.5 (D.N.J. Mar. 18, 2015) (citing *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009)).

privity with the defendant to maintain an action for breach of implied warranty, while Ohio and New York do require privity. *Compare Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 327 (D.N.J. 2014) (holding New Jersey law does not require privity for breach of implied warranty), *and Shows v. Man Engines & Components, Inc.*, 364 S.W.3d 348, 355 (Tex. Ct. App. 2012) *aff'd*, 434 S.W.3d 132 (Tex. 2014) (holding the same for Texas law), *and Jacobs v. Yamaha Motor Corp., U.S.A.*, 649 N.E.2d 758, 761-63 (Mass. 1995) (holding the same for Massachusetts law where the plaintiff is a consumer), *with McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 756 (N.D. Ohio 2010) (holding Ohio law requires privity for breach of implied warranty), *and Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 262-63 (E.D.N.Y. 2014) (holding the same for New York law). Thus, because no actual conflict exists between New Jersey law and that of Texas and Massachusetts, New Jersey law will apply for Plaintiffs Doherty, Hughes and Manesis who bought and serviced their cars in Massachusetts, Texas, and New Jersey, respectively.[5]  *P.V.*, 197 N.J. at 143.

Having concluded that Ohio and New York law conflict with New Jersey's on the subject of breach of implied warranty, the Court must apply Section 188 of the Restatement (Second) of Conflict of Laws to determine which state has the most significant relationship to each of the remaining implied warranty claims. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011) ("[S]ince breach of express and implied warranty claims sound in contract, courts look to Section 188 of the Restatement to determine which state's law applies."). Section 188 requires the Court to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and

---

[5] Defendant does not challenge the application of New Jersey law to these Plaintiffs' breach of implied warranty claims.

(5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385, 2010 WL 2342388, at *10 (D.N.J. May 28, 2010) (internal citations omitted).   The Court will now analyze which state's law will apply to the Plaintiffs who have connections to Ohio and New York: Cox, Lombardo, and Newcomb.

For Plaintiff Cox, Ohio bears the most significant relationship to his breach of implied warranty claim.   Cox has not alleged that his claim has any relationship to New Jersey.   Cox, a resident of Ohio, bought his vehicle in Ohio, and the Complaint does not indicate that he attempted to repair his vehicle in any other state.   (Compl. ¶¶ 14-15.)   Though Chrysler's headquarters is located in Michigan, Cox does not allege he bought his vehicle from Chrysler Group, LLC itself. (*Id.* ¶ 14.)   Thus, the Restatement factors favor the application of Ohio law to his claim.   As a result, because Cox is not in privity with Chrysler, and privity is a requirement for a breach of implied warranty claim under Ohio law, Cox has failed to state a claim for breach of implied warranty.   *See McKinney*, 744 F. Supp. 2d at 756.   Accordingly, Cox's action for breach of implied warranty is dismissed without prejudice.

For Plaintiff Lombardo, New York bears the most significant relationship to his breach of implied warranty claim.   Again, Lombardo has not alleged that his claim has any connection to New Jersey.   Lombardo, a resident of New York, bought his vehicle in New York and had his vehicle serviced in New York.   (Compl. ¶¶ 20-21.)   Also like Cox, he admits that he did not buy his car directly from Chrysler Group, LLC.   (*Id.* ¶ 20.)   Thus, as alleged, the Restatement factors favor the application of New York law to his claim; and, therefore his claim fails for the same reason as Cox's claim: he lacks privity with Chrysler.   *See Tomasino*, 44 F. Supp. 3d at 262-63. Accordingly, Lombardo's claim for breach of implied warranty is dismissed without prejudice.

