# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

DAVID COX, *et al.*,

Plaintiffs

vs.

CHRYSLER GROUP, LLC,

Defendant.

Case No. 3:14-cv-7573 (MAS) (DEA)

**MOTION RETURNABLE:**

**NOVEMBER 18, 2019**

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

**KEEFE LAW FIRM**
John E. Keefe, Jr.
Stephen T. Sullivan, Jr.
125 Half Mile Road, Suite 100
Red Bank, New Jersey
(732) 224-9400

**POULOS LOPICCOLO PC**
Joseph LoPiccolo
John N. Poulos
1305 South Roller Road
Ocean, New Jersey 07712
(732) 757-0165

**LAW OFFICES OF PETER C. LUCAS**
Peter C. Lucas
Nicole Crismale
725 Carol Avenue
Oakhurst, New Jersey 07755
(732) 663-9100

*Attorneys for Plaintiff and the Putative Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 3

I.      PLAINTIFF'S ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     THE PARTIES ENGAGED IN SUBSTANTIAL SUBSTANTIVE
        PRACTICE AND DISCOVERY PRIOR TO SETTLEMENT . . . . . . . . . . 5

III.    THE PARTIES CONDUCTED ARM'S-LENGTH NEGOTIATIONS
        WHILE THEY CONTINUED TO VIGOROUSLY PROSECUTE
        THEIR CLAIMS AND DEFENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TERMS OF THE PROPOSED SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . 10

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

I.      STANDARD OF REVIEW FOR FINAL APPROVAL . . . . . . . . . . . . . . 13

II.     THE PROPOSED CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      The Proposed Class is Too Numerous for Joinder . . . . . . . . . . . . . . 14

        B.      Numerous Questions of Law and Fact are Common to
                the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.      Plaintiff's Claims are Typical of the Absent Class Members . . . . . 16

        D.      Plaintiff and Counsel Have and Will Continue to
                Adequately Represent the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        E.      The Settlement Class Should be Certified Under Rule 23(b)(2) . . . 19

i

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SATISFIES THE *GIRSH* FACTORS . . . . . . . . . . . . . 20

   A.   Complexity, Expense, and Likely Duration of the Litigation  . . . . . 21

   B.   The Stage of Proceedings and the Amount of Discovery Completed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

   C.   Risks of Establishing Liability and Damages and Maintaining Class Action Status through Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   D.   The Seventh, Eighth and Ninth *Girsh* Factors do not Apply to Rule 23(b)(2) Certifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.  NOTICE TO CLASS MEMBERS IS UNNECESSARY FOR THIS RULE 23(B)(2) SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Banks v. Nissan N.A., Inc.,*
    301 F.R.D. 327 (N.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*E.E.O.C. v. Pennsylvania,*
    772 F. Supp. 217 (M.D. Pa. 1991),
    *aff'd sub nom., Binker v. Pennsylvania,* 977 F.2d 738 (3d Cir. 1992) . . . . 28

*Gates v. Rohm and Haas Co.,*
    248 F.R.D. 434 (E.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Henderson v. Volvo Cars of North Amer., LLC,*
    No. 09-4146, 2013 WL 1192479 (D. N.J. Mar. 22, 2013) . . . . . . . . . . . . 27

*In re Am. Family Enterprises,*
    256 B.R. 377 (D. N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Genta Secs. Litig.,*
    No. 04-2123, 2008 U.S. Dist. LEXIS 41658
    (D. N.J. May 28, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    934 F.3d 316 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    267 F.R.D. 11 (D. N.J. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
    No. 12-1893, 2016 U.S. Dist. LEXIS 137153
    (D. N.J. Oct. 3, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16-17, 21

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D. N.J. 1997),
    *aff'd*, 148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*In re Warner Comm. Sec. Litig.*,
    618 *F.Supp.* 735 (S.D.N.Y. 1985),
    *aff'd*, 798 *F.2d* 35 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Johnston v. HBO Film Mgm't., Inc.*,
    265 F.3d 178 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17-18

*Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*,
    No. 03-4372, 2009 U.S. Dist. LEXIS 112989 (D.N.J. Dec. 4, 2009) . . . . 23

*Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pastrana v. Lane*,
    No. 08-468, 2012 WL 602141 (Ed. Pa. Feb. 24, 2012) . . . . . . . . . . . . . 27

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Talone v. American Osteopathic Ass'n*,
    No. 16-4644, 2018 U.S. Dist. LEXIS 203983
    (D. N.J. Dec. 3, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20, 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Weiss v. Mercedes-Benz of North Am.*,
    899 F. Supp. 1297 (D. N.J. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Wetzel v. Liberty Mutual Ins. Co.*,
    508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

*W.P. v. Poritz*,
    931 F. Supp. 1187 (D. N.J. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Williams v. Philadelphia*,
    No. 08-1979, 2011 U.S. Dist. LEXIS 46600 (E.D. Pa. Aug. 8, 2011) . . . 27

## COURT RULES

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## PRELIMINARY STATEMENT

Plaintiff, Andrew Manesis, moves pursuant to Fed. R. Civ. P. 23 for an Order granting Final Approval of the proposed Settlement with Defendant, FCA US LLC ("FCA").