For Plaintiff Newcomb, the Court must conduct a more detailed analysis to determine which state bears the most significant relationship to his breach of implied warranty claim, because Newcomb interacted with Chrysler in both New York and Massachusetts. Newcomb, a resident of Massachusetts, bought his vehicle in New York, but the Chrysler dealership that attempted to repair his vehicle is located in his home state of Massachusetts. (Compl. ¶¶ 26-27.) Thus, factors one and two of Section 188 of the Restatement apply to New York, where he bought the car, and factors three through five apply to Massachusetts, where he resides and sought repairs. In addition, with respect to the third factor, Plaintiff alleges that he took his vehicle to the Chrysler dealership, which was located in Massachusetts, "continuously" for repair related to the sunroof leak. (Compl. ¶ 27.) Thus, construing the Complaint in the light most favorable to the Plaintiffs, the Court finds that Defendant has not established that New York law applies to Newcomb's breach of an implied warranty claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

## 2. Analysis for Breach of Implied Warranty Claim

The Court must now address whether Plaintiffs Doherty, Hughes, Manesis, and Newcomb have adequately stated a claim for breach of implied warranty under New Jersey law. "Pursuant to the implied warranty of merchantability, a merchant warrants that goods sold are fit for the ordinary purposes for which the goods are used." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 WL 4126264, at *19 (D.N.J. Sept. 3, 2008) (citing N.J.S.A. § 12A:2-314). More specifically for cars, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable transportation[,] it is generally considered merchantable." *Nelson*, 894 F. Supp. 2d at 567 (quoting *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010).

Here, Plaintiffs have adequately pled a claim for breach of implied warranty. Defendant is correct that the named Plaintiffs continued to use their cars after the sunroofs allegedly began to leak. (Def.'s Moving Br. 19-20.) Yet Plaintiffs do allege that "[t]he Vehicles are difficult or, in some cases, impossible to drive in the rain, sleet or other moisture conditions, and for a period of time after such conditions because of the time required to dry them out." (Compl. ¶ 38.) The Complaint also warrants the inference that the leaks were aggravating enough that at least some of the named Plaintiffs repeatedly sought repairs. (*Id.* ¶¶ 24, 27.) As a result, the Complaint plausibly demonstrates that the defects caused the vehicles to be at least unreliable for their "general purpose" of providing transportation. *See Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *12-13 (D.N.J. Mar. 31, 2010) (dismissing breach of implied warranty claim because plaintiff did not allege that the alleged defect made his vehicle incapable of providing transportation). As discussed earlier, Plaintiffs have sufficiently alleged that they notified Defendant prior to bringing suit. (Compl. ¶¶ 48, 53, 90.) Thus, the Court denies Defendant's motion to dismiss the breach of implied warranty claim with respect to Doherty, Hughes, Manesis, and Newcomb.

### D.  Violation of Magnuson-Moss Warranty Act

Count Three of Plaintiffs' Complaint alleges violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("MMWA"). (Compl ¶¶ 106-113.) The MMWA provides, in relevant part: "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The MMWA defines "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the

material or workmanship and affirms or promises that such material or workmanship is defect free . . . which written affirmation, promise or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

§ 2301(6)(A). Further, an "implied warranty" is defined as "an implied warranty arising under [s]tate law . . . in connection with the sale by a supplier of a consumer product." § 2301(7). As such, claims under the MMWA "stand or fall with [the claimant's] express and implied warranty claims under state law." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *4 (D.N.J. Apr. 7, 2011) (explaining that an MMWA claim is "derivative of Plaintiffs' state law claim of breach of implied warranty"). As such, because Plaintiffs' express written warranty claim survives Defendant's motion to dismiss, Plaintiffs' accompanying MMWA claims also survive.