Mr. Manesis' claims against FCA, formerly known as Chrysler Group, LLC, arise from FCA's sale of vehicles with factory-installed sunroofs.  Throughout this litigation, Plaintiff has alleged that these sunroofs have a propensity to leak, and that FCA knew about this propensity.  Plaintiff has also alleged that, despite this knowledge, FCA never informed consumers (the Class) about the leak propensity, or the need to routinely maintain their sunroofs.  This failure to provide notice is the crux of Plaintiff's claims against FCA.  As discussed *infra*, the proposed Settlement provides substantial benefits to the Class, and resolves this principal complaint against FCA.

From this litigation's outset, FCA has denied Plaintiff's allegations and the parties have vigorously prosecuted and defended their legal positions.  FCA filed numerous substantive and procedural motions, including two motions to dismiss, a motion for summary judgment, and multiple motions to exclude or strike.  Likewise, Plaintiff filed two motions for class certification and several motions to exclude.  Had the parties not reached a settlement, they would have prepared for and conducted Court-ordered *Daubert* hearings on the admissibility

of their experts' opinions for Plaintiff's pending second Motion for Class Certification. Moreover, this litigation would have continued for many years through merits discovery, additional motion practice, trial and inevitable appeals.

Prior to mediating and settling this matter, the parties engaged in extensive class certification discovery, including reviewing hundreds of thousands pages of documents and lines of electronic data. In evaluating this discovery, they retained engineering and/or economic experts. The voluminous motion practice and class certification discovery allowed the parties to approach settlement negotiations with a full understanding of the Action's merits and risks.

Over nearly a year, the parties and their counsel engaged in extensive, arm's-length settlement negotiations, involving multiple mediation sessions and settlement conferences. In reaching the Settlement, Plaintiff and his counsel identified and considered the legal, factual and practical hurdles posed by continued litigation and the prospects of achieving a more favorable outcome at trial. That examination led to the conclusion that the Settlement was and is fair, reasonable and adequate and in the Class' best interests.

If approved, the Settlement will provide significant benefits to the Class, including:

1.   FCA shall include in future Owner Manuals (those that have not yet been approved for publishing) information on sunroof maintenance;

2.   FCA shall provide its authorized dealerships a document indicating that sunroof channels should be periodically cleaned and request that the dealers place this document in its customer service or waiting area; and

3.   FCA shall send a communication to its warranty department(s) reiterating that water-related sunroof issues are covered by FCA's 3 year/36,000 mile Basic Limited Warranty.

Although the proposed Settlement resolves all injunctive claims against FCA, it does not release any personal injury or property damage claims.

Accordingly, Plaintiff, Andrew Manesis, and his counsel respectfully request that the Court finally approve the Settlement under Fed R. Civ. P 23(a) and (b)(2), and grant the relief memorialized in the proposed Order Granting Final Approval of Class Settlement ("Proposed Final Approval Order").

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   PLAINTIFF'S ALLEGATIONS

FCA manufactures numerous models of vehicles with factory installed sunroofs, including the vehicles subject to the proposed Settlement. *Class Action Complaint, Jury Demand and Designation of Trial Counsel* ("Complaint") at ¶ 2, Dkt. 1; *see also Settlement Agreement and Release* ("Settlement Agreement"), at

Section I. B. and F., attached as Exhibit "A" to the *Declaration of John E. Keefe, Jr.* ("Keefe Declaration"); proposed *Final Approval Order*, at ¶ 3, attached as Exhibit "A" to *Settlement Agreement*. Plaintiff, Andrew Manesis, who resides in New Jersey, purchased a 2014 Jeep Compass, which was manufactured by FCA. *Id.* at ¶ 22; *see also Certification of Plaintiff, Andrew Manesis* ("Manesis Certification") at ¶ 2, attached as Exhibit "B" to *Keefe Declaration*. When his vehicle had only 2,185 miles, Mr. Manesis informed a FCA authorized dealership that water was leaking from his sunroof and brought his vehicle in for service. *Complaint* at ¶ 24; *see also Manesis Certification* at ¶ 5. Despite this and other service trips, Mr. Manesis' sunroof continued to leak. *Complaint* at ¶¶ 24-25. Plaintiff continues to own this vehicle. *See Manesis Certification* at ¶ 2.

As alleged by Mr. Manesis, since at least 1999, FCA's factory installed sunroofs have leaked inside numerous Class vehicles. *Complaint* at ¶¶ 14-28, 35-49. Although Plaintiff contends that FCA has known about its leaky sunroofs for years, its maintenance booklets, promotional materials and other sale and lease documents failed to disclose that the sunroofs required inspections and maintenance to prevent these leaks. *See id.* at ¶¶ 4-11, 53-59; *see also* Exhibits "B"-"H" to *Complaint*. Additionally, when the Plaintiffs, which includes Plaintiff and/or former plaintiffs, and others sought repairs under FCA's standard 3-year, 36,000 mile Basic Limited Warranty, FCA denied coverage, pointing to a

"maintenance problem" or "environmental issue" or advising not to "park under trees" or "drive down dirt roads." *Id.* at ¶¶ 7, 15, 17, 19, 24, 27.