### E.   Injunctive and Declaratory Relief

Count Four of Plaintiffs' Complaint is a claim for injunctive and equitable relief. (Compl. ¶¶ 114-116.) Plaintiffs also request injunctive and equitable relief separately in every prayer for relief that follows each cause of action. (*Id.* ¶¶ 26, 29, 31, 32, 35, 76, E.) Defendant is correct in its assertion that injunctive and declaratory relief are remedies—not independent causes of action. *See Chruby v. Kowaleski*, 534 F. App'x. 156, 160 n.2 (3d Cir. 2013) ("We agree . . . that an injunction is a remedy rather than a cause of action, so a separate claim for injunctive relief is unnecessary."); *see also StrikeForce Tech., Inc. v. WhiteSky, Inc.*, No. 13-1895, 2013 WL 3508835, at *10 (D.N.J. July 11, 2013) (dismissing "injunctive relief" as an independent cause of action but explaining that the dismissal would not affect the possibility of injunctive relief as a remedy). Accordingly, the Court dismisses Plaintiffs' independent claim for injunctive and equitable relief with prejudice.

**F.**     **Violations of State Consumer Fraud Acts**

    **1.**     **Choice of Law for State Consumer Fraud Claims**

Count Five of Plaintiffs' Complaint, brought by Plaintiffs Cox (Ohio), Doherty (Massachusetts), Lombardo (New York) and Manesis (New Jersey), alleges that Chrysler violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, 8-2. (Compl. ¶¶ 117-26.) Plaintiffs assert that a choice of law analysis is premature and that the NJCFA should apply to all of their claims. (*Id.* ¶ 128.) Alternatively, in Count Six, Plaintiffs allege that Defendant violated the consumer fraud statutes of forty-six states and the District of Columbia. (*Id.* ¶¶ 129-77.) Defendant argues that the NJCFA conflicts with the consumer fraud statutes of Plaintiffs' purchase states, and that the purchase states' consumer fraud statutes should apply. (Def.'s Moving Br. 30-34.) The Court, having already determined that choice of law analyses are proper and timely, conducts the two-part analysis below.

There is an actual conflict between the NJCFA and the consumer fraud statutes of Ohio, Massachusetts, and New York. The NJCFA conflicts with Ohio's Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.02(B), because although the NJCFA does not require pre-suit notice, OCSPA requires a specific type of pre-suit notice. *Compare Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 425 (App. Div. 2003), *and Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (outlining the elements of NJCFA claims), *with Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (explaining the two specific ways to plead pre-suit notice for OCSPA claims). The NJCFA conflicts with Massachusetts' consumer fraud statute, Mass. Gen. Laws Ann. Ch. 93A, § 9, for the same reason. *See In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 622-23 (D.N.J. 2015) (holding that a pre-suit demand letter is required to bring an action

23

under Mass. Gen. Laws Ann. Ch. 93A, § 9). Lastly, the NJCFA conflicts with New York's Consumer Protection Act ("NYCPA"), Gen. Bus. Law § 349, because New York's Consumer Protection Act is significantly broader, has a different statute of limitations, and limits plaintiff's access to treble damages. *See Pollard v. AEG Live, LLC*, No. 14-1155, 2014 WL 4637017, at \*3 (D.N.J. Sept. 16, 2014), *recons. denied in part*, 2014 WL 6474288 (D.N.J. Nov. 19, 2014).

Having concluded that Ohio, Massachusetts, and New York laws conflict with New Jersey's on the subject of consumer fraud, the Court must apply the Restatement (Second) of Conflict of Laws Section 148, which applies to claims involving fraud or misrepresentation, to determine which state has the most significant relationship to each of the remaining Plaintiffs' implied warranty claims. *See Arlandson*, 792 F. Supp. 2d at 708. Under Section 148(1) of the Restatement, "each plaintiff's state's laws should apply where the false representations were made and relied upon in the same state." *Id.* (citing *Augustino v. Quest Diagnostic Inc.*, 256 F.R.D. 437, 462 (D.N.J. 2009)). Here, Plaintiffs—Cox, Doherty, Lombardo, and Manesis—purchased their vehicles in their home states. Thus, pursuant to Section 148(1), the Court must analyze whether each Plaintiff has sufficiently pled a cause of action under their respective state's consumer fraud statute.