FCA has and continues to deny Plaintiff's allegations.

## II.   THE PARTIES ENGAGED IN SUBSTANTIAL SUBSTANTIVE PRACTICE AND DISCOVERY PRIOR TO SETTLEMENT

Based upon their problems with leaking sunroofs, former Plaintiffs, David Cox, Melissa Doherty, Teresa Hughes, Anthony Lombardo, and Michael Newcomb ("Plaintiffs"), began this litigation on February 8, 2012 in *Miller v. Chrysler Group LLC*, Case No. 12-760 (D. N.J.) ("*Miller*" or "*Miller Action*").[1] The Court terminated the *Miller Action* after the parties entered into a *Stipulation of Parties Regarding Termination of Case for Purposes of Refiling* ("*Stipulation I*"). *See Miller* at Dkt. 70. Prior to *Miller*'s dismissal, FCA had filed an omnibus motion seeking dismissal of all of Plaintiffs' causes of action. On June 30, 2014, this Court denied in part and granted in part FCA's Motion to Dismiss. *Miller v. Chrysler Group LLC*, No. 12-760 (D. N.J. June 30, 2014). In particular, the Court refused to dismiss Plaintiffs' counts for breach of implied warranty of merchantability and violations of the Magnuson-Moss Act, New Jersey Consumer Fraud Act and the unfair and deceptive acts and practices laws of other states. *See*

---

[1]     These Plaintiffs have dismissed their claims with prejudice and are no longer participating in this litigation.  The only plaintiff is Andrew Manesis.

*id.* at \*9-10, 12-14.

Plaintiffs filed the current action on December 4, 2014. Plaintiffs pled breach of express warranty, breach of implied warranty of merchantability, violations of the Magnuson-Moss Warranty Act, New Jersey Consumer Fraud Act and the unfair and deceptive acts and practices laws of other states and Andrew Manesis was added as an additional plaintiff. *See, generally, Complaint.*[2] Thereafter, FCA filed its second motion to dismiss.

On September 30, 2015, the Court denied in part and granted in part FCA's motion. *Cox v. Chrysler Group LLC*, No. 14-7573 (D. N.J. September 30, 2015) ("*Cox Opinion*"), Dkt. 26. The Court declined to dismiss Plaintiff's counts for breaches of express warranty and the implied warranty of merchantability, violations of the Magnuson-Moss Warranty Act, the CFA for omission-based claims, and the unfair and deceptive acts and practices laws of other states. *See id.* at \*10-12, 20-22, 25-28.

The parties then engaged in class certification discovery. During this process, the parties exchanged answers to interrogatories and performed substantial document production and review. In particular, FCA produced hundreds of thousands of pages and lines of data regarding its sales, consumer complaints, FCA

---

[2]    Pursuant to the *Stipulation of Parties Regarding Future Proceedings in Case*, the statute of limitations and certain Orders and decisions followed from *Miller* and were applicable to the present action. *See* Dkt. 13.

communications with its authorized dealers about sunroof-related water issues and sunroof design. The parties deposed multiple fact witnesses and inspected Plaintiff's and other Class vehicles. Based upon this discovery, the parties retained multiple experts for class certification, who submitted reports and were deposed by counsel. *See, e.g., Report of Dan Cowley*, attached as Exhibit "J" of *Declaration of Stephen T. Sullivan, Jr.* ("Sullivan Certification Declaration"), Dkt. 136, 139; *Report of Stan V. Smith*, attached as Exhibit "R" of *Sullivan Certification Declaration*. Through the previously-described discovery, Plaintiff and counsel developed an in-depth understanding of the strengths and weaknesses of their claims and FCA's defenses, which assisted and guided the extensive settlement negotiations between the parties.

On August 15, 2016 and September 8, 2016, FCA moved for summary judgment and to exclude certain Class members from the proposed Class, respectively. *See* Dkt. 49 and 53. Plaintiff opposed these motions, and on March 30, 2017 and April 4, 2017, the Court denied FCA's requests for summary judgment and to exclude. *See* Dkt. 93 and 94. Thereafter, on April 7, 2017, FCA moved for reconsideration of the Court's summary judgment denial, which the Court denied on August 8, 2017. *See* Dkt. 96 and 129.