## 2.   Analysis for State Consumer Fraud Claims

Plaintiff Cox, an Ohio resident (Compl. ¶ 14), fails to adequately plead an OSCPA claim. Defendant argues that Cox's OSCPA claim must be dismissed because Cox does not adequately allege that Defendant was supplied with sufficient pre-suit notice. (Def.'s Moving Br. 37-38.) The Court agrees. To adequately plead prior notice, the plaintiff must allege that the Ohio Attorney General officially characterized the practice in question as unfair or deceptive, or an Ohio state court must find the practice to be unconscionable or deceptive. *Pattie v. Coach Inc.*, 29 F. Supp.

3d 1051, 1055 (N.D. Ohio 2014).  Plaintiffs have made no such allegations.  Accordingly, Cox's OSCPA claim is dismissed without prejudice.

Plaintiff Doherty, a Massachusetts resident (Compl. ¶ 16), fails to adequately plead a claim under the Massachusetts General Law, Chapter 93A, Section 9.  Defendant argues that Doherty's claim should be dismissed for failure to comply with Massachusetts's demand letter requirements. (Def.'s Moving Br. 38.)  Plaintiffs argue that Defendant has not demonstrated that it maintains a place of business in Massachusetts, and therefore Plaintiffs are exempt from the demand letter requirement.  (Pls.' Opp'n Br. 21.)  The statute provides in relevant part: "The demand requirements of this paragraph shall not apply if . . . the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . ."  Mass. Gen. Laws. ch. 93A, § 9(3).  But the burden is on the Plaintiff to allege an exception to the demand letter requirement.  *In re AZEK Bldg. Prods., Inc.*, 82 F. Supp. 3d at 622 (citing *Sumner v. Mortg. Elec. Registration Sys., Inc.,* No. 11-11910, 2012 WL 3059429, at *6 (D. Mass. July 26, 2012)).  Further, the Court refuses to accept Plaintiffs' argument that their complaint in *Miller I* satisfies the demand letter requirement.  (Pls.' Opp'n Br. 21-22.)  Plaintiffs do not cite authority in support of their assertion that a complaint can substitute as a demand letter.  *See In re AZEK Bldg. Prods., Inc.*, 82 F. Supp. 3d at 623 ("To the extent Plaintiffs urge this Court to adopt a new rule permitting a complaint to satisfy the demand letter requirement, the Court declines to do so.").  As a result, Doherty's claim under Massachusetts General Law Chapter 93A, Section 9 is dismissed without prejudice.

Now the Court turns to Plaintiff Manesis's claim under the NJCFA.  Manesis is a resident of New Jersey.  (Compl. ¶ 22.)  Defendant argues that to the extent Plaintiffs' NJCFA claim is based on affirmative misrepresentations, the Complaint fails to meet the particularity requirement

of Federal Rule of Civil Procedure 9(b).  (Def.'s Moving Br 26.)  In addition, Defendant contests

the portion of *Miller I* where the Court held that Plaintiffs had successfully pled an omission-based

NJCFA claim and asks the Court to reconsider its findings.  (Def.'s Moving Br 28-29; Def.'s Reply

Br. 6.)

To state a claim under the NJCFA, a plaintiff must allege three elements: (1) defendant's

unlawful practice, (2) plaintiff's ascertainable loss, and (3) a causal relationship between the two.

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389

(2007) (internal quotation marks omitted).  The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing concealment, suppression, or omission of any material fact with intent that
> others rely upon such concealment, suppression or omission, in connection with the
> sale or advertisement of any merchandise . . . .[6]

N.J.S.A. 56:8-2.

When alleging fraud, Federal Rule of Civil Procedure 9(b) applies.  Fed. R. Civ. P. 9(b).