During the pendency of FCA's motions for summary judgment and to exclude, on March 10, 2017, Plaintiff filed his original Motion for Class

Certification.  *See* Dkt. 84.  FCA opposed the motion, and moved to exclude Plaintiff's liability expert.  *See* Dkt. 100 and 101.  Likewise, Plaintiff moved to exclude FCA's liability expert and a corporate witness.  *See* Dkt. 112 and 117.  In its Opinion on class certification, dated October 5, 2017, the Court found that "Plaintiff has Article III standing to bring his claims and claims for the Vehicles that he did not purchase" and to pursue claims under the New Jersey Consumer Fraud Act.  *Cox v. Chrysler Group, LLC*, No. 14-7573, *7-9, Dkt. 131 (hereinafter "Certification Opinion").  It also found that Plaintiff satisfied the prerequisites of numerosity, commonality and adequacy of counsel.  *See id.* at *11-14, *15-16. The Court determined, however, that Plaintiff did not satisfy adequacy and typicality because his interests may be antagonistic to purchasers of used or former Class Vehicles.  *See id.* at *14-17.   In particular, the Court questioned whether Plaintiff could represent the interests of former or used purchasers of vehicles because of potential differences in damages.[3]

---

[3]  Because the Court found that Plaintiff did not satisfy typicality or adequacy, it declined to reach the requirements under Rule 23(b)(2) or (b)(3).  *See Certification Opinion* at *17 fn.7.  The Court also denied as moot the motions to exclude. *See* Dkt. 133.

Thereafter, on November 21, 2017, Plaintiff filed his second Motion for Class Certification. *See* Dkt. 134. Again, FCA opposed the motion and filed motions to preclude certain proposed class members, and Plaintiff's liability and damages experts. *See* Dkt. 142-144. Plaintiff renewed his motions to exclude FCA's liability expert and corporate witness. *See* Dkt. 164 and 169. On June 22, 2018, the Court ordered *Daubert* hearings on the parties' liability experts relating for the pending motions. *See* Dkt. 184 and 186. These motions and the hearings were pending when the parties reached the proposed Settlement.

## III. THE PARTIES CONDUCTED ARM'S-LENGTH NEGOTIATIONS WHILE THEY CONTINUED TO VIGOROUSLY PROSECUTE THEIR CLAIMS AND DEFENSES

Settlement negotiations were hard-fought and protracted. After preliminary settlement discussions between Plaintiff's and FCA's counsel, the parties agreed to mediate before a nationally-recognized mediator, Bradley A. Winters, Esq. *Keefe Declaration* at ¶ 27. The First Mediation occurred on October 10, 2018. Although this full-day session failed to resolve the matter, the parties continued to discuss settlement through Mr. Bradley with several telephone conferences. *Id.* at ¶¶ 28. As a result, on February 27, 2019, counsel again met with Mr. Winters. *Id.* at ¶¶ 29. After another full-day session, the parties were unable to resolve all of their differences, but agreed to continue their discussions. *Id.*

Thereafter, the Court scheduled a settlement conference for March 29, 2019. *Id.* at 30. On that date, the parties consented to the Hon. Tonianne J. Bongiovanni, U.S.M.J. conducting further settlement negotiations. *Id.* These negotiations consisted of an in-person settlement conference and numerous telephone conferences with Judge Bongiovanni. *Id.* With Judge Bongiovanni's continued assistance, on or about September 10, 2019, the parties agreed to a settlement-in-principle. *Id.* at ¶ 31. This settlement is memorialized in the Settlement Agreement and the proposed Final Approval Order, which are discussed *infra*.

## **TERMS OF THE PROPOSED SETTLEMENT**

The proposed Settlement provides substantial injunctive relief to the Class, which meets the predominant complaints alleged by Plaintiff against FCA. The proposed Class consists of "individuals who purchased or leased in the United States a vehicle manufactured by FCA US LLC on or after June 10, 2009 and through the date of the execution of this settlement agreement, which is equipped with a factory installed sunroof." *See Settlement Agreement and Release* ("Settlement Agreement"), attached as Exhibit "A" to *Keefe Certification*; *see also Proposed Final Approval Order* at ¶ 3.

As detailed in the Settlement Agreement, FCA agrees to provide significant consumer notice benefits, consisting of the following:

1.   Future Owner's Manuals.

FCA US shall include in future Owner Manuals (*i.e.,* those that have not yet been finally approved for publishing) information relative to sunroof maintenance.

2.   Request To Dealerships For Posting Regarding Sunroof Maintenance.

FCA US shall provide its authorized dealerships with a one page document indicating that sunroof channels should be periodically cleaned of debris and request that each dealership post the document in its customer service or waiting area.

3.   Communication To Warranty Departments.

FCA US shall send a communication to its warranty department(s) reiterating that water-related sunroof issues are covered under the 3 year/36,000 mile Basic Limited Warranty.

[*Settlement Agreement* at Section III.]   These benefits are expressly incorporated into the Proposed Final Approval Order. *See Proposed Final Approval Order* at ¶ 7.   For these benefits, Plaintiff and the Class release only their injunctive claims against FCA. *See Settlement Agreement* at Section VI., ¶¶ 1-4; *Proposed Final Approval Order* at ¶ 8.   They do not release any claims for personal injury or property damage. *See Settlement Agreement* at Section VI. ¶ 5; *Proposed Final Approval Order* at ¶ 8.