"To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged

fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  Furthermore, a breach of warranty

is not considered an unlawful practice per se under the NJCFA.  *Cox v. Sears Roebuck & Co.*, 138

N.J. 2, 17 (1994).  Rather, to state a valid NJCFA claim, a plaintiff must allege "substantial

aggravating circumstances," *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997), and

demonstrate that the defendant's conduct "stand[s] outside the norm of reasonable business

---

[6] Merchandise is a broad term that includes "goods," "commodities," and "services of anything
offered." N.J.S.A. 56:8-`(c). Here, the Vehicles in question are covered by the NJCFA.

26

practice in that it will victimize the average consumer," *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995).

Here, while Plaintiff Manesis has failed to adequately plead an NJCFA claim based on affirmative misrepresentations, he has adequately pled an NJCFA claim based on omission. Plaintiffs' allegations concerning the representations are general:

> During the Class Period, Chrysler televised advertisements showing its Vehicles, and most particularly the Jeeps, traversing wet and muddy, mountainous terrain, in snowstorms and rainstorms, through all manner of adverse conditions. These advertisements promoted the image of the Vehicles as extremely well made and durable vehicles, able to withstand the onslaught of fierce weather and rugged use over hill and dale. In fact, Chrysler knew, or should have known, that the Vehicles could not even be parked under a dripping tree, let alone go through a normal carwash, without suffering water-related damage from leaking sunroofs.

(Compl. ¶ 122.) Plaintiffs also allege that "Chrysler's distribution, promotion, marketing and sales of the Vehicles" did not disclose the defects in the Vehicles' sunroofs and that Plaintiffs relied upon the concealment of the defects. (*Id.* ¶ 124.) These allegations, without more, simply do not "inject precision" into the fraud claim to the extent needed by Rule 9(b)'s particularity requirement. As such, Manesis has not adequately pled an NJFCA claim based on affirmative misrepresentation.

The Court need not re-analyze its previous decision in *Miller I*, holding that Plaintiffs had adequately pled an omission-based NJCFA claim. Defendant acknowledges that it is asking for reconsideration on this issue. (Def.'s Reply Br. 6.) This request for reconsideration is untimely and improper. Fed. R. Civ. P. 60(c). As a result, Manesis' NJCFA claim survives.[7]

---

[7] For completeness, the Court will briefly address Defendant's argument that the Technical Service Bulletins ("TSBs") attached to the Complaint do not support the inference that Defendant had knowledge of the sunroof's defects. Specifically, Defendant argues that discrepancies between the TSBs and Plaintiffs' Vehicles render the TSBs inapplicable. (Def.'s Moving Br. 28-30.) In

Lastly, Plaintiff Lombardo, a resident of New York (Compl. ¶ 20), has sufficiently pled a violation of the NYCPA, General Business Law, Section 349. To state a claim under the NYCPA "plaintiffs must allege '(1) the act or practice was consumer-oriented, (2) the act or practice was misleading in a material respect, and (3) the plaintiff was injured as a result.'" *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The NYCPA actually uses broader language than that in the NJCFA. *See Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 726 (D.N.J. 2008). Thus, because the Complaint adequately alleges an omission-based NJCFA claim, it also sufficiently states a claim under New York's consumer protection statute. *See Ramirez*, 644 F. Supp. 2d at 501-02 (holding that plaintiff had adequately pled a N.Y. Gen. Bus. Law § 349 claim because he had adequately pled a NJCFA claim).

In summary, the Court dismisses Cox's OSCPA claim and Doherty's Massachusetts consumer fraud claim. These claims are dismissed without prejudice.