Finally, FCA agrees not to oppose an award of attorneys' fees and costs and a service award to Mr. Manesis, so long as the amounts do not exceed "Three Hundred Fifty Thousand Dollars ($350,000.00) for attorneys' fees; One Hundred

Twenty-Eight Thousand Eight Hundred Seventy-Three Dollars and Seventy-Nine Cents ($128,873.79) for costs; and Four Thousand Dollars ($4,000.00) for an incentive award for Plaintiff." *Settlement Agreement* at Section VII., ¶ 1; *see also Proposed Final Approval Order* at ¶ 10.  As discussed in the accompanying Motion for an Award of Attorneys' Fees and Costs and an Incentive Award, consistent with the Settlement Agreement, Plaintiff and Counsel request that the Court approve these modest amounts. *Id.*

## LEGAL ARGUMENT

The Court should finally approve the proposed Settlement.  The Settlement resulted from months of arm's length, hard-fought negotiations between the parties and their counsel and with the assistance of a highly experienced and nationally-respected mediator and this Court.  The Settlement provides substantial injunctive benefits to the Class, especially considering the attendant risks of this litigation. The Settlement is considerably "fair, reasonable and adequate" under Rule 23 and applicable case law.  Accordingly, Plaintiff, Andrew Manesis, respectfully requests that the Court grant his Motion for Final Approval, and enter the proposed Final Approval Order.

## I.   STANDARD OF REVIEW FOR FINAL APPROVAL

Plaintiff, Andrew Manesis, moves under Rule 23 for final approval of the Settlement and certification of a class for settlement purposes only ("Settlement Class").   As discussed in detail, final approval involves two inquiries.   First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   The second inquiry is whether the proposed settlement appears "fair, reasonable and adequate."   Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

In determining whether to approve a settlement, the Third Circuit has noted that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."   *Id.* at 535; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("GM Trucks"), 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").   In light of this public policy and because this Settlement meets Rule 23's requirements, Plaintiff, Andrew Manesis, respectfully requests that the Court finally approve the Settlement.

13

## II.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Class certification under Rule 23 has two primary components.  The party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')."   *Warfarin Sodium*, *supra*, 391 F.3d at 527. Second, the Court must find that the proposed Class satisfies Fed. R. Civ. P. 23(b). In the present case, the Plaintiffs seek certification under Rule 23(b)(2), which provides that certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  As discussed *infra*, the proposed Class and Settlement meet all of Rule 23's requirements.

### A.   The Proposed Class is Too Numerous for Joinder

"To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales*

*Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Here, during the Class Period, FCA sold thousands of vehicles, which contain factory-installed sunroofs. In its Certification Opinion, the Court determined that Plaintiff satisfied numerosity. *Certification Opinion* at *13. Plaintiff continues to satisfy this requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").

### B.      Numerous Questions of Law and Fact are Common to the Class

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement does not mandate "that all putative class members share identical claims, and that factual differences among the claims of the putative class members do not defeat class certification." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("'[e]ven a single [common] question' will do") (citation omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* at 2551.

Here, the Court previously determined that Plaintiff satisfied the commonality requirement, *see Certification Opinion* at *14, and there is no reason

to find differently for this motion.   Each Class member purchased or leased a vehicle manufactured by FCA with a factory-installed sunroof.   *See Settlement Agreement at Section I. B*; *Proposed Final Approval Order* at ¶ 3.   Moreover, common questions of law or fact include whether FCA's sunroofs had a propensity to leak and whether FCA should have notified Class members about the need to perform routine maintenance to prevent such leaks.   *See Proposed Final Approval Order* at ¶ 4; s*ee also, e.g., Banks v. Nissan N.A., Inc.*, 301 F.R.D. 327, 332, 335 (N.D. Cal. 2013) ("issues of (1) whether Nissan was aware of the alleged defect, (2) whether Nissan had a duty to disclose its knowledge, and (3) whether Nissan violated consumer protections laws when it failed to do so, are common to the class") *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 11, 29 (D.N.J. 2010) (finding commonality where liability turned on defendant's knowledge and actions).

### C.   Plaintiff's Claims are Typical of the Absent Class Members

Under Rule 23(a)(3), the court a l s o must determine whether "the named plaintiffs' individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgm't., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).   Typicality does not require that

16

all claims are identical. *Id.*   So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001); *see also In re N.J. Tax Sales Certificates Antitrust Litig.*, No. 12-1893, 2016 U.S. Dist. LEXIS 137153, *22 (D. N.J. Oct. 3, 2016) (recognizing that pronounced factual differences does not destroy typicality).

Here, Plaintiff and each Class member purchased or leased a Class Vehicle manufactured by FCA with a factory-installed sunroof.  As in the previously-cited cases, Plaintiff's and the Class members' claims arise from the same course of conduct, and are based on the same legal theories.   Moreover, the proposed Settlement, Plaintiff is not seeking monetary relief, which the Court previously held created potential class conflicts. *See Settlement Agreement* at Section VI. ¶¶ 1-2, 5; *Proposed Final Approval Order* at ¶ 8.   Instead, the proposed relief is injunctive in nature and applies equally to all Class members.   Thus, Plaintiff satisfies the typicality requirement.