### G.   Plaintiffs' Claims as to Products Not Purchased Individually

In addition to the Jeep Patriot, Jeep Liberty, Jeep Compass, and Jeep Grand Cherokee owned by the named Plaintiffs, the Complaint also contains allegations related to the Jeep Commander, Jeep Cherokee, Chrysler Town and Country, and the Chrysler 300 series. Since none

---

*Majdipour,* the court found that a TSB attached to the complaint bolstered plaintiff's allegations that the defendant-auto-maker had knowledge of the alleged defect. 2013 WL 5574626, at *12. Further, the *Majdipour* court found that even though the TSBs were only applicable to certain model years, they still supported plaintiff's claims because plaintiffs alleged that the defect was present in all of defendant's vehicles across many model years. *Id.* at *18. Similarly, in the present case, Plaintiffs allege that the defects are present in the factory-installed sunroofs across many models spanning multiple years. Therefore, the TSBs buttress Plaintiffs' assertion that Chrysler was aware of the defects that resulted from some error in its manufacturing process. In light of the fact that knowledge can be alleged generally under Federal Rule of Civil Procedure 9(b), the TSBs allow for the inference that Defendant knew that some of the Class Vehicles would leak, and Defendant concealed or failed to disclose the defect that caused the problem.

of the named Plaintiffs own any of the latter vehicles (Compl. ¶¶ 14-27), Defendant asserts that all claims pertaining to these vehicles should be dismissed for lack of standing (Def.'s Moving Br. 13).

There are three basic requirements to establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (internal citations omitted). "In the class action context, however, traditional notions of standing are not completely informative of what claims may be asserted." *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d 451, 461-62 (D.N.J. 2005). Still, "standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.'" *Id.* at 461 (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)). Accordingly, "'if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.'" *Hayes v. Wal-Mart Stores, Inc.*, No. 12-2522, 2013 WL 3957757, at *9 (3d Cir. 2013) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). In *Haas v. Pittsburgh National Bank*, the Third Circuit held that although a plaintiff lacked standing to pursue a particular claim, the plaintiff could assert the claim in a putative class action because she had standing to pursue two closely related claims against the same defendant. 526 F.2d 1083, 1088-89 (3d Cir. 1975); *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("Where an action challenges a

policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.")

Courts in this district are divided on this issue. Where a class plaintiff brings a claim for a product within a line of products, some courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase. *See Liberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011); *Hemy v. Perdue Farms. Inc.*, No. 11-888, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011). Other courts, following *Haas*, have refused to dismiss claims for products that the named plaintiffs did not buy themselves. *See Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *14-16 (D.N.J. June 26, 2012); *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2014 WL 5092920, at *6-8 (D.N.J. Oct. 10, 2014); *In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*, No. 12-3571, 2013 WL 6450701, at *4-6 (D.N.J. Dec. 9, 2013). The *Gerber* court explained it was following the approach taken by *Haas* and *Stewart*: "First, Plaintiffs sufficiently allege that the basis for the claims is the same . . . [s]econd, the Court finds that the products are closely related . . . [and] [f]inally, the Defendants are the same due to both products being manufacturer by Gerber." *In re Gerber*, No. 12-835, 2014 WL 5092920, at *6.

Here, the Court finds that dismissal on standing grounds would be premature. Though the named Plaintiffs did not purchase the Jeep Commander, Jeep Cherokee, Chrysler Town and Country, or the Chrysler 300 series, the three considerations outlined in *Gerber* are present. Since Chrysler's Warranty applies to every vehicle it manufactures, Plaintiffs sufficiently allege that the basis for each warranty claim is the same across all vehicles. In addition, as explained above, because Plaintiffs allege that the defect is present in Chrysler's factory-installed sunroofs,

Plaintiffs sufficiently allege that the basis for each consumer fraud claim is the same across all vehicles. Accordingly, because the factory-installed sunroof is the common denominator between all vehicles manufactured by Chrysler, the products are closely related. Though Chrysler does not specifically allege that the sunroofs' manufacturers are the same or that the vehicles sunroofs are all of identical design, the Court does not find this fatal to Plaintiffs' standing. Regardless of the sunroofs' manufacturer and type, Plaintiffs allege that Chrysler installed the sunroofs incorrectly and were aware of the defects in the vehicles sunroofs. *See Forst v. Live Nation Entm't Inc.*, No. 14-2452, 2015 WL 4530533, at *4 (D.N.J. July 27, 2015), *recons. denied*, 2015 WL 5545542 (D.N.J. Sept. 18, 2015) ("[A] products liability suit involves specific products that all members of the class have purchased. Defects found in a subset of these products can be an indicator of broader defects in identical or similarly manufactured products.")