### D.   Plaintiff and Counsel Have and Will Continue to Adequately Represent the Class

The adequacy requirement has two components intended to ensure that the absent Class Members' are represented: (1) the named plaintiffs' interests must

be sufficiently aligned with the interests of the absentees, and (2) the plaintiffs' counsel must be qualified to represent the class. *GM Trucks, supra*, 55 F.3d at 800.   In addressing the adequacy of the class representative, the court must examine whether the "the representatives' interests conflict with those of the class." *Johnston, supra*, 265 F.3d at 185.

First, Plaintiff is an adequate class representative because he has no interests antagonistic to the members of the Class.  There are no material conflicts between Mr. Manesis' interests in this litigation and those of the Class members he seeks to represent.  Plaintiff, like all Class members, purchased or leased a Class Vehicle and was never informed by FCA that his sunroof may leak or that he needed to conduct periodic maintenance.  Plaintiff also seeks the same redress to compel FCA to inform its customers (the Class) that their sunroofs need to be maintained. Further, Plaintiff has actively participated in this litigation, communicated directly and regularly with counsel, responded to FCA's discovery demands, produced his vehicle for inspection, and was deposed by defense counsel.  *See Manesis Certification* at ¶ 9.  Consequently, Plaintiff is an adequate representative.

Second, Plaintiff has retained counsel competent and experienced in complex class action and consumer litigation.  *See Firm Resumes*, attached as Exhibits "G"-"I" of *Keefe Declaration*.  The Court previously found that counsel

were "sufficiently qualified and experienced to represent the Class." *Certification Opinion* at *16. Therefore, based upon the above, adequacy is amply satisfied.

## E.   The Settlement Class Should be Certified Under Rule 23(b)(2)

Besides meeting the requirements of Rule 23(a), plaintiff must also satisfy one of Rule 23(b)'s prongs. Here, Plaintiff moves pursuant to Rule 23(b)(2). Rule 23(b)(2) allows a class action to be maintained where all four requirements of Rule 23(a) have been met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed R. Civ. P. 23(b)(2).

This Rule applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Additionally, unlike motions for class certification under 23(b)(3), "[w]hen a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether a class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Id.* at 362-63; *see also Baby Neal*, *supra*, 43 F.3d at 58-59 ("[w]hat is important is that the relief sought by the named plaintiffs should benefit the entire class").

Here, each of the Settlement's benefits applies equally and indivisibly to every Class member. *See Talone v. American Osteopathic Ass'n*, No. 16-4644, 2018 U.S. Dist. LEXIS 203983, *28 (D. N.J. Dec. 3, 2018) ("'key' to Rule 23(b)(2) certification . . . is that provisions apply indivisibly to each member of the Settlement Class"). Moreover, the relief does not include any monetary benefits, which could predominate over the Settlement's proposed injunctive relief. *See Dukes*, *supra*, 564 U.S. at 365-66 (discussing effect of monetary damages on proposed injunctive class); see also Settlement Agreement at Section VI. Consequently, the proposed Settlement is within the scope of and may be certified pursuant to Rule 23(b)(2).

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SATISFIES THE *GIRSCH* FACTORS

Rule 23(e) requires a court to determine that the proposed settlement is "fair, reasonable and adequate." *GM Trucks*, *supra*, 55 F.3d at 785. The Third Circuit has adopted a nine-factor test known as the "*Girsh* factors":

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

[*Id.* (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975))].   As explained by the court in *In re Am. Family Enterprises*, 256 B.R. 377 (D. N.J. 2000), "[t]hese factors 'are a guide and the absence of one or more does not automatically render the settlement unfair." *Id.* at 418 (citation omitted).   Instead, "the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Id.* (internal quotation and citation omitted).   As discussed *infra*, the proposed Settlement satisfies the *Girsh* factors, and thus, should be approved.[4]

## A.    Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures 'the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001).   First, the "size of the settlement class, which is estimated to include thousands of members, supports settlement.   *In re N.J. Tax*

---

[4]   In 2019, Rule 23 was amended to require courts to consider four factors before finally approving a class action settlement: (1) the adequacy of representation by class representatives and class counsel; (2) whether settlement negotiations were done fairly at arm's length; (3) the adequacy of relief provided under the settlement (including the terms of any proposed award of attorney fees); and (4) the equity of treatment of class members relative to one another.   *See* Rule 23(e)(2).   These factors were previously discussed as part of the prerequisites for class certification and/or are considered as part of Plaintiff's discussion of the *Girsh* factors and in his corresponding motion to approve attorneys' fees and costs.

*Certificates Antitrust Litig., supra*, 2016 U.S. Dist Lexis 137153 at *28.

Second, "[b]y measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks, supra*, 55 F.3d at 812. For example, in *Warfarin Sodium, supra*, the parties litigated the case for three years. 391 F.3d at 537. The court concluded that the first *Girsh* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial. Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class.