Lastly, Plaintiffs' claims all target the same Defendant: Chrysler. Under these circumstances, the Court refuses to dismiss Plaintiffs' claims as they relate to vehicles that named Plaintiffs have not purchased. In doing so, the Court defers the standing inquiry until the class certification stage. *See In re L'Oreal Wrinkle Cream Mktg. and Sales*, 2013 WL 6450701, at *4.

## IV.   Defendant's Motion to Strike

As an alternative to its motion to dismiss, Defendant moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike Plaintiffs' prayer for consequential damages and equitable and injunctive relief. Defendant argues that: (1) Plaintiffs' prayer for consequential damages (Comp. ¶ 28; "Prayer for Relief" ¶¶ D.2-6 following paragraphs 97 (Count I); 105 (Count II); and 113 (Count III)) should be stricken because the Defendant disclaimed liability for consequential damages under the Warranty and certain Plaintiffs entered into a stipulation that prohibits them from seeking consequential damages; and (2) Plaintiffs' prayer for injunctive and

equitable relief  (Comp. ¶¶ 114-116; "Prayer for Relief" ¶ E following paragraphs 97 (Count I); 105 (Count II); 113 (Count III); 116 (Count IV); and 177 (Count VI)) should be stricken because Plaintiffs' claims are premised entirely on allegations of past misconduct and Plaintiffs have an adequate remedy at law.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Defendant does not argue that Plaintiffs' demands for consequential damages and equitable and injunctive relief are "redundant, immaterial, impertinent or scandalous matter."  Rather Defendant argues that this relief is not available as a matter of law.  (Def.'s Moving Br. 12-13.)  While Defendant cites some authority for applying Rule 12(f) to strike relief that is not recoverable as a matter of law, these decisions are not binding on this Court. *See Genter v. Allstate Prop. & Cas. Ins. Co.*, No. 11-709, 2011 WL 2533075, at *5 (W.D. Pa. June 24, 2011) (granting motion to strike demand for treble damages); *Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05-5390, 2005 WL 2923519, at *2-3 (S.D.N.Y. Nov. 2, 2005) (granting motion to strike prayer for attorneys' fees).  Moreover, even courts that have limited relief pursuant to Rule 12(f) have recognized that these motions are "generally disfavored and will be denied unless it is clear that under no circumstances could the demand succeed." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004), *amended on recons.*, 2004 WL 2403911 (S.D.N.Y. Oct. 24, 2004).  Here, given the procedural posture of the case, the Court finds that it is premature to resolve factual and legal issues regarding the availability of consequential damages and injunctive and equitable relief.  Accordingly, Defendant's motion to strike is denied.

## V.     <u>Conclusion</u>

For the above reasons, the Court grants Defendant's motion to dismiss in part and denies in part; and the Court denies Defendant's motion to strike.

The following claims are dismissed:

- Count I (Breach of Express Warranty) is dismissed without prejudice with respect to Plaintiff Lombardo.

- Count II (Breach of Implied Warranty) is dismissed without prejudice with respect to Plaintiffs Cox and Lombardo.

- Count IV (Injunctive and Declaratory Relief) is dismissed with prejudice.

- Counts V and VI (Violations of State Consumer Fraud Acts) are dismissed without prejudice with respect to Plaintiffs Cox and Doherty.

Plaintiffs may file an amended complaint with respect to the claims that were dismissed without prejudice. Failure to do so within thirty (30) days will result in dismissal of those claims with prejudice. An order reflecting this decision accompanies this Opinion.

_____

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Date:   September 30 , 2015

33