[*Id.* at 536.]

The concerns raised in *Warfarin* apply with equal force here. At the time of Settlement, motions for class certification and to exclude various witnesses were pending. The Court also had ordered *Daubert* hearings of the parties' liability experts. Even if the Court ruled in Plaintiff's favor on these motions, litigation would have continued for several years. The parties had not started merits discovery. *See Memorandum Opinion*, dated March 30, 2017, *6, Dkt. 92 (finding that "parties have only engaged in discovery related to the proposed class certification and have not conducted merits discovery on Plaintiff's claims").

Additionally, FCA would have continued to defend this matter and oppose Plaintiff on liability and damages, and filed a renewed motion for summary judgment, among other likely substantive motions.

The trial itself would have lasted for weeks, if not longer. The unsuccessful parties to either the motions for class certification or summary judgment or trial would almost certainly have appealed. In contrast to the uncertainty and expense involved in continued litigation, the Settlement guarantees immediate relief for the Class, a factor weighing heavily in favor of final approval. *See Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, No. 03-4372, 2009 U.S. Dist. LEXIS 112989, *13-14 (D.N.J. Dec. 4, 2009) (considering delay in recovery if the case is tried and finding this factor weighs in favor of settlement approval).

## B.   The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."[5] *Cendant*, 264 F.3d at 235 (quoting *GM Trucks*, 55 F.3d at 813).

---

[5] Consideration of the second *Girsh* factor, which gauges the Class' reaction, is premature. Plaintiff will supplement his discussion of this factor, should there be any response from Class members.

Here, as in *In re Genta Secs. Litig.*, No. 04-2123, 2008 U.S. Dist. LEXIS 41658 (D. N.J. May 28, 2018):

> This action had developed sufficiently to allow the Parties to discern the strengths and weaknesses of their respective positions....The Parties did not reach a settlement until after the case had progressed through the filing and resolution of a motion to dismiss, the production of certain documents, and several mediation sessions.

[*Id.* at *9-10.] Plaintiff and FCA engaged in extensive class certification discovery and numerous substantive motions, including two motions to dismiss, a motion for summary judgment, multiple motions to exclude and two motions for class certification. Therefore, Plaintiff and his counsel "conducted sufficient discovery [and motion practice] to estimate the merits . . . of the Plaintiffs' case . . . and reach a reasonable settlement." *Gates v. Rohm and Haas Co.,* 248 F.R.D. 434, 444 (E.D. Pa. 2008).

Moreover, the parties engaged in substantial arm's length negotiations with a nationally-respected mediator, and the Court's assistance. Settlement negotiations took approximately a year to complete. The development of information during this period provided Plaintiff and his counsel with a firm basis to evaluate the reasonableness, fairness and adequacy of the proposed Settlement. Negotiations were hard-fought with the parties raising numerous issues, involving class certification, liability and damages. *See In re Warner Comm. Sec. Litig.*, 618 *F.Supp.* 735, 745 (S.D.N.Y. 1985) (observing that parties had clear view of

strengths and weaknesses when settlement occurred), *aff'd*, 798 *F.2d* 35 (2d Cir. 1986).  Accordingly, this factor favors settlement.

### C.  Risks of Establishing Liability and Damages and Maintaining Class Action Status through Trial

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, *supra*, 55 F.3d at 814.  "[T]he risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of North Am.*, 899 F. Supp. 1297, 1301 (D. N.J. 1995).  The "inquiry [regarding damages] attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, *supra*, 264 F.3d at 238 (internal quotation and citation omitted).

Notwithstanding Plaintiff's and counsel's faith in the case, continued litigation through trial posed genuine risks regarding Plaintiff's and the Class' ability to satisfy the standards for class certification and prove liability and damages.  Throughout the litigation, FCA has adamantly denied liability and asserted various defenses.  While Plaintiff has successfully defended against several of FCA's motions, the Court also denied his first motion for class certification and found that conflict may exist between potential Class members over damages.  Assuming the Court granted Plaintiff's Renewed Motion for Class

Certification, Plaintiff anticipates that FCA would renew its motion for summary judgment and file other substantive motions. Each of these motions represented inherent risks to successfully maintaining class certification and establishing FCA's liability.

In addition, recovery of damages is never certain. Plaintiff faced the risk that he would be unable to prove some or all of his damages. FCA has argued that, even if Plaintiff were able to prove its alleged misconduct, he cannot set forth a credible damage methodology. The determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert opinions. The reaction of a jury to expert testimony is unpredictable. The jury may reject assumptions underlying the expert testimony regarding damages as speculative or unreliable. Conceivably, a jury could find that there are no damages. Thus, the inherently unpredictable risks in certifying a class and establishing liability and damages weigh in favor of settlement, particularly here, where the Settlement provides an excellent result to the Class that is fair, reasonable, and adequate.

### D. The Seventh, Eighth and Ninth *Girsh* Factors do not Apply to Rule 23(b)(2) Certifications

Because Plaintiff proposes a Rule 23(b)(2) class, the seventh, eighth and ninth *Girsh* factors are inapplicable. *See, e.g., Talone, supra*, 2018 U.S. Dist.

LEXIS 203983, *39 fn. 14 (agreeing with parties that seventh, eighth and ninth Girsh factors do not apply to Rule 23(b)(2) certifications because there are no monetary issues); *Pastrana v. Lane*, No. 08-468, 2012 WL 602141, *5 (Ed. Pa. Feb. 24, 2012) ("The seventh, eighth and ninth Girsh factors are inapplicable here. This action was certified under Rule 23(b)(2) for injunctive relief. As such, these factors, which deal with monetary judgments, are not applicable."); *Williams v. Philadelphia*, No. 08-1979, 2011 U.S. Dist. LEXIS 46600, *9-10 n.1 (E.D. Pa. Aug. 8, 2011) ("Since this is a Rule 23(b)(2) class action for injunctive relief, not all *Girsh* factors apply. We need not consider the ability of the defendants to withstand a greater judgment, [or] the range of reasonableness of the settlement fund"); *Inmates of the Northumberland Cty. Prison v. Reish*, No. 08-345, 2011 U.S. Dist. LEXIS 46291, *21 (M.D. Pa. Apr. 29, 2011) ("The seventh, eighth, and ninth factors, as articulated in Girsh, deal with monetary judgments and settlement funds, and thus are inappropriately evaluated here.").

Notwithstanding, "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters. . . . " *Henderson v. Volvo Cars of North Amer., LLC*, No. 09-4146, 2013 WL 1192479, *7 (D. N.J. Mar. 22, 2013). Further, counsel's judgment that the settlement is fair, reasonable and adequate is also entitled to considerable weight because "the court's intrusion upon what is

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *E.E.O.C. v. Pennsylvania*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom.*, *Binker v. Pennsylvania*, 977 F.2d 738 (3d Cir. 1992).

Here, the proposed Settlement represents the conclusion of years-long, hard fought litigation and substantial arm's length negotiations involving attorneys with considerable experience in consumer fraud and class action litigation, a seasoned mediator and this Court. The settlement negotiations were heavily contested, conducted in good faith, and lasted nearly a year. Thus, when weighed against the time, expense and potential risks of establishing class certification, liability and damages, the proposed Settlement is fair, reasonable and adequate, and effectively satisfies Mr. Manesis' complaints regarding sunroof maintenance notification.

Therefore, based upon the applicable *Girsh* factors, the proposed Settlement is fair, reasonable and adequate, and Plaintiff respectfully requests that the Court enter the Proposed Final Approval Order.

## IV.   NOTICE TO CLASS MEMBERS IS UNNECESSARY FOR THIS RULE 23(B)(2) SETTLEMENT

Courts in this Circuit have long held that Rule 23(b)(2) does not require notice to the class. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 254 (3d Cir. 1975) ("Rule 23 definitely does not require mandatory notice for (b)(2) actions"); *W.P. v. Poritz*, 931 F. Supp. 1187, 1193 fn. 2 (D. N.J. 1997) ("A 23(b)(2) class action does not require notice to the class."). As the Third Circuit recently explained, Rule 23(b)(2) settlements generally provide an "indivisible" injunctive remedy which will "provide relief to all class members equally," and thus procedural protections such a "notice of the action or the opportunity to opt out" are not necessary. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 328 (3d Cir. 2019); *see also Dukes*, *supra*, at 564 U.S. at 362 (stating that settlements under Rule (b)(2) do not require notice).

Here, as previously-discussed, Plaintiff has alleged that FCA failed to provide notice to any Class members that their sunroofs require routine care to prevent water leaks. The proposed Class benefits reasonably and adequately cure this alleged misconduct, are injunctive in nature, and apply equally to all Class members. Moreover, there is no monetary relief to any Class member, and the Settlement Agreement does not release either personal injury or property damage claims. *See Settlement Agreement* at Section VI., ¶¶ 1-5; *Proposed Final Approval*

*Order* at ¶ 8.  Consequently, Class notice is not required.  *See Proposed Final Approval Order* at ¶ 6.

## **CONCLUSION**

For the reasons stated above, the proposed Settlement is fair, reasonable and adequate, and Plaintiff, Andrew Manesis, respectfully requests that the Court enter the Proposed Final Approval Order.

Respectfully submitted,

**KEEFE LAW FIRM**

By:  */s/John E. Keefe, Jr.*
John E. Keefe, Jr.
Stephen T. Sullivan, Jr.
125 Half Mile Road, Suite 100
Red Bank, New Jersey
(732) 224-9400

John N. Poulos
Joseph LoPiccolo
Poulos LoPiccolo PC
1305 South Roller Road
Ocean, New Jersey 07712
(732) 673-6264

Peter C. Lucas
Law Offices of Peter C. Lucas
725 Carol Avenue
Oakhurst, New Jersey 07755
(732) 663-9100